**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

IN RE GENERAL ELECTRIC COMPANY             No. 06-CV-315
ERISA LITIGATION                                                  (GLS/DRH)
                                                                              (Lead Case)

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR SECOND MOTION TO DISMISS THE ENTIRE
COMPLAINT FOR FAILURE TO STATE A CLAIM**


William J. Dreyer (Bar Roll #101539)
April M. Wilson (Bar Roll #105797)
DREYER BOYAJIAN LLP
75 Columbia Street
Albany, NY 12210
(518) 463-7784

Jeffrey G. Huvelle
John M. Vine
Thomas L. Cubbage III
Christian J. Pistilli
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 662-6000

John J. Buckley, Jr.
Dane H. Butswinkas
Jonathan M. Landy
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Dated: January 16, 2007                                     Attorneys for Moving Defendants

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ........................................................................................................................... 3

STANDARD OF REVIEW ........................................................................................................... 7

ARGUMENT ................................................................................................................................. 7

I.     Plaintiffs' Claims Should Be Dismissed Because They Have Not Adequately Pled Loss Causation. ................................................................................................................ 8

     A.     In Order to State a Claim under ERISA, Plaintiffs Must Allege a Causal Relationship Between Any Alleged Wrongdoing and a Loss to the Plan. ............. 8

     B.     The Disclosure of ERC's Allegedly Insufficient Reserves Did Not Cause a Decline in GE's Stock Price. ............................................................................... 11

     C.     Plaintiffs' Claims Relating to the Life and Health Insurance Business Should Be Dismissed Because They Have Not Alleged Any Related Loss to the Plan. ....................................................................................................... 13

CONCLUSION ............................................................................................................................ 16

# **TABLE OF AUTHORITIES**

**Cases**

*In re Alstom SA*, 406 F. Supp. 2d 402 (S.D.N.Y. 2005) ........................................................................7

*Collier v. Aksys Ltd.*, No. 3:04CV1232, 2005 WL. 1949868 (D.
    Conn. Aug. 15, 2005)................................................................................................10

*Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270 (2d Cir.
    1992) ....................................................................................................................8, 14

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ......................................... *passim*

*Emergent Capital Investment Management, LLC v. Stonepath
    Group, Inc.*, 343 F.3d 189 (2d Cir. 2003) ...................................................................11

*Glanton v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006)...........................................15

*Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474 (4th Cir. 2006)..........................................10, 12

*In re Glaxo SmithKline PLC Sec. Litigation*, No. 05 Civ. 3751,
    2006 WL. 2871968 (S.D.N.Y. Oct. 6, 2006) .............................................................10

*Henry v. Champlain Enterprises, Inc.*, 288 F. Supp. 2d 202
    (N.D.N.Y. 2003) .........................................................................................................9

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ..............................................7

*Kane v. United Independent Union Welfare Fund*, No. CIV. A. 97-
    1505, 1997 WL. 411208 (E.D. Pa. July 22, 1997)..............................................14

*Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995)........................................................................9

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).......................................... *passim*

*McMahan & Co. v. Wherehouse Entertainment, Inc.*, 65 F.3d 1044
    (2d Cir. 1995)............................................................................................................12

*In re Merrill Lynch & Co., Inc. Research Reports Securities
    Litigation*, 272 F. Supp. 2d 243 (S.D.N.Y. 2003).....................................................5, 12

*Pietrangelo v. NUI Corp.*, No. Civ. 04-3223 (GEB), 2005 WL.
    1703200 (D.N.J. July 20, 2005)................................................................................14

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000).......................................................................7

*Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000) .....................................................14

*Silverman v. Mutual Benefit Life Insurance Co.*, 138 F.3d 98 (2d
    Cir. 1998) ...................................................................................................................9

*United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir.
    2004...........................................................................................................................13

*United States v. Olis*, 429 F.3d 540 (5th Cir. 2005)................................................................14

*In re Worldcom, Inc.*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003) ....................................................7

*In re Worldcom, Inc. Sec. Litigation*, 388 F. Supp. 2d 319
    (S.D.N.Y. 2005) ........................................................................................................12

## Statutes, Regulations, and Rules

ERISA § 405, 29 U.S.C. § 1105 ................................................................................................3

ERISA § 409, 29 U.S.C. § 1109 ..................................................................................... *passim*

