**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| IN RE GENERAL ELECTRIC COMPANY ERISA LITIGATION | No. 06-CV-315 (GLS/DRH) (Lead Case) |

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS UNDER ERISA SECTION 502(a)(2)**

William J. Dreyer (Bar Roll #101539)
April M. Wilson (Bar Roll #105797)
DREYER BOYAJIAN LLP
75 Columbia Street
Albany, NY 12210
(518) 463-7784

Jeffrey G. Huvelle
John M. Vine
Thomas L. Cubbage III
Christian J. Pistilli
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 662-6000

John J. Buckley, Jr.
Dane H. Butswinkas
Jonathan M. Landy
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Dated:  April 13, 2007                    Attorneys for Moving Defendants

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION ....................................................................................................................1
BACKGROUND .....................................................................................................................1
STANDARD OF REVIEW .....................................................................................................4
ARGUMENT...........................................................................................................................5
I.   Plaintiffs' Claim Fails as a Matter of Law Because Plaintiffs Cannot Establish That the GE Plan Suffered A Loss Resulting from the Defendants' Alleged Misconduct. ...............5
    A.   A Claim Under ERISA Sections 502(a)(2) and 409(a) Requires That the Plan as a Whole Suffer a Net Loss. ...................................................................................5
    B.   Indisputable Evidence Demonstrates That Any Inflation in GE's Stock Price Resulted in a Net Gain to the Plan. ..................................................................................7
CONCLUSION.........................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

### FEDERAL CASES

*Arenson v. Broadcom Corp.*, No. CV 02-031, 2004 U.S. Dist. LEXIS 27522 (C.D. Cal. Dec. 6, 2004) ............................................................................................................. 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................ 4, 10

*Chao v. Merino*, 452 F.3d 174 (2d Cir. 2006) ................................................................................ 6

*Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir. 1985) .............................................................. 6, 7, 8

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ........................................................ 8

*Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97 (2d Cir. 1998) ................................................. 4

*Gurary v. Winehouse*, 190 F.3d 37 (2d Cir. 1999) ......................................................................... 8

*Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992) .............................................................................. 8

*Massachusetts Mutual Life v. Russell*, 473 U.S. 134 (1985) ......................................................... 6

*Mira v. Nuclear Measurements Corp.*, 107 F.3d 466 (7th Cir. 1997) ............................................ 6

*New York State Teamsters Conference Pension & Retirement Fund v. Express Services*, 426 F.3d 640 (2d Cir. 2005) .................................................................................................. 4

*Proujansky v. Blau*, No. 92 Civ. 8700, 2000 U.S. Dist. LEXIS 786 (S.D.N.Y. Jan. 28, 2000) ...................................................................................................................................... 6

*Richards v. General Motors Corp.*, 991 F.2d 1227 (6th Cir. 1993) ........................................ 7, 8-9

*Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915 (8th Cir. 1994) ........................................... 6, 10

*Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599 (8th Cir. 1995) ................................................ 8

*In re Schering-Plough Corp. ERISA Litigation*, 420 F.3d 231 (3d Cir. 2005) ............................. 7

## FEDERAL STATUTES AND RULES

29 U.S.C. § 1109(a) ................................................................................................... passim

29 U.S.C. § 1132(a)(2) ............................................................................................... passim

Fed. R. Civ. P. 56(c) .............................................................................................................4

## MISCELLANEOUS

*Restatement (Third) of Trusts: Prudent Investor Rule* § 213 (1992) ............................7, 8

## INTRODUCTION

Plaintiffs seek money damages under Section 502(a)(2) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Section 502(a)(2), in conjunction with Section 409(a) of ERISA, authorizes a private cause of action to recover losses incurred by an employee benefit plan. A fundamental element of any such recovery, however, is that Plaintiffs prove that the GE Savings and Security Program (the "GE Plan" or "Plan") – the entity on whose behalf Plaintiffs have brought this suit – incurred a loss. Only losses incurred by the Plan as a whole are recoverable under Sections 502(a)(2) and 409(a).

