# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

—————————

## IN RE GENERAL ELECTRIC ERISA LITIGATION

No. 06-CV-315 (GLS/DRH)
(Lead Case)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS THE ENTIRE COMPLAINT FOR FAILURE TO STATE A CLAIM

O'CONNELL AND ARONOWITZ, P.C.
*Attorneys for Plaintiffs*
54 State Street, 9th Floor
Albany, New York  12207-2501
(518) 462-5601
JEFFREY J. SHERRIN
YVONNE E. MARCIANO
*Of Counsel*

MILBERG WEISS & BERSHAD LLP
*Attorneys for Plaintiffs*
One Pennsylvania Plaza
New York, New York 10119
(212) 594-5300
LORI G. FELDMAN
ARVIND KHURANA
SARA FUKS
*Of Counsel*

LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
*Attorneys for Plaintiffs*
58 South Service Road, Suite 200
Melville, New York 11747
SAMUEL H. RUDMAN
EVAN J. KAUFMAN
MARK S. REICH
(631) 367-7100
*Of Counsel*

LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
*Attorneys for Plaintiffs*
655 West Broadway, Suite 1900
San Diego, California  92101
MATTHEW P. MONTGOMERY
COURTLAND W. CREEKMORE
(619) 231-1058
*Of Counsel*

LAW OFFICE OF ALFRED G. YATES
*Attorneys for Plaintiffs*
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, Pennsylvania 15219
ALFRED G. YATES
(412) 391-5164
*Of Counsel*

Dated: April 16, 2007

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................. ii

PRELIMINARY STATEMENT ........................................................... 1

RELEVANT FACTS ............................................................................ 3

ARGUMENT ......................................................................................... 5

STANDARD OF REVIEW .................................................................... 5

POINT I ................................................................................................. 5

    *DURA* AND ITS PROGENY IS LIMITED TO THE
    SECURITIES LAWS; IT DOES NOT APPLY TO ERISA
    CLAIMS ............................................................................................ 5

POINT II .............................................................................................. 12

    THE COMPLAINT SUFFICIENTLY STATES A CLAIM FOR
    LOSS UNDER ERISA ..................................................................... 12

        A.    Allegations Of Loss Under ERISA. ......................... 12

        B.    The Complaint Pleads Loss As Required By
            ERISA. .................................................................. 18

CONCLUSION ................................................................................... 23

i

## <u>TABLE OF AUTHORITIES</u>

Page

### <u>Federal Cases</u>

*Agway, Inc. Employees' 401(k) Thrift Inv. Plan v. Magnuson*,
  No. 5:03-CV-1060 (HGM/DEP), 2006 U.S. Dist. LEXIS 74670  (N.D.N.Y.
  July 13, 2006)................................................................................................. 10

*Babcock v. Computer Assocs. Int'l*,
  186 F. Supp. 2d 253 (E.D.N.Y. 2002) ....................................................... 14

*Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle Street
  Partnership*,
  526 U.S. 434 (1999)...................................................................................... 9

*Basic v. Levinson*,
  485 U.S. 224 (1988)..................................................................................... 22

*Cardinal Health, Inc. ERISA Litig.*,
  424 F. Supp. 2d 1002  (S.D. Oh. 2006) ....................................... 6, 8, 10, 11

*Chao v. Moore*,
  No.  AW-99-1283, 2001 U.S. Dist. LEXIS 9012 (D. Md. June 15, 2001)................ 14

*Chao v. Trust Fund Advisors*,
  No. 02-559 (GK), 2004 U.S. Dist. LEXIS 4026 (D.D.C. Jan. 20, 2004).................... 13

*Collier v. Aksys Ltd.*,
  No. 04CV1232, 2005 U.S. Dist. LEXIS 20300 (D. Conn. Aug. 15, 2005),
  *aff'd*, 179 Fed. Appx. 770 (2d Cir. 2006) .................................................... 8

*Dardaganis v. Grace Capital, Inc.*,
  889 F.2d 1237 (2d Cir. 1989)....................................................... 14, 16, 17

*Davidson v. Cook*,
  567 F. Supp. 225 (E.D. Va. 1983),
  *aff'd, sub nom.*, *Davidson on behalf of Local 666 Ben. Trust Fund v. Cook*,
  734 F.2d 10 (4th Cir.),
  *cert. denied, sub nom., Accardi v. Davidson*, 469 U.S. 899 (1984)............................ 14

ii

*Diduck v. Kaszyzcki & Sons Contractors, Inc.*,
    974 F.2d 270 (2d Cir. 1992).................................................................... 17

*Difelice v. U.S. Airways, Inc.*,
    235 F.R.D. 70 (E.D.N.Y. 2006) ............................................................ 13

*Donovan v. Bierwirth*,
    754 F.2d 1049 (2d Cir. 1985)........................................................... passim

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005)......................................................................... passim

*Eaves v. Penn*,
    587 F.2d 453 (10th Cir. 1978) .............................................................. 15

*Ehlmann v. Kaiser Found. Health Plan*,
    20 F. Supp. 2d 1008 (N.D. Tex. 1998),
    *aff'd*, 193 F.3d 552 (5th Cir.),
    *cert. dismissed*, 530 U.S. 1291 (2000) .................................................. 17

*Elec. Data Sys. Corp. Secs. Litig.*,
    226 F.R.D. 559 (E.D. Tx. 2005) ........................................................... 11

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
    343 F.3d 189 (2d Cir. 2003)..................................................................... 7

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976)............................................................................... 12

*Feder v. Electronic Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) ................................................................ 11

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989)............................................................................... 12

*Fowlkes v. Adamec*,
    432 F.3d 90 (2d Cir. 2005)....................................................................... 5

*Freeland v. Iridium World Commc'ns, Ltd.*,
    233 F.R.D. 40 (D.D.C. 2006)................................................................. 21

*Glanton v. AdvancePCS Inc.*,
    465 F.3d 1123 (9th Cir. 2006) .............................................................. 10

iii

*Glaser v. Enzo Biochem, Inc.*,
  464 F.3d 474 (4th Cir. 2006),
  *cert. denied*, 2007 U.S. LEXIS 3586 (Mar. 26, 2007) .................................................. 7

*Glaxo SmithKline PLC Sec. Litig.*,
  No. 05 Civ. 3751, 2006 U.S. Dist. LEXIS 73893 (S.D.N.Y. Oct. 6, 2006).................. 8