ERISA § 502, 29 U.S.C. § 1132 ..........................................................................................3, 8

## **INTRODUCTION**

In cases alleging a breach of fiduciary duty, Section 409 of ERISA permits recovery only for "losses to the Plan" and only where those losses "result[] from" the alleged fiduciary breach. *See* 29 U.S.C. § 1109(a). Plaintiffs have failed to meet this requirement. The Supreme Court and the Second Circuit have held that in order properly to plead loss and "loss causation" in cases seeking loss of investment value in publicly traded securities, a plaintiff must allege that the alleged misstatement came to light and that the share price of the stock declined upon such disclosure. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173-75 (2d Cir. 2005). As the Supreme Court put it in *Dura*, as a matter of "pure logic," so long as the alleged misstatement remains undisclosed to the market, the stock price will not be affected by it. 544 U.S. at 342. Likewise, if there is no decline in the stock price following disclosure, then a plaintiff will not have suffered a loss, and any decline in the stock price prior to such disclosure will necessarily have been due to other factors.

Plaintiffs completely fail to meet this simple and logical pleading standard. Plaintiffs claim that Defendants knew of but did not disclose alleged under-reserving in two of GE's insurance businesses. They further allege a general decline in the price of GE stock during the so-called Class Period. But the Complaint fails to allege the necessary causal relationship between the two. Specifically, with regard to GE's property and casualty business, Plaintiffs allege that the under-reserving was accurately disclosed to the market for the first time on November 18, 2005, but nowhere do they allege that such disclosure resulted in, or was followed by, a decline in GE's share price as needed to satisfy *Dura* and *Lentell*. With regard to the health and life business, Plaintiffs allege that the lack of sufficient reserves has never been disclosed to

the market and thus there has never been a market reaction to this information. The Supreme Court made clear in *Dura* that such allegations of undisclosed improprieties giving rise to an inflated share price fail to state a claim.

Furthermore, publicly available data make it evident that there is no causal relationship between the complained-of decline in GE's stock price during the so-called Class Period and the corrective disclosure alleged by Plaintiffs. GE's stock price did decline, but it did so during the early portion of the Class Period, *before* the date when, according to the Complaint, the allegedly insufficient reserves in the property and casualty insurance business were fully revealed to the market. When, again according to the Complaint, the corrective disclosure was made to the market on November 18, 2005, GE's stock price did not decline; rather, it *went up*. This, of course, explains why Plaintiffs are unable to allege a decline in the share price following public disclosure as required by *Dura* – because no such decline occurred. Moreover, to the extent that further alleged wrongdoing in the form of ongoing reserve insufficiency in GE's health and life insurance business allegedly remains undisclosed, it cannot as a matter of "pure logic" have caused a decline in the price of GE stock.

To allow a suit to go forward under these circumstances would make publicly traded companies – and retirement plans that offer employer stock to employees as an investment option – virtual guarantors of the price of the stock: liable whenever the price drops for any reason, however removed from the disclosure of the alleged misstatement giving rise to the complaint. Instead, this lawsuit should be dismissed because the Complaint does not allege that there was a loss and/or that the loss was caused by the alleged wrongdoing.

## **BACKGROUND**

On October 16, 2006, Plaintiffs Cavalieri, Miklic, and Bezio ("Plaintiffs") filed a "Consolidated Class Action Complaint For Violations of the Employee Retirement Income Security Act of 1974," or ERISA (the "Complaint"). They are retirees who participated in the General Electric ("GE") Savings and Security Program (the "S&SP" or "Plan"), which is a 401(k) defined contribution retirement plan.[1] GE stock is one of the investment options that the Plan makes available to employees who participate in the Plan, and Plaintiffs allege that their "respective retirement portfolios included GE stock." Compl. ¶¶ 2, 14-16. Defendants include GE, GE Asset Management Incorporated, and 74 separate individuals, including current and former members of GE's board of directors, its pension board, its benefit plan investment committee, and its management, as well as the trustees of various trusts.[2] Compl. ¶¶ 17-116. Plaintiffs purport to sue under Sections 502(a)(2) and (3) of ERISA for alleged violations of ERISA Sections 409 (fiduciary duty) and 405 (co-fiduciary liability). *See* Compl. ¶ 1.