Here, Plaintiffs allege that the concealment of under-reserving in two General Electric ("GE") insurance businesses caused GE's stock price to be artificially inflated. As explained below, however, even if GE's stock price was artificially inflated, it did not cause the Plan to incur a loss. Because the GE Plan was a net *seller* of GE stock during the relevant period – *i.e.*, the Plan sold more GE stock than it bought during that period – any inflation in GE's stock price would have resulted in a net *gain* for the Plan rather than a net loss. Because Plaintiffs cannot establish a necessary element of their claims under Sections 502(a)(2) and 409(a) – *i.e.*, that the Plan sustained a loss – Defendants are entitled to summary judgment on those claims.

## BACKGROUND

The GE Plan is a defined contribution plan. The assets of the Plan consist of investments funded by the contributions that GE, certain of its affiliates, and participating employees have made to the Plan. *See* S.F. ¶ 4.[1] Plan assets are collectively held in a trust on behalf of Plan participants. *Id.* ¶ 7. The trustees of the GE Plan Trust are the legal owners of all of the Plan's shares of GE Stock. *Id.* ¶ 8. Plan participants' account balances are book-keeping entries that

---

[1]    Defendants' Statement of Material Facts ("S.F."), filed herewith pursuant to Local Rule 7.1(a)(3), is incorporated in this Memorandum by reference.

1

reflect their respective beneficial interests in the trust, rather than direct ownership interests in the Plan assets. *Id.* ¶ 9.

The Plan allows each participant to direct how his own contributions and the employer contributions made on his behalf will be allocated among the Plan's investment options, including GE Stock. *Id.* ¶ 5. The Plan also allows each participant to change the allocation of his account among the Plan's investment options by making "investment switches." *Id.* ¶ 6.

After the end of each business day, the Plan nets certain purchases and sales of GE stock that the Plan is required to make, including those required by participant-directed investment switches both into and out of the GE stock investment option. *Id.* ¶ 10. Once the Plan nets such transactions in GE stock, if the Plan needs to acquire additional shares, GE transfers the additional shares to the Plan. *Id.* ¶ 11. If the Plan needs to reduce its holdings of GE stock, the Plan either transfers the shares to GE or sells them on the open market. *Id.* ¶ 12. Other transactions affecting the amount of GE stock held by the Plan, such as those required to account for employer contributions and salary withholdings which participants elect to be invested in GE stock, are made separately from the netting process. *Id.* ¶ 13.

Plaintiffs allege that between March 23, 2001, and "the present," two of GE's insurance businesses did not establish sufficient reserves for their potential obligations and as a result GE's published financial statements did not accurately reflect the insurance businesses' expenses. With respect to one of the insurance businesses – Employers Reinsurance Corporation ("ERC"), which GE sold in 2006 – Plaintiffs allege that the amount required to correct the purported under-reserving was "accurately disclosed" to the market on November 18, 2005. Consolidated Class Action Complaint For Violations of [ERISA] ("Amended Complaint" or "Compl."),

¶¶ 177, 179.[2]  With respect to the other – the life and health insurance business – Plaintiffs allege that the under-reserving continues to this day and has not been disclosed to the market.  *Id.* ¶¶ 146, 150.  Plaintiffs claim that because of the alleged inaccuracies in GE's financial statements, the true value of GE stock during the class period was substantially less than the price at which it traded.  *Id*. ¶ 8.

Although Defendants dispute many of the allegations in the Amended Complaint, these disputes are not material to this motion for partial summary judgment.  Thus, for purposes of this motion only, the Court may regard as true Plaintiffs' false allegations that the two GE insurance businesses at issue failed to establish sufficient reserves; that this information was not publicly disclosed; and that GE, as a result, published misleading financial statements.  *Id.* ¶¶ 7, 149-50, 158.

The period at issue began, according to the Amended Complaint, on March 23, 2001, when GE's stock price allegedly first became inflated due to the alleged concealment of the insufficiency of the insurance reserves.  *Id.* ¶¶ 2, 158.  Over the period from March 23, 2001 (the start of the so-called Class Period), to November 18, 2005 (when, according to the Amended Complaint, the amount required to correct the alleged under-reserving at ERC was "accurately disclosed" to the market), the Plan was a net seller of GE stock.  In fact, the Plan sold over 16 million more GE shares than it purchased during that period.  S.F. ¶ 15.

The Plan also was a net seller over the period from March 23, 2001 (the start of the so-called Class Period), to October 16, 2006 (when Plaintiffs filed the Amended Complaint).