*Harley v. Minnesota Mining and Mfg. Co.*,
  42 F. Supp. 2d 898 (D. Minn. 1999),
  *aff'd*, 284 F.3d 901 (8th Cir. 2002),
  *cert. denied*, 537 U.S. 1106 (2003) .......................................................................... 14

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
  302 F.3d 18 (2d Cir. 2002)......................................................................................... 13

*Henry v. Champlain*,
  288 F. Supp. 2d 202 (N.D.N.Y. 2003) ....................................................................... 17

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935)...................................................................................................... 9

*Imperial "400" National, Inc.*,
  456 F.2d 926 (3d Cir. 1972)........................................................................................ 16

*Kane v. United Indep. Union Welfare Fund*,
  No. 97-1505, 1997 U.S. Dist. LEXIS 10534 (July 22, 1997) .................................. 8, 9

*Kuper v. Iovenko*,
  66 F.3d 1447 (6th Cir. 1995) ...................................................................................... 17

*Leigh v. Engle*,
  858 F.2d 361 (7th Cir. 1988) ...................................................................................... 14

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)..................................................................................... 7, 21

*Lewis v. Herman*,
  775 F. Supp. 1137 (N.D. Ill. 1991) .............................................................................. 6

*Locher v. UNUM Life Ins. Co. of Am.*,
  389 F.3d 288 (2d Cir. 2004)........................................................................................ 12

*Martin v. Feilen*,
  965 F.2d 660 (8th Cir. 1992) ...................................................................................... 17

iv

*McDonald v. Provident Indem. Life Ins. Co.*,
   60 F.3d 234 (5th Cir. 1995),
   *cert. denied*, 516 U.S. 1174 (1996)............................................................. 17

*McMahon & Co. v. Wherehouse Entertainment, Inc.*,
   65 F.3d 1044 (2d Cir. 1995),
   *cert. denied*, 517 U.S. 1190 (1996).............................................................. 8

*Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   272 F. Supp. 2d 243 (S.D.N.Y. 2003)........................................................... 8

*Meyer v. Berkshire Life Ins. Co.*,
   250 F. Supp. 2d 544 (D. Md. 2003),
   *aff'd*, 372 F.3d 261 (4th Cir. 2004)................................................ 13, 14, 15

*Morgan v. Sanchez*,
   No. 06-CV-00027 (GLS/RFT), 2007 U.S. Dist. LEXIS 5041 (N.D.N.Y. Jan.
   24, 2007) .......................................................................................................... 5

*NTL, Inc. Sec. Litig.*,
   No. 02-3013, 2006 U.S. Dist. LEXIS 5346 (S.D.N.Y. Feb. 14, 2006)....................... 21

*NUI Sec. Litig.*,
   314 F. Supp. 2d 388 (D.N.J. 2004) ............................................................... 9

*Perkins v. Waukesha National Bank*,
   290 F.2d 912 (7th Cir.),
   *cert. denied*, 368 U.S. 928 (1961) .............................................................. 16

*Pietrangelo v. NUI Corp.*,
   No. 04-3223, 2005 U.S. Dist. LEXIS 40832 (D.N.J. July 18, 2005)...................... 8, 9

*Rankin v. Rotts*,
   278 F. Supp. 2d 853 (E.D. Mich. 2003)...................................................... 11

*Roth v. Sawyer-Cleator Lumber Co.*,
   61 F.3d 599 (8th Cir. 1995) ...................................................... 12, 14, 17

*SEC v. Capital Gains Research Bureau, Inc.*,
   375 U.S. 180 (1963)....................................................................................... 12

*Semerenko v. Cendant Corp.*,
   223 F.3d 165 (3d Cir. 2000)........................................................................... 8

v

*Silverman v. Mut. Benefit Life Ins. Co.*,
    138 F.3d 98 (2d Cir.),
    *cert. denied*, 525 U.S. 876 (1998) ............................................................................... 17

*Toussaint v. James*,
    No. 01 Civ. 10048, 2003 U.S. Dist. LEXIS 12940 (S.D.N.Y. July 25, 2003)...... 13, 15

*Twombly v. Bell Atl. Corp.,*
    425 F.3d 99 (2d Cir.),
    *vacated on other grounds*, 425 F.3d 99 (2d Cir. 2005),
    *cert. granted*, __ U.S. __, 126 S. Ct. 296 (2006) ......................................................... 5

*United States v. Olis*,
    429 F.3d 540 (5th Cir. 2005) ...................................................................................... 8

*Worldcom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................................... 8

## Federal Statutes

29 U.S.C. § 1109(a) ........................................................................................................... 12

Fed. R. Civ. P. 12(b)(6).................................................................................................. 1, 5

RESTATEMENT (SECOND) OF TRUSTS § 205(c) (1959)................................................. 15, 16

## Other

Prosser and Keeton on Law of Torts.................................................................................. 21

Plaintiffs,[1] on behalf of the Plan, themselves, and all others similarly situated submit this memorandum of law in opposition to Defendants' Second Motion To Dismiss The Entire Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  See Docket No. 44 (Defendants' Memorandum Of Law In Support Of Their Second Motion To Dismiss The Entire Complaint For Failure To State A Claim) ("Defendants' Second MOL").

## PRELIMINARY STATEMENT

As more fully described in Plaintiffs' Memorandum of Law In Opposition to Defendants' First Motion to Dismiss for Failure to State a Claim ("Plaintiffs' First MOL"), this case concerns Defendants' repeated breaches of their fiduciary duties to the Plan by continuing to allow the Plan to be invested in GE stock when GE's under-reserving activities made the investment imprudent.  The result were multi-billion dollar losses to the Plan.  *See generally,* Plaintiffs' First MOL at pp. 1 -14.

The crux of Defendants' Second Motion to Dismiss is that Plaintiffs have failed to properly plead loss and "loss causation."   Defendants rely on the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) to argue that Plaintiffs must allege a decline in the price of GE common stock.  *See* Defendants' Second MOL at p. 1.   Defendants' motion need not detain the Court for very long.

Defendants fail to cite <u>any</u> precedent to support their argument that Plaintiffs need to allege "loss causation."  Instead, Defendants try to manipulate ERISA pleading

---

[1] Plaintiffs as participants in the GE Savings & Security Program (and any other defined contribution plan sponsored by General Electric Company ("GE" or the "Company") which held GE common stock) (collectively, the "Plan") during the proposed Class Period.