Briefly summarized, Plaintiffs allege that during the period between March 23, 2001, and "the present" (the "Class Period"), two of GE's insurance company subsidiaries did not establish sufficient reserves for their potential obligations and that therefore GE's published financial statements did not accurately reflect those subsidiaries' expenses. Plaintiffs claim that Defendants knew of the alleged misrepresentations and violated their fiduciary duties under

---

[1] Further information regarding the S&SP may be found in the Defendants' Memorandum of Law in Support of Their First Motion To Dismiss the Entire Complaint for Failure To State a Claim, filed contemporaneously herewith.

[2] A number of individual Defendants fit into none of these categories and manifestly are not plan fiduciaries. *See* Memorandum of Law in Support of Third Motion To Dismiss by Certain Individual Defendants and Defendant General Electric Asset Management, Inc., filed contemporaneously herewith.

ERISA by failing to correct or to advise Plan participants of the alleged misrepresentations and by imprudently continuing to offer GE stock to Plan participants notwithstanding the alleged misrepresentations.

With respect to one of those businesses, the life and health insurance business, Plaintiffs allege that the under-reserving continues to this day.  Compl. ¶ 150; *see id.* ¶ 2 (defining the Class Period as running through "the present").  They do not allege that any disclosure of the alleged under-reserving in this business has occurred.  Rather, they allege that the under-reserving in the life and health insurance business "remain[s] undisclosed."  *Id.* ¶ 146.

With respect to the other GE insurance business at issue, the property and casualty insurance business conducted by Employers Reinsurance Corporation ("ERC") (a business GE sold in 2006), Plaintiffs allege that "[i]nformation emerged publicly" regarding the alleged under-reserving on November 18, 2005.  *Id.*  More specifically, they allege that ERC's reserves were "accurately disclosed" on that date, when GE announced a $3.4 billion increase in ERC's reserves.  *Id.* ¶ 177.  However, they fail to allege any subsequent drop in GE's stock price that was causally or temporally related to this alleged corrective disclosure.

4

Nor could the Complaint have truthfully alleged any such relationship between the November 18, 2005, reserve announcement and any drop in GE's stock price. As demonstrated by Figure 1, on that date, GE's stock *increased* from the previous day's closing price of $34.66 to a closing price of $35.75, and closed even higher on the three subsequent trading days.[3]

**Figure 1**
**GE Closing Stock Price 11/17/05 to 11/23/05**

| Date | Closing Price |
|---|---|
| 11/17/05 | $34.66 |
| 11/18/05 | $35.75 |
| 11/21/05 | $36.20 |
| 11/22/05 | $36.06 |
| 11/23/05 | $35.94 |

*See* Pistilli Decl., ¶ 3.[4]

---

[3]   Indeed, as demonstrated by Exhibit A to the Pistilli Declaration, and Figure 2, *infra*, the closing price of GE's stock did not drop below its pre-November 18, 2005, closing price until January 20, 2006, more than two months after the alleged corrective disclosure.

[4]   As noted below, the Court may take judicial notice of GE's closing stock price. *E.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Securities Litig.*, 272 F. Supp. 2d 243, 254 (S.D.N.Y. 2003). The chart that appears in this motion was generated using publicly available data obtained from http://finance.yahoo.com/q/hp?s=GE. *See* Pistilli Decl., ¶ 3. The raw data from which the attached chart was generated is attached as Exhibit A to the Pistilli Declaration.

5

Plaintiffs do allege an overall decline in the price of GE stock since March 2001: "Company Stock plummeted from a high of approximately $50 per share … to its current price of approximately $35 per share." *Id.* ¶ 8. Plaintiffs do not allege, however, that the share price declined after the alleged inadequacy of ERC's insurance reserves was "accurately disclosed" to the market on November 18, 2005. In fact, as illustrated by the following chart, the decline in GE stock, from its $53.40 high in May 2001 to its $22.00 low in October 2002, took place long before the date in November 2005 on which Plaintiffs allege information about ERC's under-reserving "emerged publicly." *Id.* ¶ 146.

**Figure 2**
**GE Closing Stock Price 3/22/01 to 10/16/06**

*See* Pistilli Decl., ¶ 3; *id.* Exs. A & B thereto (setting forth GE's daily closing stock prices throughout the so-called Class Period).