---

[2]   On November 18, 2005, when the Amended Complaint alleges that Defendants "accurately disclosed" the alleged under-reserving at ERC, Compl. ¶ 177, GE's stock price increased from the previous day's closing price of $34.66 to $35.75.  *See* Declaration of Christian J. Pistilli in support of Defendants' Second Motion To Dismiss the Entire Complaint for Failure To State A Claim, ¶ 2 & Ex. A, filed on January 16, 2007.

3

During this longer period, the Plan sold almost 40 million more GE shares than it purchased. *Id.* ¶ 16.

In short, the Plan sold far more shares of GE stock than it bought during the period when Plaintiffs contend that the stock price was artificially inflated.

## **STANDARD OF REVIEW**

Rule 56 requires summary judgment if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also New York State Teamsters Conference Pension & Ret. Fund v. Express Servs.*, 426 F.3d 640, 645 (2d Cir. 2005). There is no genuine issue of material fact where "'the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Supreme Court has made clear that summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Thus, when a defendant points out a plaintiff's inability to prove an essential element of the cause of action on which the plaintiff bears the burden of proof, "the plaintiff, in order to avoid summary judgment, must show the presence of a genuine issue by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in his favor, to establish the existence of that element at trial." *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998). Where indisputable facts demonstrate that the plaintiff cannot establish a prima facie case on an

essential element of the plaintiff's claim, a defendant's motion for summary judgment should be granted.

# ARGUMENT

I. **Plaintiffs' Claims Fail as a Matter of Law Because Plaintiffs Cannot Establish That the GE Plan Suffered A Loss Resulting from the Defendants' Alleged Misconduct.**

To obtain monetary relief for a breach of fiduciary duty under ERISA Sections 502(a)(2) and 409(a), a plaintiff must prove that the breach caused a loss to the employee benefit plan at issue. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2). In this case, Plaintiffs assert that the GE Plan suffered a loss because the Plan invested in GE stock at inflated prices and the stock later declined in value.

Even assuming, *arguendo*, that such inflation occurred, Plaintiffs cannot establish the "essential element" of a loss to the Plan. This is because the Plan would have gained more from sales of stock at allegedly inflated prices during the relevant periods than it would have lost on purchases of stock at allegedly inflated prices during those periods.

Plaintiffs have the burden to establish that the Plan incurred a loss. However, if concealing the alleged inadequacy of the insurance subsidiaries' reserves caused GE's stock price to be artificially inflated, the artificial inflation would have benefited, rather than harmed, the Plan. Thus, it will be impossible for Plaintiffs to meet their burden on this point. Accordingly, Defendants are entitled to partial summary judgment.

   A. <u>A Claim Under ERISA Sections 502(a)(2) and 409(a) Requires That the Plan as a Whole Suffer a Net Loss.</u>

Section 502(a)(2), codified at 29 U.S.C. § 1132(a)(2), creates a private cause of action permitting a plan participant to enforce Section 409(a), which in relevant part provides that:

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make

>good to such plan any <u>losses to the plan</u> resulting from each such breach ….

29 U.S.C. § 1109(a) (emphasis added). As the statutory text makes clear, monetary relief under Sections 502(a)(2) and the relevant portion of 409(a) requires proof of a loss "to the plan." *Id.*

In *Massachusetts Mutual Life v. Russell*, 473 U.S. 134, 140 (1985), the Supreme Court observed that the text of Section 409(a) emphasizes "the relationship between the fiduciary and the plan as an entity." This statutory provision is "primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142 (footnote omitted). Recovery under this section must therefore "inure[] to the benefit of the *plan as a whole*." *Id.* at 140 (emphasis added); *accord Chao v. Merino*, 452 F.3d 174, 185 (2d Cir. 2006) ("[T]he express language of [Section 409(a)] makes the breaching fiduciary liable not directly for losses to beneficiaries, but for 'losses to the plan' …."). Thus, fiduciaries are not liable for breaching their duties under these sections if there was no loss to the plan as a whole. *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919-20 (8th Cir. 1994) ("*Roth I*"); *accord Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 & n.7 (7th Cir. 1997) (noting the applicability of the maxim *injuria absque damno*, or that a wrong which causes no legal damages cannot give rise to a cause of action); *Proujansky v. Blau*, No. 92 Civ. 8700, 2000 U.S. Dist. LEXIS 786, at *25-28 (S.D.N.Y. Jan. 27, 2000) (same). A fiduciary may prevail "on a motion for summary judgment by showing that the plaintiff cannot establish a prima facie case of loss." *Roth I*, 16 F.3d at 920.