1

requirements by citing securities law cases to create the impression that the securities law element of "loss causation" applies to ERISA.  This mixing of apples and oranges does not pass muster for three primary reasons:

1.    No court has ever held that an ERISA plaintiff need allege, or even prove, "loss causation;"

2.    As a securities law concept, "loss causation" is not applicable to ERISA given the separate and distinct purposes and common law roots between securities and ERISA law; and

3.    Controlling ERISA precedent recognizes a broader notion of loss than do the securities laws.

As a result, Defendants' entire argument is flawed.  Neither *Dura*, nor any of the other cases Defendants cite, require allegations of "loss causation" in this or any other ERISA case.  Moreover, Plaintiffs have amply met the requisite pleading requirements of loss under ERISA – namely, a causal link between the breach of the fiduciary duty and the harm suffered by the Plan.  Further, even if *Dura* were controlling, which it is not, Plaintiffs' allegations are more than sufficient to survive a motion to dismiss.  Accordingly, Defendants' Second Motion to Dismiss should be denied in its entirety.

Tellingly, on the eve of Plaintiffs' opposition deadline, Defendants filed a summary judgment motion explicitly recognizing leading Second Circuit precedent for pleading ERISA loss (*Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir. 1985), while at the same time asserting various other means for establishing losses under ERISA.  *See* Docket No. 59.  It therefore belies common sense for such a complex issue to be decided on a 12(b)(6) motion to dismiss.  Moreover, Defendants' summary judgment motion is replete with factual averments, including a multi-page affidavit supported by almost thirty

2

pages of factual information and a litany of asserted material facts.  The mere existence of such factual testimony highlights Plaintiffs' positions: (1) the Complaint sufficiently alleges a "loss" under ERISA; and (2) it is premature at this stage of the proceedings where no factual or expert discovery has been conducted to resolve the fact based inquiry of the Plan's loss.

In sum., the Complaint amply pleads how the Plan suffered loss as a result of Defendants' fiduciary breaches – (1) the value of the Plan actually decreased during the Class Period; and (2) the Plan would have earned more had it been invested in a prudent investment as opposed to the imprudent investment in GE stock.   Accordingly, Plaintiffs' have met their pleading obligations under ERISA and Rule 8 of the Federal Rules of Civil Procedure sufficient to defeat Defendants' Second Motion to Dismiss.

## RELEVANT FACTS

For ease of reference, Plaintiffs hereby incorporate by reference the Statement of Facts set forth in their Memorandum of Law In Opposition to Defendants' First Motion to Dismiss the Entire Complaint for Failure to State a Claim.  As detailed therein, throughout the Class Period, despite knowing that GE stock was an imprudent investment, the Defendants continued to offer it as an investment alternative to Plan participants without providing full disclosure of the rampant under-reserving activities. The result was significant drops in the Plan's earnings and, at the very least, a reduction in Plan earnings that would have been realized if Defendants had exercised their fiduciary duties in accordance with ERISA's requirements and invested the Plan in prudent

investments.  *See* Consolidated Amended Complaint, dated October 16, 2006,

("Complaint"), ¶ 231-233.

According to the allegations in the Complaint, "[d]uring the Class Period and

continuing to the present, GE misstated its earnings through material under-reserving in

its [ERC] insurance division."  ¶ 150.  The result has been "the erosion of billions of

dollars of retirement savings and anticipated retirement income for Plan participants.[ ]"

as well as the plummeting stock value of Company Stock from a high of approximately

$50 per share in the months preceding the Class Period to its current price of

approximately $35 per share.  ¶¶ 8, 177, 231-33.  Similar under-reserving, which is

estimated to be at least $5 billion and as much as $10 billion, continues to date in the Life

and Health lines of GE's insurance business.  ¶¶ 150, 231-33.  The result of this colossal

under-reserving and related fiduciary duty breaches is that the Plan suffered massive

losses because a substantial amount of Plan assets were imprudently invested by the Plan

in GE stock .  ¶ 231.

## ARGUMENT

## STANDARD OF REVIEW

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a cause of action shall be dismissed only where the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Thus, a court may dismiss a complaint on a Rule 12(b)(6) motion only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of the complaint which would entitle him to relief." *Twombly v. Bell Atl. Corp.,* 425 F.3d 99, 106 (2d Cir., *vacated on other grounds*, 425 F.3d 99 (2d Cir. 2005), *cert. granted*, __ U.S. __, 126 S. Ct. 296 (2006) (internal quotation marks and citation omitted). "Therefore, in reviewing a motion to dismiss, a court 'must accept the facts alleged in the complaint as true and construe all reasonable inferences in [the plaintiff's] favor.'" *Morgan v. Sanchez*, No. 06-CV-00027 (GLS/RFT), 2007 U.S. Dist. LEXIS 5041, * 3  (N.D.N.Y. Jan. 24, 2007) (Sharpe, J.) (quoting *Fowlkes v. Adamec,* 432 F.3d 90, 95 (2d Cir. 2005)).

## POINT I

### *DURA* AND ITS PROGENY IS LIMITED TO THE SECURITIES LAWS; IT DOES NOT APPLY TO ERISA CLAIMS

Defendants argue that Plaintiffs' claims should be dismissed because they have not adequately pled "loss causation." *See* Defendants' Second MOL, Point I.  According to Defendants, in order to adequately plead "loss causation," Plaintiffs need to allege a drop in the trading price of GE common stock following the disclosure of the insufficient

5

reserves at both ERC and GE's life and health insurance business.  *See generally, id.*

Simply put, Defendants' entire argument is based on the flawed premise that the Supreme

Court's recent securities fraud decision in *Dura* applies in the ERISA context.[2]

The *Dura* decision arose out of a private damages action for securities fraud under

section 10(b) of the Securities Exchange Act of 1934 and Rule 10-b of the Securities and

Exchange Commission.  544 U.S. 336.  On appeal, the Supreme Court considered a prior

Ninth Circuit holding that a plaintiff could satisfy the "loss causation" requirement "by

alleging in the complaint and subsequently establishing that 'the price' of the security '*on*

*the date of purchase* was inflated because of the misrepresentation.'"  *Id.* at 339 (quoting

*Dura Pharmaceuticals, Inc. v. Broudo*, 339 F.3d 933, 938 (9th Cir. 2003) (emphasis in

original)).