6

Since trading for as low as $22.00 in late 2002 and early 2003 (the five-year low), the price of GE stock has increased approximately 70% to its closing price of $37.89 per share on January 12, 2007, which is nearly identical to the price at the beginning of the Class Period. During the fiscal years 2001 through 2005, GE also paid $3.89 per share in dividends.[5]

## STANDARD OF REVIEW

In resolving Defendants' Rule 12(b)(6) motion to dismiss, the Court must accept as true the well-pleaded factual allegations of the Complaint. "General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). In addition to the allegations expressly pleaded in the Complaint, the Court may consider "documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *accord In re Worldcom, Inc.*, 263 F. Supp. 2d 745, 756 (S.D.N.Y. 2003). The court may also take judicial notice of well-publicized stock prices without converting a motion to dismiss into a motion for summary judgment. *E.g.*, *In re Alstom SA*, 406 F. Supp. 2d 402, 408 (S.D.N.Y. 2005).

## ARGUMENT

Plaintiffs allege that two of GE's insurance businesses established inadequate reserves and that GE's stock declined during the so-called Class Period. However, in the case of ERC,

---

[5] *See* Exs. A & B of the Pistilli Declaration; Ex. C of the Pistilli Declaration in Support of Defendants' First Motion To Dismiss the Entire Complaint for Failure To State a Claim (GE 2005 10-K, Ex. 13, p. 61).

7

they fail specifically to allege any drop in GE's stock that resulted from the alleged corrective disclosure in November 2005. And, in the case of the life and health insurance business, they affirmatively allege the absence of a corrective disclosure. Compl. ¶ 146; *see id.* ¶ 150. Therefore, they have failed to allege any loss and/or loss causation, and their claims must be dismissed.

Furthermore, publicly available stock market data, of which this Court may take judicial notice, affirmatively demonstrate that when the alleged insufficiency of ERC's reserves was, according to the Complaint, "accurately disclosed" on November 18, 2005, GE's stock price went up, not down. While GE's stock price did decline during the so-called Class Period from a high of over $50, this decline occurred well before the alleged corrective disclosure in November 2005. Thus, Plaintiffs could not (and did not) allege a temporal or causal connection between the alleged corrective disclosure and the decline in the stock price. The alleged breach of fiduciary duty therefore manifestly did not cause any loss to the Plan. This reality warrants dismissal.

### I.     Plaintiffs' Claims Should Be Dismissed Because They Have Not Adequately Pled Loss Causation.

#### A.     In Order to State a Claim under ERISA, Plaintiffs Must Allege a Causal Relationship Between Any Alleged Wrongdoing and a Loss to the Plan.

ERISA Section 502(a)(2) permits a plaintiff to recover damages on behalf of a plan from fiduciaries who are liable under Section 409(a). *See* 29 U.S.C. § 1132(a)(2). Section 409(a) imposes monetary liability on a fiduciary *only* for "losses to the plan *resulting from*" a breach of fiduciary duty. *Id.* § 1109(a) (emphasis added).[6] Thus, in order to recover under ERISA, a plaintiff must plead a loss to the plan and some "causal link" between the alleged breach and the

---

[6]     Section 409(a) also requires fiduciaries to restore to plans any profits they make through use of plan assets. *See* 29 U.S.C. § 1109(a).

8

alleged loss. *Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998) (requiring plaintiff to "show some causal link between the alleged breach of [the fiduciary's] duties and the loss plaintiff seeks to recover"); *see Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2d Cir. 1992) ("[P]roof of a causal connection … is required between a breach of fiduciary duty and the loss alleged."); *Kuper v. Iovenko*, 66 F.3d 1447, 1459-60 (6th Cir. 1995) ("[T]o show that an investment decision breached a fiduciary's duty to act reasonably in an effort to hold the fiduciary liable for a loss attributable to this investment decision, a plaintiff must show a causal link between the [breach] and the harm suffered by the plan."); *Henry v. Champlain Enters., Inc.*, 288 F.Supp.2d 202, 230 (N.D.N.Y. 2003) ("a plaintiff is not excused from demonstrating or alleging at least some loss that is causally connected to the breach").