Moreover, in assessing whether there has been a loss to the plan, any gain to the plan resulting from the breach must offset any loss to the plan caused by the breach. *See Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985). In other words, if the amount gained from a

6

breach of fiduciary duty is greater than the amount lost, "no loss was sustained." *Id.*[3] Therefore, a breach resulting in a net gain to the plan is not actionable under ERISA Sections 502(a)(2) and 409(a), even though some individual participants may have been harmed. *See id.*; *see also Richards v. Gen. Motors Corp.*, 991 F.2d 1227, 1231 (6th Cir. 1993) ("Since any loss to plaintiff in the unwinding of his transactions would automatically produce a net gain to the savings plan, he may not challenge [defendant's] actions under [Section 502(a)(2)]."); *cf. Arenson v. Broadcom Corp.*, No. CV 02-031, 2004 U.S. Dist. LEXIS 27522, at *8 (C.D. Cal. Dec. 6, 2004) (holding, in a securities case, that "where a plaintiff engages in multiple purchases and sales during the period in which the stock is inflated, the proper damages methodology is to take all the inflation losses resulting from all purchases at the inflated price and reduce this amount by all the inflation gain resulting from all sales at the inflated price").[4]

      B.      <u>Indisputable Evidence Demonstrates That Any Inflation in GE's Stock Price Resulted in a Net Gain to the Plan.</u>

In this case, Plaintiffs' claims depend on a supposed loss to the Plan caused by its purchases of GE stock at allegedly inflated prices. Compl. ¶¶ 7-8, 146. Such a loss would be measured by the excess of what the Plan paid for shares of GE stock over the "true" value of those shares – that is, the amount by which the stock's price was allegedly inflated. As the Second Circuit has explained in a case involving ERISA Section 409:

---

[3] The Restatement of Trusts, to which *Bierwirth* referred, 754 F.2d at 1054, 1056 (citing *Restatement (Second) of Trusts* § 205 (1959)), likewise recognizes that gains must be netted against losses when a fiduciary allegedly commits several related breaches of duty. When "the breaches of trust are not separate and distinct, the trustee is accountable only for the net gain or chargeable only with the net loss resulting therefrom." *Restatement (Third) of Trusts: Prudent Investor Rule* § 213 (1992); *see also id.* cmt. e ("If the trustee makes a profit and also incurs a loss through breaches of trust that are not separate and distinct, the beneficiaries are entitled … to charge the trustee with the loss reduced by the amount of the profit.").

[4] The Third Circuit recently concluded that a subgroup of participants in a defined contribution plan could bring suit under Section 502(a)(2) to recover losses that the plan had incurred. *See In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005). That decision, however, did not address the issue presented here: whether a subgroup of plan participants have a cause of action under Section 502(a)(2) when the plan as a whole did not incur a loss but instead enjoyed a substantial gain.

> In such cases, it may well be that the best measure of damages is one that awards the plaintiff the difference between what was paid for the stock, and what would have been paid had the plaintiff been aware of the concealed information, or had the market price not been manipulated. Defendants' conduct in these cases caused the plaintiffs to sell too cheaply or to buy too dearly; in such instances, it is appropriate to hold such defendants liable for the difference between what the plaintiffs paid or received in payment and what the stock was in fact worth.

*Bierwirth*, 754 F.2d at 1055.[5] The Eighth Circuit has agreed with this measure of loss to the plan in ERISA cases involving stock-price manipulation: "An appropriate measure of damages for manipulating the price of securities is 'the difference between what was paid for the stock, and what would have been paid … had the market price not been manipulated.'" *Martin v. Feilen*, 965 F.2d 660, 671 (8th Cir. 1992) (quoting *Bierwirth*, 754 F.2d at 1055).[6]

As previously discussed, however, any such loss must be offset by any gains resulting from the same alleged breach, again measured by the difference between the sales price for the stock and what the proceeds would have been if there was no artificial inflation.[7] As the Second Circuit has observed in the securities law context, "it would be anomalous indeed to permit a plaintiff to recover damages where the characteristic that made the conduct complained of unlawful, here the allegedly artificial depression of the price, worked to plaintiff's benefit." *Gurary v. Winehouse*, 190 F.3d 37, 46 (2d Cir. 1999). For the same reasons, if an employee benefit plan's gains exceed its losses from stock transactions in a case alleging price

---

[5] In *Bierwirth*, the Second Circuit declined to apply this measure of loss because the case did "not involve fraud, or the withholding of information, or the manipulation of prices." 754 F.2d at 1055. Rather, the breach in *Bierwirth* was the fiduciaries' improper use of defined benefit pension plan assets for their own benefit to avoid a hostile takeover, *id.* at 1051, and the court therefore applied a measure of loss appropriate for that type of breach, *id.* at 1056.