In *Dura*, the plaintiffs represented a class of individuals who bought Dura

Pharmaceuticals' stock on the public market during a 10-month period.  *Id.*  The plaintiffs

alleged that, before and during the purchase period, *Dura* made false statements

concerning its profits and prospects for future approval of its products by the Food and

Drug Administration.  *Id.*  On the last day of the class period, Dura disclosed to the

market that its earnings would be lower than previously expected; as a result, the stock

---

[2] There appears to be only one reported decision that has ever applied the securities law "loss causation" requirement in an ERISA action.  *See Lewis v. Herman*, 775 F. Supp. 1137 (N.D. Ill. 1991).  However, the court did so only because the plaintiff "effectively conceded that it [wa]s a requirement."  *Id.* at 1151. Moreover, even that court expressly noted that the defendants had failed to assert any authority that "loss causation" was an essential element of the ERISA claim.  *Id.* Based upon these essential facts, the *Lewis* court never actually held that the securities law "loss causation" requirement applies in an ERISA action. Perhaps this is why *Lewis* has not been cited as a basis for extending the "loss causation" requirement to ERISA actions.  Further, at least one court has considered and explicitly rejected the insinuation that *Lewis* supports the extension of the securities law "loss causation" requirement to ERISA jurisprudence.  *See In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1043  (S.D. Oh. 2006).

price declined.  *Id.*  Approximately 8 months later, Dura further disclosed that the FDA

had declined to approve its new product, resulting in further loss in market value.  *Id.*

Based on this, the plaintiffs alleged that "[i]n reliance on the integrity of the market, the

plaintiffs paid artificially inflated prices for Dura securities and the plaintiffs suffered

damages thereby."  *Id.* at 340 (internal quotations and formatting omitted).

      In considering the issue before it, the Supreme Court recognized that "[p]rivate

federal securities fraud actions are based upon federal securities statutes and their

implementing regulations[ ]" as well as "common-law deceit and misrepresentation

actions."  *Id.* at 340, 343.  The Supreme Court also looked to the objective behind

securities law – maintaining public confidence in the marketplace.  *Id.* at 345.

Accordingly, the Supreme Court held that merely pleading an artificially inflated market

price is insufficient with respect to the "loss causation" element of a securities fraud

claim.  *Id.* at 347.[3]

      Tellingly, the Supreme Court's decision in *Dura* never once mentioned ERISA.

*See generally, id.*  The same is true for the remaining cases Defendants cite in their

dismissal motion papers regarding "loss causation."  *See, e.g., Lentell v. Merrill Lynch &*

*Co.*, 396 F.3d 161 (2d Cir. 2005) (discussing securities fraud); *Glaser v. Enzo Biochem,*

*Inc.*, 464 F.3d 474 (4th Cir. 2006), *cert. denied*, 2007 U.S. LEXIS 3586 (Mar. 26, 2007)

(discussing common law fraud); *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group,*

*Inc.*, 343 F.3d 189 (2d Cir. 2003) (discussing securities and common law fraud);

---

[3] Although Defendants argue that *Dura* requires a plaintiff to allege both a disclosure and a subsequent
drop in market price, their argument wholly misstates the Supreme Court's holding.  While the *Dura* court
did hold that allegations of artificially inflated market price is insufficient to show loss causation, it did not

*Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000) (discussing securities fraud);

*McMahon & Co. v. Wherehouse Entertainment, Inc.*, 65 F.3d 1044 (2d Cir. 1995), *cert.*

*denied*, 517 U.S. 1190 (1996) (discussing securities fraud); *In re Glaxo SmithKline PLC*

*Sec. Litig.*, No. 05 Civ. 3751, 2006 U.S. Dist. LEXIS 73893 (S.D.N.Y. Oct. 6, 2006)

(discussing securities fraud); *In re Worldcom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319

(S.D.N.Y. 2005) (discussing securities fraud); *Collier v. Aksys Ltd.*, No. 04CV1232, 2005

U.S. Dist. LEXIS 20300 (D. Conn. Aug. 15, 2005), *aff'd*, 179 Fed. Appx. 770 (2d Cir.

2006) (discussing securities fraud); *In re Merrill Lynch & Co., Inc. Research Reports Sec.*

*Litig.*, 272 F. Supp. 2d 243 (S.D.N.Y. 2003) (discussing securities fraud).[4]

Perhaps the only exceptions are *Pietrangelo v. NUI Corp.*, No. 04-3223, 2005

U.S. Dist. LEXIS 40832 (D.N.J. July 18, 2005)[5] and *Kane v. United Indep. Union*

*Welfare Fund*, No. 97-1505, 1997 U.S. Dist. LEXIS 10534 (July 22, 1997).[6]  The

*Pietrangelo* case actually comprised two litigations – the one cited by Defendants which

was brought under ERISA and a second securities fraud litigation pending before the

same court.  In the *Pietrangelo* ERISA decision, the court explicitly states that it was not

deciding whether an ERISA plaintiff must demonstrate "loss causation."  2005 U.S. Dist.

---

delineate exactly what allegations would be sufficient.

[4] More troubling is Defendants' citation to *United States v. Olis*, 429 F.3d 540 (5th Cir. 2005).  Not only does this case concern securities law, as opposed to ERISA, but its discussion of "loss causation" concerns application of the federal sentencing guidelines in a criminal case.  *Id.*  It, therefore, provides no relevant guidance on this motion.

[5] Notably, the *Pietrangelo* decision explicitly states that it is "NOT FOR PUBLICATION."  *See* 2005 U.S. Dist. LEXIS 40832, * 1.

[6] *Pietrangelo* has not been cited with respect to this issue by other courts and, although *Kane* has been, the only court to do so has explicitly rejected it as a basis to imply a "loss causation" requirement under ERISA.  *See In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002 (S.D. Oh. 2006).

LEXIS 40832, at * 41.  Only then does the court go on to discuss its reasoning from the securities fraud litigation where allegations of "loss causation" were found lacking. *Compare Pietrangelo*, with *In re NUI Sec. Litig.*, 314 F. Supp. 2d 388, 400-01 (D.N.J. 2004).  Thus, any suggestion from the court's decision, which Defendants try to craft, that an ERISA plaintiff need prove "loss causation" is merely *dicta* and provides absolutely no support for Defendants' argument.  *See Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 460 (1999) ("Dicta bind[] neither this Court nor the lower federal courts."); *Humphrey's Executor v. United States*, 295 U.S. 602, 627 (1935) ("Dicta … may be followed if sufficiently persuasive but [is] not controlling").