Like ERISA, the securities laws require that a plaintiff plead and prove economic loss and "loss causation," or a "causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *See Lentell*, 396 F.3d at 173. Most notably, the Supreme Court in *Dura*, on the basis of these requirements, affirmed the dismissal of a securities lawsuit where plaintiffs alleged that they had "paid artificially inflated prices" for stock, but failed to plead that the "share price fell significantly after the truth became known." 544 U.S. at 346-47 (2005). In a passage whose force depends not on any particulars of the securities laws but on what it termed "pure logic," the Supreme Court explained that –

> [A]s a matter of pure logic, at the moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that at that instant possesses equivalent value. Moreover, the logical link between the inflated share purchase price and any later economic loss is not invariably strong. Shares are normally purchased with an eye toward a later sale. But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss. If the purchaser sells later after the truth makes its way into the marketplace, an

9

> initially inflated purchase price might mean a later loss. But that is
> far from inevitably so. When the purchaser subsequently resells
> such shares, even at a lower price, that lower price may reflect, not
> the earlier misrepresentation, but changed economic
> circumstances, changed investor expectations, new industry-
> specific or firm-specific facts, conditions, or other events, which
> taken separately or together account for some or all of that lower
> price. … Other things being equal, the longer the time between
> purchase and sale, the more likely that this is so, *i.e.*, the more
> likely that other factors caused the loss.

*Id.* at 342-43. Because plaintiffs "fail[ed] to claim that Dura's share price fell significantly after the truth became known," the court affirmed the district court's dismissal of the complaint. *Id.* at 347.

Second Circuit precedent likewise requires that a plaintiff claiming injury in the form of diminished stock value must allege that the "misstatement or omission concealed something from the market that, *when disclosed*, negatively affected the value of the security." *Lentell*, 396 F.3d at 173 (emphasis added). In *Lentell*, plaintiffs failed to allege "that the market reacted negatively to a corrective disclosure" or that the concealed information otherwise become known to the market, and the court concluded that this failure was "fatal under Second Circuit precedent." *Id.* at 175; *accord Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 479 (4th Cir. 2006) ("It is only after the fraudulent conduct is disclosed to the investing public, followed by a drop in the value of the stock, that the hypothetical investor has suffered a 'loss' ...."); *In re Glaxo SmithKline PLC Sec. Litig.*, No. 05 Civ. 3751, 2006 WL 2871968, at *7 (S.D.N.Y. Oct. 6, 2006) ("The loss causation inquiry, therefore, must focus on a link between dissemination of information about the alleged misrepresentations and significant drops in share price.").[7] Thus, it

---

[7] *Cf. Collier v. Aksys Ltd.*, No. 3:04CV1232, 2005 WL 1949868, at *12 (D. Conn. Aug. 15, 2005) (holding that, in the case of a short seller (*i.e.*, someone who sells securities he does not own) whose injury depends on a stock price *increase*, the fact the stock dropped in price after (continued…)

10

is clear that a plaintiff must allege that the revelation to the market of a previously undisclosed fact – rather than some other event or events – caused the decline in stock price. *See, e.g.*, *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003).

### B. The Disclosure of ERC's Allegedly Insufficient Reserves Did Not Cause a Decline in GE's Stock Price.

Plaintiffs have not adequately pled loss causation. The Complaint alleges that Defendants misrepresented or failed to disclose to participants information regarding the alleged insufficiency of ERC's reserves. *See* Compl. ¶¶ 7, 146. According to the Complaint, information about the alleged insufficiency of ERC's property and casualty insurance reserves "emerged publicly" and was "accurately disclosed" on November 18, 2005, Compl. ¶¶ 146, 177, 179, when GE announced it would increase those insurance reserves by $3.4 billion, *id.* ¶ 162. However, the Complaint does not allege that this disclosure caused GE's stock price to drop. Instead, as discussed below, the Complaint merely alleges a decline of GE's stock price that occurred years before the alleged corrective disclosure. Thus, Plaintiffs' allegations do not state a claim.

Furthermore, publicly available stock market data conclusively demonstrate that the Complaint could not have truthfully alleged a decline in GE's stock price at the time of disclosure. On November 18, 2005, when according to the Complaint the alleged corrective disclosure was announced and GE's reserves "accurately disclosed," the market price for GE stock *increased* from the prior day's closing price of $34.66 to a closing price of $35.75 – an

---

disclosure of the alleged misstatements precluded the plaintiff from showing that the misstatements caused an actual loss).