[6] *See also Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 603 (8th Cir. 1995) (reaffirming that "[t]his measure of loss is appropriate in cases where the loss is due to … price manipulation"); *Restatement (Third) of Trusts: Prudent Investor Rule* § 205 cmt. e (1992) ("If the trustee is authorized to purchase property for the trust, but in breach of trust he pays more than he should pay, he is chargeable with the amount he paid in excess of its value.").

[7] *See generally Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005) (recognizing that if shares are both purchased and sold at an inflated price, no harm has occurred).

8

manipulation, the alleged fiduciary breach has resulted in a net gain to the plan, and any claim under ERISA Sections 502(a)(2) and 409(a) fails as a matter of law. *See Richards*, 991 F.2d at 1231 (no loss to the plan actionable under Sections 502(a)(2) and 409(a) of ERISA where the net effect of the breach is a gain).

   In this case, indisputable facts demonstrate that the Plan as a whole sold far more shares than it purchased during the periods of alleged price inflation. Thus, there was no loss to the Plan. With respect to the alleged concealment of the insufficiency of ERC's reserves, any artificial inflation in the price of GE's stock due to such concealment must have ceased when the amount required to correct the alleged under-reserving at ERC was disclosed – according to the Amended Complaint, on November 18, 2005. Compl. ¶ 177. Yet the Plan sold over 16 million more shares than it purchased during the period from March 23, 2001, to November 18, 2005. S.F. ¶ 15. Moreover, the Plan was also a net seller – in this case by almost 40 million shares – during the longer period from March 23, 2001 to October 16, 2006, when Plaintiffs filed their Amended Complaint. *Id.* ¶ 16.

   As a matter of common sense, since the Plan sold more GE stock than it bought during these periods, the Plan benefited from, and was not harmed by, any alleged inflation in the price of GE stock. Because the Plan sold more than one share of GE stock for every share it bought, the total gain that the Plan would have realized from the higher sales price on the shares it sold would have exceeded the increased purchase price of the shares it bought. To illustrate, if the alleged undisclosed under-reserving in ERC caused GE's share price to be inflated by $1 per share, the Plan would have realized a net gain of more than $16 million by selling over 16 million more shares than it bought during the relevant period; if the alleged inflation were $2 per share, the Plan would have gained over $32 million, and so on. In other words, the greater the

9

inflation in GE's stock price, the more the Plan would have benefited from selling more GE stock than it purchased.  Therefore, Plaintiffs cannot demonstrate that the allegations contained in the Amended Complaint caused any loss to the Plan.

Partial summary judgment is appropriate because the facts demonstrating the absence of a loss to the Plan are beyond genuine dispute.  *See Roth I*, 16 F.3d at 920.  It is Plaintiffs' burden to come forward with evidence of a genuine factual dispute as to whether there was a loss to the Plan.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The foregoing analysis makes it clear that Plaintiffs cannot do so, and therefore that their claim for money damages under Sections 502(a)(2) and 409(a) fails as a matter of law.

## **CONCLUSION**

For the foregoing reasons, there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law insofar as Plaintiffs bring claims under ERISA Sections 502(a)(2) and 409(a). Summary judgment should thus be granted in favor of Defendants on these claims.

Respectfully submitted,

/s/
_____
William J. Dreyer (Bar Roll #101539)
April M. Wilson (Bar Roll #105797)
DREYER BOYAJIAN LLP
75 Columbia Street
Albany, New York 12210
(518) 463-7784

Jeffrey G. Huvelle
John M. Vine
Thomas L. Cubbage III
Christian J. Pistilli
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-6000

John J. Buckley, Jr.
Dane H. Butswinkas
Jonathan M. Landy
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005
(202) 434-5000

Attorneys for Moving Defendants