As to *Kane*, it has no bearing on the issue presented in Defendants' motion. There, three former participants in an ERISA plan brought various claims under ERISA and the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA").  *Id.* at * 1.   The court dismissed these claims as "too speculative" because the plaintiffs failed to allege any harm to the fund; all of their allegations were individualized in nature.  *Id.* at * 6-8. In doing so, the court looked to the requirement that an ERISA action "be for the benefit of the Fund itself not individual beneficiaries of the Fund."  *Id.* at * 7.  The court did not address ERISA § 409 or, even generally, the type of loss that an ERISA plaintiff must plead.  Moreover, the complaint in *Kane* conceded that there was no present injury to the plan and pled only a possibility of future injury.  *Id.* at * 7 (explicitly alleging that "Plaintiffs do not now aver that the Fund has suffered monetary losses due to breaches of fiduciary responsibility.").  Accordingly, Defendants' citation to *Kane* as support for their

9

motion is wholly misplaced.[7]

In addition to the vacuum of case law supporting Defendants' argument, at least one federal court has outright rejected it.  *See Cardinal Health*, 424 F. Supp. 2d 1002.[8]  In *Cardinal Health*, an analogous class action was brought on behalf of employees of Cardinal Health, Inc.  who had invested in Cardinal stock through the company's 401K plan.  *Id.* at 1009.  Bringing suit under ERISA, the plaintiffs alleged that the company and those associated with it engaged in accounting manipulations to hide losses and inflate revenues.  *Id.*  Plaintiffs also alleged that the company and its associates disseminated false and misleading information.  *Id.*  According to the plaintiffs, "Cardinal's accounting manipulations and its purported dissemination of material misrepresentations affected the price of its securities, misled investors as to the Company's 'true value,' and caused [p]laintiffs to lose money that they had invested in Cardinal's 401K plan."  *Id.* Defendants filed multiple motions to dismiss under Rule 12(b)(6), arguing, *inter alia*, that the plaintiffs had failed to state a claim under ERISA in light of the Supreme Court's decision in *Dura*.  *Id.* at 1042.

In a thorough analysis, the court rejected the defendants' argument.  *Id.* at 1042-44.  First, the court highlighted the defendants' failure to "cite any authority that *Dura*

---

[7] A similar conclusion befalls Defendants' citation to *Glanton v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006).  In *Glanton*, although the court found that the plaintiffs lacked standing, its holding did not concern ERISA § 409 or whether sufficient allegations of economic injury existed.  *See generally, id.*  Rather, the court's holding as to standing was based on the fact that "any prospective benefits depend on an independent actor who retains 'broad and legitimate discretion the courts cannot presume either to control or to predict.'"  *Id.* at 1125.

[8] Albeit not specifically "loss causation," this case has been cited favorably in this Circuit on a variety of ERISA issues.  *See, e.g., Agway, Inc. Employees' 401(k) Thrift Inv. Plan v. Magnuson*, No. 5:03-CV-1060 (HGM/DEP), 2006 U.S. Dist. LEXIS 74670  (N.D.N.Y. July 13, 2006).

applies in an ERISA case" or "provide any authority for the proposition that federal

courts have applied similar reasoning in dismissing ERISA claims on causation

grounds[.]"  *Id.* at 1043.  The court also noted that, in addition to the lack of precedent,

"pleadings rules based on the law of fraud do not translate well into the ERISA context."

*Id.* (citing *Rankin v. Rotts*, 278 F. Supp. 2d 853, (E.D. Mich. 2003)).  In sum, "the court

refuse[d] to read into ERISA a requirement that [p]laintiffs must plead 'loss causation' in

accordance with the standard necessary for securities fraud claims.  *Id.*

      Although not as explicitly as *Cardinal Health*, other courts have similarly

suggested that the securities law concept of "loss causation" does not apply to ERISA

claims.  *See, e.g., Feder v. Electronic Data Sys. Corp.*, 429 F.3d 125, 136 (5th Cir. 2005)

(recognizing that the concept of loss under ERISA is broader than the theory of "loss

causation" under securities law); *In re Elec. Data Sys. Corp. Secs. Litig.*, 226 F.R.D. 559,

569, n. 8 (E.D. Tx. 2005) (recognizing the distinctions between ERISA and securities law

losses; "Defendants claim ERISA allows plaintiffs to recover the gains they would have

realized if the funds invested in EDS stock had been invested in an alternate and allegedly

more prudent security, while damages under the securities laws are determined by largely

statutory means").

      In sum, Defendants have presented no relevant legal authority for their motion.

Neither *Dura*, nor any of the other cases Defendants cite, suggest that the securities law

"loss causation" pleading requirement applies in ERISA cases.  In contrast, explicit case

law has outright rejected the exact argument urged by Defendants here.  Defendants'

motion to dismiss should be denied *in toto*.[9]

## POINT II

### THE COMPLAINT SUFFICIENTLY STATES A
### CLAIM FOR LOSS UNDER ERISA

**A.    Allegations Of Loss Under ERISA.**

Not surprisingly, Defendants completely ignore controlling Second Circuit

precedent governing loss allegations under section 409 of ERISA.  The starting point is

the statute itself, which provides in relevant part:

> [a]ny person who is a fiduciary with respect to a plan who
> breaches any of the responsibilities, obligations, or duties
> imposed upon fiduciaries by this title shall be personally
> liable to make good to such plan any losses to the plan
> resulting from each such breach[.]

29 U.S.C. § 1109(a).

Although ERISA does not define what constitutes an imprudent investment "loss"

for which fiduciaries are responsible under § 409(a), ERISA's legislative history

"indicates that Congress' intent was 'to provide the full range of legal and equitable

---

[9] It is not surprising that the securities law concept of "loss causation" has never been extended to ERISA claims.  As noted in *Dura*, securities law is premised upon and analogous to common law fraud.  544 U.S. at 343; *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976).  ERISA, on the other hand, is premised upon the common law of trusts.  *See Donovan v. Bierwirth*, 754 F.2d 1049, 1055 (2d Cir. 1985) (stating that the loss requirement of ERISA § 409(a) has been interpreted by looking to "principles developed in the common law of trusts, which in large measure remain applicable under ERISA."); *see also Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 604 (8th Cir. 1995).  Congressional purpose behind securities law and ERISA also differs in substantial respect.  Congress created ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (citations and quotations omitted); *see also Locher v. UNUM Life Ins. Co. of Am.*, 389 F.3d 288, 295 (2d Cir. 2004); 29 U.S.C. § 1001 (listing the congressional findings and declaration of policy regarding ERISA).  In contrast, the "fundamental purpose" of the securities laws is "to substitute a philosophy of full disclosure for the philosophy of caveat emptor[.]"  *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186 (1963).

remedies available in both state and federal courts.'" *Donovan v. Bierwirth*, 754 F.2d 1049, 1052 (2d Cir. 1985) (quoting H. REP. NO. 533, 93d Cong., 2d Sess., *as reprinted in* 1974-3 U.S.C.A.N.N. 4639, 4655); *see also Chao v. Trust Fund Advisors*, No. 02-559 (GK), 2004 U.S. Dist. LEXIS 4026, *18 (D.D.C. Jan. 20, 2004); *accord Meyer v. Berkshire Life Ins. Co.*, 250 F. Supp. 2d 544, 570 (D. Md. 2003), *aff'd*, 372 F.3d 261 (4th Cir. 2004) ("losses to the plan in § 1109 [should be construed] broadly in order to further the remedial purposes of ERISA") (internal quotation marks and citations omitted; brackets in original).