11

increase of $1.09 per share, or more than three percent.[8]  This fact demonstrates the absence of any causal connection between the alleged corrective disclosure and the decline in the price of GE's stock.  *See Dura*, 544 U.S. at 347; *Lentell*, 396 F.3d at 173.

Although Plaintiffs do allege that the Plan suffered a loss as a result of the decline in GE's stock price from $50 to $35 per share, *id.* ¶¶ 8, 146, they allege no causal connection between the alleged understatement of reserves and this loss sufficient to meet the requirements of *Dura* and *Lentell*.  In fact, the decline in GE's stock from approximately $50 per share occurred *well before* the corrective disclosure alleged in the Complaint.  *See* Figure 2, *supra*. The share price fell from its high of $53.40 on May 21, 2001, to its five-year low of $22.00 on October 9, 2002; by November 17, 2005, it had partially rebounded to nearly $35.00.  But, according to Plaintiffs, accurate public disclosure of the allegedly concealed information did not take place until November 18, 2005.  "[A]s a general rule, a price decline before disclosure may not be charged to defendants." *McMahan & Co. v. Wherehouse Entmt., Inc.*, 65 F.3d 1044, 1049 (2d Cir. 1995) (internal quotation marks omitted); *accord Glaser*, 464 F.3d at 479 ("[S]o long as the fraud is undisclosed, normal fluctuations in price attendant to any market may have a direct effect on the value of the investor's portfolio, but cannot be said to be a 'loss' …."); *Lentell*, 396 F.3d at 175 n.4 (concealment "could not have caused a decrease in the value of [the] companies before the concealment was made public"); *In re Worldcom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 352 (S.D.N.Y. 2005) ("The decline in the price ... prior to [the disclosure] date must therefore be attributed to factors other than the fraud."); *In re Merrill Lynch & Co. Research*

---

[8]   As demonstrated by Figure 1, *supra*, GE's stock price did not decline below its November 17, 2005 closing price on any of the three full trading days after the alleged corrective disclosure on November 18, 2005.  Moreover, the closing price of GE stock exceeded its November 17, 2005, closing price on each of the following trading days until January 20, 2006. *See* Figure 2, *supra*, and Exhibit A to the Pistilli Declaration.

12

*Reports Sec. Litig.*, 272 F. Supp. 2d 243, 254 (S.D.N.Y. 2003) (complaint failed to sufficiently allege causation where declines "occurred *before* public disclosure of the allegedly concealed information"). Accordingly, it is clear that the decline in the price of GE stock alleged in the Complaint, which occurred between 2001 and 2003, was not caused by the alleged corrective disclosure in November 2005.

Plaintiffs' allegations relating to ERC therefore must be dismissed because the Plaintiffs have not pled – and could not plead – the requisite causal relationship between any drop in GE's stock price and the corrective disclosure that they allege.

### C.   Plaintiffs' Claims Relating to the Life and Health Insurance Business Should Be Dismissed Because They Have Not Alleged Any Related Loss to the Plan.

Plaintiffs' claims relating to the under-reserving in the life and health insurance business also must be dismissed. With respect to these allegations, Plaintiffs have not pled that there was any market reaction to disclosure of the alleged under-reserving; indeed, they have affirmatively pled the *absence* of any such disclosure.[9] Thus, the Complaint fails to allege any legally cognizable loss resulting from the alleged under-reserving in the life and health insurance business.

As the Supreme Court made clear in *Dura*, the mere purchase of stock at an inflated value does not constitute a loss, because "the inflated purchase payment is offset by ownership of a share that at that instant possesses equivalent value." 544 U.S. at 342. This remains true "unless and until the truth is subsequently revealed and the price of the stock accordingly declines," because only then might there be a "loss attributable to a misrepresentation." *United*

---

[9]   *See United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (observing the possibility that a complaint might "contain[] too much rather than too little — that the [plaintiff] has pleaded itself out of court by alleging things that, if true, devastate its claim").

13

*States v. Olis*, 429 F.3d 540, 546 (5th Cir. 2005); *accord Semerenko v. Cendant Corp.*, 223 F.3d 165, 185 (3d Cir. 2000) ("Where the value of the security does not actually decline as a result of an alleged misrepresentation, it cannot be said that there is in fact an economic loss attributable to that misrepresentation."); *see also Lentell*, 396 F.3d at 173-75.