The Second Circuit and numerous other courts have repeatedly held that the measure of damages in an ERISA case is restoring the Plan to the position it would have occupied but for the breach. *See Donovan*, 754 F.2d at 1056; *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 34 (2d Cir. 2002) (stating "[w]e reiterate that the proper measure of damages is to be calculated by determining what the Plan would have earned had Hancock exercised its discretionary authority with respect to its investment and allocation decisions in accordance with its fiduciary duties under ERISA.") (citing *Donovan*, 754 F.2d at 1056); *Difelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 83 (E.D.N.Y. 2006) ("[t]he loss causation burden can be satisfied simply by proving that there was a fiduciary breach, and that but for the breach, the Plan's assets would have been greater[]"); *Toussaint v. James*, No. 01 Civ. 10048, 2003 U.S. Dist. LEXIS 12940, * 13-15 (S.D.N.Y. July 25, 2003) (reiterating that "the appropriate remedy in cases of breach of fiduciary duty is the restoration of the trust beneficiaries to the position they would have occupied but for the breach of trust[]") (quoting *Dardaganis v. Grace*

*Capital, Inc.*, 889 F.2d 1237, 1243 (2d Cir. 1989)); *Babcock v. Computer Assocs. Int'l*,

186 F. Supp. 2d 253, 261 (E.D.N.Y. 2002) ("the measure of the lost benefits to the

plaintiff can be measured by the difference between what the Plan actually earned on the

present investment and what the Plan could have earned had other funds been made

available"); *see also Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d at 604 (adopting

analysis from Second Circuit; holding that the loss is determined "by comparing the

[plan's] actual profit to potential profit that could have been realized in the absence of the

breach."); *Meyer*, 250 F. Supp. 2d at 572 ("the proper measure of damages is the

difference between the actual value of the plans and the 'value prudent investments would

bear.'") (quoting *Davidson v. Cook*, 567 F. Supp. 225, 240 (E.D. Va. 1983)); *Chao v.

Moore*, No.  AW-99-1283, 2001 U.S. Dist. LEXIS 9012, * 23-24 (D. Md. June 15, 2001)

("'comparing the return on the improper investment with that of a reasonably prudent

alternative investment' represents an appropriate means of assessing damages under 29

U.S.C. § 1109.") (quoting *Leigh v. Engle*, 858 F.2d 361, 367 (7th Cir. 1988)); *Harley v.

Minnesota Mining and Mfg. Co.*, 42 F. Supp. 2d 898, 912 (D. Minn. 1999), *aff'd,* 284

F.3d 901 (8th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003) (finding, for imprudent

investment, the loss is the difference between the plan's actual profits and the profits it

would have achieved had there been no breach); *Davidson v. Cook*, 567 F. Supp. 225, 240

(E.D. Va. 1983), *aff'd, sub nom.*, *Davidson on behalf of Local 666 Ben. Trust Fund v.

Cook*, 734 F.2d 10 (4th Cir.), *cert. denied, sub nom., Accardi v. Davidson*, 469 U.S. 899

(1984) ("One type of loss, however, can be measured: the Fund today holds an investment

whose value is significantly less than the value prudent investments would bear. That

difference in value represents the damage the Fund has suffered.").

To establish a "loss," there is no requirement that the Plan actually suffer a drop in value stemming from the breach, or, as Defendants urge, that the price of the stocks invested in by the Plan declined. *Toussaint*, 2003 U.S. Dist. LEXIS 12940 (rejecting defendants' argument that claim should be dismissed where Plan did not suffer any loss in value); *cf. Meyer*, 250 F. Supp. 2d at 570-71. Indeed, Defendants cite absolutely no ERISA precedent supporting such an interpretation of Section 409(a)'s causation requirement. *See generally*, Defendants' Second MOL.

For example, in *Donovan* the issue presented on appeal concerned damages under ERISA. 754 F.2d at 1052.[10] In particular, the court addressed whether a "loss" existed for purposes of ERISA § 409 "if securities are purchased in breach of trust but are later sold at a price exceeding the purchase price[.]" *Id.* The Second Circuit answered this question in the affirmative, rejecting the defendants reliance on the $13 million the Plan had actually earned. *Id.* at 1051. Looking to principles from the common law of trusts and its finding that ERISA § 409 was meant to undo harm caused by a fiduciary, the Second Circuit reached the following conclusion:

> [o]ne appropriate remedy in cases of breach of fiduciary duty is the restoration of the trust beneficiaries to the position they would have occupied but for the breach of trust. RESTATEMENT (SECOND) OF TRUSTS § 205(c) (1959); *see Eaves v. Penn*, 587 F.2d [453,] 463 [10th Cir. 1978]. In view of the intent expressed by Congress in providing for the recovery of "losses," and in the absence of evidence of

---

[10] While confusingly citing cases that evaluate "loss" in various contexts and with various levels of proof, Defendants explicitly recognize *Donovan*, not in its Second Motion to Dismiss, but rather in their inaptly timed summary judgment motion.

> congressional intent to penalize, as such, violations of
> section 409, we hold that the measure of loss applicable
> under ERISA section 409 requires a comparison of what
> the Plan actually earned on the … investment with what the
> Plan would have earned had the funds been available for
> other Plan purposes.  If the latter amount is greater than the
> former, the loss is the difference between the two; if the
> former is greater, no loss was sustained.  *See id.*;
> RESTATEMENT (SECOND) OF TRUSTS § 205(c) (1959*); see
> also In re Imperial "400" National, Inc.*, 456 F.2d 926, 931
> (3d Cir. 1972); *Perkins v. Waukesha National Bank*, 290
> F.2d 912, 918 (7th Cir.), *cert. denied*, 368 U.S. 928 (1961).

*Id.* at 1056.