The "pure logic" that compelled the Supreme Court to affirm dismissal of the complaint in *Dura* applies with equal force here: the only injury Plaintiffs have alleged with respect to the life and health insurance business is that they purchased GE stock at a price that allegedly was inflated by investors' ignorance of that business's allegedly inadequate reserves. That is precisely the allegation the *Dura* court held wholly insufficient. *See Dura*, 544 U.S. at 347. Here, as in *Dura*, there is no allegation that the Plan has suffered any economic injury as a result of the alleged under-reserving in the life and health insurance business. Thus, Plaintiffs have failed to state a claim.

As one court has explained in an ERISA ruling equally applicable to Plaintiffs' allegations regarding GE's life and health insurance business:

> Plaintiff has failed to allege that … the Plan suffered damages as a result of the [allegedly improper] practice. … Because the alleged [improper] practice has never been disputed, earnings were never restated to account for the alleged inflation. Thus, *the Plan has not yet been harmed by the alleged [improper] practice*. … *It is not enough to argue that the income from the [improper practice] will someday be subject to disgorgement. The fact remains that, until that happens, Plaintiff's damages are prospective.* Therefore, the Court concludes that the Plan cannot recover damages as a result of the purported [improper practice] under any set of facts. Accordingly, Plaintiff's … allegations must be dismissed.

*Pietrangelo v. NUI Corp.*, No. Civ. 04-3223 (GEB), 2005 WL 1703200, at *12 (D.N.J. July 20, 2005) (emphasis added); *accord Kane v. United Indep. Union Welfare Fund*, No. CIV. A. 97-

14

1505, 1997 WL 411208, at *3 (E.D. Pa. July 22, 1997) (dismissing ERISA claim relating to potential future harm to the plan on the ground that it was "too speculative").[10]

Here, Plaintiffs allege that GE's life and health insurance business is improperly under-reserved.  *See* Compl. ¶¶ 184-200.  They assert that, as a result of this continued under-reserving, "GE's financial health is being negatively impacted."  *Id.* ¶ 200.  But Plaintiffs do not allege that GE has ever acknowledged or disclosed publicly that this business unit is or was under-reserved.  They do not allege that GE has taken a charge relating to this alleged under-reserving, or announced a change in its accounting practices going forward – or, indeed, that there has been any event relating to the alleged under-reserving to which the market has reacted in any way.  Rather, they affirmatively assert that the alleged under-reserving "remain[s] undisclosed."  *Id.* ¶ 146.

Plaintiffs have failed to allege "a causal connection … between [the alleged] breach of fiduciary duty and the loss alleged."  *Diduck*, 974 F.2d 270, 279 (2d Cir. 1992).  Indeed, they have specifically alleged the absence of a market reaction to the alleged under-reserving.  *See* Compl. ¶¶ 146, 150.  Unless and until the alleged under-reserving is disclosed to the market, and the market then reacts negatively to it, it is immaterial that GE's stock price allegedly is inflated.  Therefore, Plaintiffs' own pleadings make clear that there has been no "loss to the plan" as required under ERISA Section 409, and that Plaintiffs' claims relating to the life and health allegations must be dismissed.

---

[10]  Indeed, courts have suggested that, in such circumstances, plaintiffs might not even have Article III standing.  *See generally Glanton v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006) (plan participants lack Article III standing because they have no judicially cognizable injury).

## **CONCLUSION**

For these reasons, this motion to dismiss for failure to state a claim should be granted.

        Respectfully submitted,

        /s/
        _____
        William J. Dreyer (Bar Roll #101539)
        April M. Wilson (Bar Roll #105797)
        DREYER BOYAJIAN LLP
        75 Columbia Street
        Albany, New York 12210
        (518) 463-7784

        Jeffrey G. Huvelle
        John M. Vine
        Thomas L. Cubbage III
        Christian J. Pistilli
        COVINGTON & BURLING LLP
        1201 Pennsylvania Avenue, N.W.
        Washington, D.C.  20004
        (202) 662-6000

        John J. Buckley, Jr.
        Dane H. Butswinkas
        Jonathan M. Landy
        WILLIAMS & CONNOLLY LLP
        725 Twelfth St., N.W.
        Washington, DC 20005
        (202) 434-5000

        Attorneys for Moving Defendants