The Second Circuit's decision in *Dardaganis v. Grace Capital, Inc.* also is

instructive.  889 F.2d 1237 (2d Cir. 1989).  In *Dardaganis*, Plan Trustees brought an

action under ERISA alleging that the defendants had breached their fiduciary duties by

failing to abide by Plan documents which placed certain restrictions on the investment of

Plan assets.  *Id.* at 1239.  The district court granted summary judgment, in the form of two

decisions (one for liability and the second as to damages), to the Plan Trustees.  *Id.* at

1240.  On appeal, the defendants argued, among other things, that the district court

erroneously granted the Plan Trustees summary judgment as to damages.  *Id.* at 1243-44.

 Relevant here, the defendants argued "that even if they breached a duty, there were no

'losses' to the plan because the sum of the Fund's assets and cash withdrawn to meet

Fund obligations increased during their tenure."  *Id.* at 1243.  This argument was flatly

rejected by the Second Circuit.

According to the Court,

> This argument ignores our opinion in *Donovan v.
> Bierwirth*, … where we said that an "appropriate remedy in
> cases of breach of fiduciary duty is the restoration of the

16

> trust beneficiaries to the position they would have occupied
> but for the breach of trust."  If, but for the breach, the Fund
> would have earned more that it actually earned, there is a
> "loss" for which the breaching fiduciary is liable.

*Id.* (quoting *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985)).[11]

The ERISA cases that Defendants do cite neither conflict with this well established precedent nor support their argument that an ERISA plaintiff must plead "loss causation."  *See Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995); *Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98 (2d Cir.), cert. denied, 525 U.S. 876) (1998); *Diduck v. Kaszyzcki & Sons Contractors, Inc.*, 974 F.2d 270 (2d Cir. 1992); *Henry v. Champlain*, 288 F. Supp. 2d 202 (N.D.N.Y. 2003).  These cases merely require an ERISA plaintiff to allege a causal connection between the fiduciary duty breach and the loss or harm suffered by the plan.  Not one of them dictate the type of loss that a plaintiff must allege and, more specifically, none of these cases require an ERISA plaintiff to plead a decline in stock price.  As such, the dictates of these limited ERISA cases, upon which Defendants rely, provide no support for their motion.[12]

Given the foregoing, Defendants' insinuation that the Supreme Court's *Dura*

---

[11] *See also Dardaganis v. Grace Capital, Inc.*, 889 F.2d 1237; *Donovan*, 754 F.2d 1049 (finding adequate loss allegation despite multi-million dollar increase in Plan assets).

[12] In addition, some courts have held that once a plaintiff establishes a breach of fiduciary duty and a loss, it is the breaching fiduciary's burden to prove that the loss was not caused by the breach.  *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234 (5th Cir. 1995), *cert. denied*, 516 U.S. 1174 (1996); *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d at 919-20 (citing *Martin v. Feilen*, 965 F.2d 660, 671 (8th Cir. 1992)); *see also Ehlmann v. Kaiser Found. Health Plan*, 20 F. Supp. 2d 1008, 1011 (N.D. Tex. 1998), *aff'd*, 193 F.3d 552 (5th Cir.), *cert. dismissed*, 530 U.S. 1291 (2000) ("[E]ven if Plaintiffs had failed to plead causation, the burden of proof on that element in an ERISA breach-of-fiduciary case lies with Defendants."); *but see Silverman*, 138 F.3d at 106, n. 1 (noting that Department of Law argued similar position but declined to render a specific holding on the loss issue because the issue before the court was causation, not damages).

decision imposed a "loss causation" requirement in ERISA cases is simply wrong.

Defendants' urgings to the contrary are either misguided and misleading.  Either way,

they serve as no basis to dismiss the Complaint where Plaintiffs' have alleged not only

that GE stock did not appreciate commensurate with prudent investments but also that the

stock price actually declined.  Only with necessary factual and expert discovery can the

Court fully and completely assess the allegations in the Complaint.  Plaintiffs, therefore,

respectfully submit that the Court should deny Defendants' Second Motion to Dismiss in

its entirety.


**B.      The Complaint Pleads Loss As Required By ERISA.**

In full compliance with controlling law, the Complaint clearly and unambiguously

alleges that Defendants should have known that GE stock was an imprudent investment

and that the Plan did not earn what it would have earned had it been invested in prudent

investments.  *See, e.g., Donovan*, 754 F.2d 1049.  Indeed, the allegations in the

Complaint go much farther and include allegations concerning under-reserving at both

ERC and the Life and Health insurance businesses:

> As a result of Defendants' fiduciary breaches, as hereinafter
> enumerated and described, the Plan has suffered substantial
> damages, including the erosion of billions of dollars of
> retirement savings and anticipated retirement income for
> Plan participants.  Indeed, Plan participants have seen their
> retirement savings accounts devastated as Company Stock
> plummeted from a high of approximately $50 per share in
> the months preceding the Class Period to its current price of
> approximately $35 per share.  Under ERISA, the breaching
> fiduciaries are obligated to restore to the Plan the losses
> resulting from these fiduciary breaches (*see* ¶ 8).

> During the Class Period and continuing to the present, GE

18

misstated its earnings through material under-reserving in its insurance division.  During the period 1997 through the time ERC was sold to Swiss Re in June 2006, the P&C lines of business, which were predominately within ERC (as discussed below) were under-reserved by as much as $9.4 billion.  The Life and Health lines of GE's insurance business, which were not sold to Swiss Re, continue to be materially under-reserved by at least $5 billion and as much as $10 billion (*see* ¶ 150).

GE management benefited from the foregoing under-reserving practices in ERC, and the inflated net income generated thereby, in the form of increased salaries and bonuses. ***As a result of the billions of dollars in charges taken to correct the under-reserving at ERC, GE's financial performance has been negatively impacted and GE Stock has declined in value significantly during the Class Period.***  Although Defendants knew, or should have known, about the material under-reserving for ERC and the billions of dollars necessary to correct it, Defendants never accurately disclosed to Plaintiffs or Plan participants the true nature, extent, and risks of these problems until at least November 18, 2005 (*see* ¶ 177) (emphasis added).

On January 20, 2006, GE publicly announced that the Company's earnings for the fourth quarter of 2005 rose by less than 1 percent.  An article published by *Bloomberg* on the same day noted that this was the smallest increase since 2004 after GE exited the insurance business and that GE had recorded a loss of $2.7 billion on the sale of the insurance unit resulting in net income of $3.1 billion (a decline of 46 percent from $5.6 billion a year earlier) (*see* ¶ 183).

The Plan suffered massive losses because a substantial amount of Plan assets were imprudently invested by the Plan in GE Stock during the Class Period, and in breach of Defendants' fiduciary duties (*see* ¶ 231).

Had Defendants properly discharged their fiduciary duties, including the provision of full and accurate disclosure of material facts concerning GE Stock and divesting the Plan from Company Stock offered by the Plan when such investment became imprudent, the Plan would have

avoided losses suffered in Company Stock (*see* ¶ 232).

As a result of Defendants' actions, Plaintiffs and the Class, which invested in GE Stock through the Plan, were wrongfully damaged, as the Plan suffered substantial losses from Defendants' failure to fulfill their fiduciary responsibilities as described herein.  Had the fiduciaries acted prudently and in accordance with their fiduciary duties, they would have taken steps to eliminate or reduce the amount of GE Stock held by the Plan, eliminated the option for participants to place funds in GE Stock, or fully disclosed the material adverse facts concerning GE Stock described herein.  Plaintiffs and the Class are entitled to the best alternative investment available to them under the circumstances, and the Plan would have achieved gains and avoided losses but for Defendants' breach of fiduciary duty as described herein (*see* ¶ 233).

*See also* ¶¶ 182, 184-196 (describing under-reserving with respect to life and health insurance business and related impact on prudence in investing in GE stock).

The Complaint thus provides more than ample notice of how the plan suffered loss as a result of Defendants' fiduciary breaches under ERISA.  It does this in two ways: (1) the value of the Plan actually decreased during the Class Period; and (2) the Plan would have earned more had it been invested in a prudent investment as opposed to the imprudent investment in GE stock.  Accordingly, Plaintiffs have met their pleading obligations under ERISA and Rule 8 of the Federal Rules of Civil Procedure sufficient to defeat Defendants' Second Motion to Dismiss.

Regarding Defendants' attempts to impose securities law pleading standards in this ERISA case, Plaintiffs note that not even the securities laws require investors to plead loss causation in the way that Defendants advocate.  Courts do not demand an explicit disclosure of the underlying fraud in securities fraud class actions, so long as the

20

decline in the value of stock is caused by the realization of facts that had been concealed. *Lentell*, 396 F.3d at 173. Indeed, allegations that the true financial condition of a corporate defendant in a securities fraud case was gradually revealed to the market throughout the Class Period are perfectly acceptable. *See In re NTL, Inc. Sec. Litig.*, No. 02-3013, 2006 U.S. Dist. LEXIS 5346, at *32-33 (S.D.N.Y. Feb. 14, 2006) (loss causation properly alleged where the defendants concealed corporate problems and where a series of events "gradually alerted investors to the truth about NTL's underlying problems."). This is because "reading *Dura* to require proof of a complete, corrective disclosure [resulting in a large stock price decline] would allow wrongdoers to immunize themselves with a protracted series of partial disclosures." *See, e.g., Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 47 (D.D.C. 2006).

Significantly, in *Dura*, the Supreme Court adopted a pragmatic, classic common-law tort approach to loss causation. Expressly endorsing loss causation as it has been defined in the *Restatement (Second) of Torts* and Prosser and Keeton on Law of Torts (*see Dura*, 544, U.S. at 343-46), the Supreme Court explained that the element of loss causation requires the plaintiff to plead that the defendants' misrepresentations "proximately caused the plaintiff's economic loss." *Id.* at 346. The Supreme Court did not suggest that all securities fraud claims be characterized by a clear corrective disclosure followed by an immediate stock price drop; to the contrary, the Court explained that a loss may be caused if the buyer sells after "the relevant truth begins to leak out." *Id.* at 342. Thus, the Court recognized that securities fraud cases may involve gradual stock price decline.

Defendants expressly acknowledge "that Plaintiffs allege that the Plan suffered a loss as a result of the decline in GE's stock price from $50 to $35 per share" (citing ¶¶ 8, 146).  While Defendants quibble over the nature and extent of the November 2005 disclosure, there is no question that the price and value of GE stock materially declined *throughout* the Class Period while Defendants were engaging in serious misconduct which is alleged to have impacted the Company's financial condition and the value of Plan assets.  Unlike the pleading requirements for falsity or *scienter*, *pleading* loss causation in securities litigation does not impose "any special requirement" on the plaintiff beyond notice pleading under Rule 8.  *Dura,* 544 U.S. at 346.  Whether a plaintiff has *proven* loss causation is reserved for the trier of fact.  *Basic v. Levinson*, 485 U.S. 224, 249 n. 29 (1988) (proof regarding complex issues such as stock valuation and market reactions "is a matter for trial.").  As set forth herein, *Dura* is simply inapplicable to this ERISA case.  Even if it were, the Complaint has clearly put Defendants on notice of Plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny

Defendants' Second Motion To Dismiss The Entire Complaint pursuant to FED. R. CIV. P.

12(b)(6).


Dated: April 16, 2007
       Albany, New York

                                        Respectfully submitted,
                                        _____/s/_____
                                        Jeffrey J. Sherrin (Bar Roll No. 102601)
                                        Yvonne E. Marciano (Bar Roll No. 510021)
                                        **O'CONNELL & ARONOWITZ**
                                        54 State Street
                                        Albany, New York 12207-2501
                                        (518) 462-5601 (telephone)
                                        (518) 462-2670 (facsimile)

                                        **MILBERG WEISS & BERSHAD LLP**
                                        Lori G. Feldman (Bar Roll No. 513863)
                                        Arvind Khurana (Bar Roll No. 513864)
                                        Sara Fuks
                                        One Pennsylvania Plaza
                                        New York, New York 10119
                                        (212) 594-5300 (telephone)
                                        (212) 868-1229 (facsimile)

                                        **LERACH COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP**
                                        Samuel H. Rudman (Bar Roll No. 513976)
                                        Evan J. Kaufman (Bar Roll No. 513975)
                                        Mark S. Reich (Bar Roll No. 511263)
                                        58 South Service Road, Suite 200
                                        Melville, New York 11747
                                        (631) 367-7100 (telephone)
                                        (631) 367-1173 (facsimile)

23

**LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP**
Matthew P. Montgomery
Courtland W. Creekmore
655 West Broadway, Suite 1900
San Diego, California 92101
 (619) 231-1058 (telephone)
 (619) 231-7423 (facsimile)

**LAW OFFICE OF ALFRED G. YATES JR.**
Alfred G. Yates, Esq.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, Pennsylvania 15219
 (412) 391-5164 (telephone)
 (412) 471-1033 (facsimile)

*Counsel for Plaintiffs*

G:\DATA\ATTORNEY\YEM\GE-ERISA\Motion to Dismiss Opposition\ML Second Motion to Dismiss - loss causation.final.DOC