**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**IN RE GENERAL ELECTRIC ERISA LITIGATION**

**No. 06-CV-315 (GLS/DRH)
(Lead Case)**

_____

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' CLAIMS UNDER ERISA SECTION 502(a)(2)**

_____

O'Connell and Aronowitz, P.C.
*Attorneys for Plaintiffs*
Jeffrey J. Sherrin
Yvonne E. Marciano
54 State Street, 9th Floor
Albany, NY  12207-2501
Telephone:  518/462-5601

Milberg Weiss & Bershad LLP
*Attorneys for Plaintiffs*
Lori G. Feldman
Arvind B. Khurana
Sara Fuks
One Pennsylvania Plaza
New York, NY  10119
Telephone:  212/594-5300

Lerach Coughlin Stoia Geller
   Rudman & Robbins LLP
*Attorneys for Plaintiffs*
Samuel H. Rudman
Evan J. Kaufman
Mark S. Reich
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100

Law Offices Of Alfred G. Yates, Jr.
*Attorneys for Plaintiffs*
Alfred G. Yates
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
Telephone:  412/391-5164

Dated:  June 18, 2007

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ........................................................................................1

II.  LEGAL STANDARDS ................................................................................................3

   A.   Standard of Review Applied by Courts in Reviewing a Motion for
        Summary Judgment ................................................................................................3

   B.   The Second Circuit Standard for Determining "Loss" for Breaches of
        Fiduciary Duty Under ERISA................................................................................4

III. ARGUMENT ..............................................................................................................6

   A.   Defendants Assert an Improper Standard for Assessing Whether the Plan
        Suffered a Loss ......................................................................................................6

   B.   The Parties Have Not Conducted the Discovery Needed to Adequately
        Assess the Issues Raised in Defendants' Motion for Summary Judgment............10

   C.   The Conway Declaration Is Inadmissible as Evidence Under Fed. R. Civ.
        P. 56(e) and Must Be Stricken from the Record...................................................13

IV.  CONCLUSION..........................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986)................................................................4

*Babcock v. Computer Assocs. Int'l*,
    186 F. Supp. 2d 253 (E.D.N.Y. 2002) ...............................5

*Ball v. Metallurgie Hoboken – Overpelt, S.A.*,
    No. 87-CV-191, 1989 U.S. Dist. LEXIS 9107
    (N.D.N.Y. July 31, 1989)................................................15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..........................................................12

*Chan v. Gantner*,
    464 F.3d 289 (2d Cir. 2006)..............................................3

*Chao v. Moore*,
    No. AW-99-1283, 2001 U.S. Dist. LEXIS 9012
    (D. Md. June 15, 2001) ......................................................6

*Chao v. Trust Fund Advisors*,
    No. 02-559 (GK), 2004 U.S. Dist. LEXIS 4026
    (D.D.C. Jan. 20, 2004) ......................................................5

*Cianciosi v. Home Depot U.S.A., Inc.*,
    No. 99-7289, 1999 U.S. App. LEXIS 28032
    (2d Cir. Oct. 28, 1999)......................................................14

*Commercial Cleaning  Servs., L.L.C. v. Colin Serv. Sys., Inc.*,
    271 F.3d 374 (2d Cir. 2001)..............................................10

*Dardaganis v. Grace Capital, Inc.*,
    889 F.2d 1237 (2d Cir. 1989)................................... *passim*

*Dardaganis v. Grace Capital, Inc.*,
    684 F. Supp. 1196 (S.D.N.Y. 1988)..................................11

*Davidson v. Cook*,
    567 F. Supp. 225 (E.D. Va. 1983) ......................................6

*DiFelice v. U.S. Airways, Inc.*,
    235 F.R.D. 70 (E.D. Va. 2006) ...........................................5

**Page**

*Donovan v. Bierwirth*,
    754 F.2d 1049 (2d Cir. 1985)......................................................................... *passim*

*Frommert v. Conkright*,
    433 F.3d 254 (2d Cir. 2006)......................................................................3

*Harley v. Minnesota Mining and Mfg. Co.*,
    42 F. Supp. 2d 898 (D. Minn. 1999)......................................................6

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
    302 F.3d 18 (2d Cir. 2002)......................................................................5

*Henzel v. Del. Otsego Corp.*,
    285 F. Supp. 2d 271 (N.D.N.Y. 2003)................................................3, 4

*Hollander v. American Cyanamid Co.*,
    999 F. Supp. 2d 252 (D. Conn. 1998)...................................................15

*Leigh v. Engle*,
    858 F.2d 361 (7th Cir. 1988) ..................................................................5

*Meyer v. Berkshire Life Ins. Co.*,
    250 F. Supp. 2d 544 (D. Md. 2003).........................................................5

*Moore v. Fox Chevrolet, Oldsmobile, Cadillac, Inc.*,
    5:06-C 2007 U.S. Dist. LEXIS 21252
    (N.D.N.Y. Mar. 26, 2007).........................................................................3

*New York State Teamsters Conference Pension and Retirement Fund*,
    426 F.3d 640 (2d Cir. 2005)...................................................................12

*Roberts v. Ground Handeling, Inc.*,
    No. 04 Civ. 4955 (WCC), 2007 U.S. Dist. LEXIS 23441
    (S.D.N.Y. March 30, 2007).....................................................................15

*Roth v. Sawyer-Cleator Lumber Co.*,
    61 F.3d 599 (8th Cir. 1995) .....................................................................5

*Sellers v. M.C. Floor Crafters, Inc.*,
    842 F.2d 639 (2d Cir. 1988)...................................................................15

*Seneca Bev. Corp. v. HealthNow N.Y., Inc.*,
    200 Fed. Appx. 25, 26-27 (2d Cir. 2006)..............................................10

**Page**

*Silverman v. Mutual Benefit Life Ins. Co.*,
        138 F.3d 98 (2d Cir. 1998)................................................................5

*Tenenbaum v. Williams*,
        193 F.3d 581 (2d Cir. 1999)..............................................................4

*Toussaint v. James*,
        01 Civ. 10048, 2003 U.S. Dist. LEXIS 12940
        (S.D.N.Y. July 25, 2003) .................................................3, 5, 7, 9

*Trammell v. Keane*,
        338 F.3d 155 (2d Cir. 2003)...........................................................3, 11

*Trebor Sportswear Co. v. The Ltd. Stores, Inc.*,
        865 F.2d 506 (2d Cir. 1989)...........................................................11

## STATUTES, RULES AND REGULATIONS

28 U.S.C.
        §1746.......................................................................................14

29 U.S.C.
        §1109.......................................................................................4, 5

Fed. R. Civ. P.
        56(c) ................................................................................. *passim*

Fed. R. Evid.
        803(6).......................................................................................15

Fed. R. Evid.
        602...........................................................................................14

Fed. R. Evid.
        801...........................................................................................15

Fed. R. Evid.
        901...........................................................................................15

H.R. Rep. No. 533, 93d Cong., 2d Sess .................................................5

Plaintiffs Umberto Cavalieri, Floyd Miklic and Robert R. Bezio ("Plaintiffs") submit this memorandum of law in opposition to Defendants' Motion for Summary Judgment on Plaintiffs' Claims Under ERISA Section 502(a)(2) (the "Motion") and in support of Plaintiffs' cross-motion to strike the Declaration of Thomas A. Conway (the "Conway Declaration").

## I.    PRELIMINARY STATEMENT[1]

Plaintiffs allege that Defendants breached their fiduciary duties to the Plan[2] during the Class Period.  Plaintiffs claim, among other things,[3] that Defendants allowed the Plan and Plan participants to invest in GE stock when it was imprudent to do so because of under-reserving in GE's insurance business at all times relevant to this action.   Complaint ¶¶146-209.   Defendants' breaches of fiduciary duty resulted in losses to the Plan under the Employee Retirement Income Security Act of 1974 ("ERISA").

Defendants contend that summary judgment should be granted because, according to Defendants, GE was a "net seller" of GE stock during the Class Period.  Defendants' contention fails for several reasons.  Even if the Plan was a net seller, Defendants have not established that the Plan profited from its investment in GE stock during the Class Period.  Defendants' theory is based on untested assumptions regarding the artificial inflation of GE stock, including the assumption that GE stock inflation was constant throughout the Class Period.  Absent detailed expert analyses, it is

---

[1] For the convenience of this Court, Plaintiffs refer to the Statement of Facts in their Memorandum of Law in Opposition to Defendants' First Motion to Dismiss and incorporated herein.

[2] The GE Savings & Security Program, as well as any other defined contribution plan sponsored by General Electric Company ("GE" or the "Company") that held GE common stock, is collectively referenced herein as the "Plan."

[3] Plaintiffs' claims, as incorporated herein, are fully set forth in the Consolidated Class Action Complaint, dated October 16, 2006 ("Complaint") and their Memorandum of Law in Opposition to Defendants' First Motion to Dismiss (Docket no. 62).

impossible to determine whether the Plan experienced a gain (as Defendants suggest) or suffered a loss (as discovery in this case will ultimately prove) as a result of any alleged artificial inflation of GE stock.

For example, the Conway Declaration, the only "evidence" submitted by Defendants in support of their Motion, fails to provide any information regarding the specific prices paid by the Plan for its purchases and sales of GE stock during the Class Period.  Defendants rely solely on the number of GE stock shares purchased and sold.  In doing so, Defendants ask this Court to infer that the number of shares bought and sold over the course of four and one half years is a sufficient basis for calculating the profits or losses on those transactions.  Defendants' analysis likewise fails to account for any shares of GE stock purchased by the Plan prior to the relevant time period.  Even if Defendants had submitted the share prices of the purchases and sales (which they did not), expert testimony would be needed to analyze the precise details regarding the nature and scope of artificial inflation during each particular period of time to coincide with each Plan transaction.  Meaning, the amount of the increase or decrease to the Plan's assets, as a whole, as a result of the artificial inflation is a question that can only be resolved with the aid of expert analysis.  Furthermore, an analysis of any artificial inflation would likewise require an analysis of the facts underlying the specific fiduciary duty claims.  As such, critical assumptions made by Defendants in their Motion cannot be properly addressed without the benefit of discovery and expert testimony.

More importantly, Defendants' theory rests on the incorrect premise that simply showing a "profit" on the part of the Plan is enough to defeat an ERISA claim.  Contrary to Defendants' theory, in order to properly ascertain "loss" under ERISA, the parties must compare what the Plan ***actually earned*** with what the Plan ***would have earned*** had the funds been available for other investments. *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) ("If the latter amount is greater than the

former, the loss is the difference between the two; if the former is greater, no loss was sustained."). Therefore, Defendants' "net seller" argument cannot defeat Plaintiffs' claims because the proper methodology requires a comparison of any professed gain with alternative investments available to the Plan that *could have gained even more*.

Finally, Defendants' argument is entirely premature without adequate discovery. *See, generally, Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (stating that one party should not be permitted to unilaterally deprive the opposition from discovery).[4]

## II.   LEGAL STANDARDS

### A.   Standard of Review Applied by Courts in Reviewing a Motion for Summary Judgment

Summary judgment is appropriate only where the moving party has demonstrated that there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Frommert v. Conkright*, 433 F.3d 254, 262 (2d Cir. 2006); *see Toussaint v. James*, 01 Civ. 10048 (SHS), 2003 U.S. Dist. LEXIS 12940 (S.D.N.Y. July 25, 2003). In reviewing the pleadings, affidavits, depositions, and admissions on file, the court must "'resolve all ambiguities and draw all inferences in favor of the non-moving party.'" *Moore v. Fox Chevrolet, Oldsmobile, Cadillac, Inc.,* 5:06-CV-42 (FJS/GJD), 2007 U.S. Dist. LEXIS 21252 (N.D.N.Y. Mar. 26, 2007), quoting *Chan v. Gantner*, 464 F.3d 289, 292 (2d Cir. 2006); *see also Henzel v. Del. Otsego Corp.*, 285 F. Supp. 2d 271, 274 (N.D.N.Y. 2003) ("It is well settled that on a motion for summary

---

[4] As noted above, Defendants submitted the Conway Declaration in support of their Motion. In response, on May 21, 2007, Plaintiffs served a Notice of Deposition on counsel for Defendants seeking to depose Thomas A. Conway. *See* Declaration of Jeffrey J. Sherrin In Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on Plaintiffs' Claims Under ERISA Section 502(a)(2) Pursuant to Rule 56(f) ("Sherrin Declaration") ¶9. The Notice of Deposition also included a request for the production of documents. *Id.* ¶10. Counsel for Defendants have objected to these discovery requests. *Id.* ¶11.

judgment, the court must construe the evidence in the light most favorable to the non-moving party."

Quoting *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999)).  "An issue is genuine if the

relevant evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Henzel*, 285 F. Supp. 2d at 274 citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

### B.    The Second Circuit Standard for Determining "Loss" for Breaches of Fiduciary Duty Under ERISA

The proper determination of whether a plan suffered a "loss" under ERISA is whether a plan

would have earned more money had its assets been invested in investments more prudent than those

selected by the plan's fiduciaries.[5]  *See Dardaganis v. Grace Capital, Inc.*, 889 F.2d 1237, 1243 (2d

Cir. 1989).

Section 409 of ERISA provides that defendants are liable to plan and plan participants for

losses suffered as a result of their breaches of fiduciary duty.  While §409 does not define what

constitutes an imprudent investment "loss,"[6] the legislative history of §409 states that Congress'

enactment of ERISA was intended "to provide the full range of legal and equitable remedies

---

[5] To analyze whether a "loss" was suffered, it must be assumed that breaches of fiduciary duty have taken place.  Here, Defendants ask the Court to make that assumption for the purposes of their Motion.  Motion at 3.

"Motion at __" refers to pages in Defendants' Motion for Summary Judgment on Plaintiffs' claims under ERISA Section 502(a)(2) filed on April 13, 2007.

[6] ERISA §409(a), 29 U.S.C. §1109(a) (1982), provides in pertinent part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be the subject of such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

- 4 -

available in both state and federal courts." *See* H.R. Rep. No. 533, 93d Cong., 2d Sess.  The Second

Circuit has expressly recognized and relied on this understanding of ERISA's legislative history.

*See, e.g., Donovan*, 754 F.2d at 1052; *see also Chao v. Trust Fund Advisors*, No. 02-559 (GK), 2004

U.S. Dist. LEXIS 4026, at *18 (D.D.C. Jan. 20, 2004); *Meyer v. Berkshire Life Ins. Co.*, 250 F.

Supp. 2d 544 (D. Md. 2003), *aff'd*, 372 F.3d 261 (4th Cir. 2004).

The law in the Second Circuit is that the appropriate measure of damages under ERISA is the

"difference between what the Plan actually earned on the present investment and what the Plan could

have earned had other funds been made available."  *Babcock v. Computer Assocs. Int'l*, 186 F. Supp.

2d 253, 261 (E.D.N.Y. 2002).  A plan is to be restored to the position that the Plan would have been

but for the breach.  *See Silverman v. Mutual Benefit Life Ins. Co.*, 138 F.3d 98, 102 (2d Cir. 1998).

Basically, "[t]he 'appropriate remedy in cases of breach of fiduciary duty is the restoration of the

trust beneficiaries to the position they would have occupied but for the breach of trust.'"  *Toussaint*,

2003 U.S. Dist. LEXIS 12940, at *14, quoting *Dardaganis*, 889 F.2d at 1243.  The goal in awarding

damages to a plan is the return of that plan to the position it would have attained absent the fiduciary

breach.  *See Donovan*, 754 F.2d at 1056; *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins.*

*Co.*, 302 F.3d 18, 34 (2d Cir. 2002); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 83 (E.D. Va.

2006) (finding damages on the basis that "but for the breach, the Plan's assets would have been

greater . . .").  Courts throughout the country have likewise adopted this standard for determining

whether a plan suffered a "loss."[7]

---

[7] *See Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 604 (8th Cir. 1995) (finding that loss under
ERISA is determined "by comparing the [plan's] actual profit to potential profit that could have been
realized in the absence of the breach."); *Davidson v. Cook*, 567 F. Supp. 225, 240 (E.D. Va. 1983)
(stating that "the proper measure of damages is the difference between the actual value of the plans
and the 'value prudent investments would bear'"); *Meyer*, 250 F. Supp. 2d at 572 (same); *Leigh v.
Engle*, 858 F.2d 361, 367 (7th Cir. 1988) (finding the appropriate means of assessing damages under

## III.    ARGUMENT

Defendants ask this Court to conclude that there was no "loss" to the Plan based on a standard or methodology for ascertaining the existence of a "loss" that is inconsistent with the law of the Second Circuit.  In any event, even were this Court to entertain Defendants' theory, Defendants have not established that summary judgment should be granted.

Defendants argue that the Plan was profitable "[b]ecause the GE Plan was a *net seller* of GE stock during the relevant period. . . ."  Motion at 1.  Defendants' argument is flawed for several reasons.  The Plan's status as a net seller during the Class Period – in and of itself – does not prove that the Plan is without loss.  Next, even assuming that the Plan was profitable during the Class Period, the Plan still suffered a "loss" as interpreted and applied by the Second Circuit in ERISA actions.  Finally, Defendants' Motion is premature at this stage of this litigation.  There has been no discovery in this case, particularly on this issue of damages.  Defendants have denied Plaintiffs' requests for access to relevant discoverable information relating to the Motion.

### A.    Defendants Assert an Improper Standard for Assessing Whether the Plan Suffered a Loss

Defendants, through asserting net seller status of the Plan during the relevant time period, contend that a showing of a profit by the Plan during the Class Period is enough to defeat an ERISA claim.  Defendants, however, fail to make an adequate evidentiary showing that the Plan was a net seller or how the Plan's net seller status equates to an increase in value during the relevant time

---

29 U.S.C. §1109 to be the comparison of "the return on the improper investment with that of a reasonably prudent alternative investment."); *Chao v. Moore*, No. AW-99-1283, 2001 U.S. Dist. LEXIS 9012, at *23-*24 (D. Md. June 15, 2001) (same); *Harley v. Minnesota Mining and Mfg. Co.*, 42 F. Supp. 2d 898, 912 (D. Minn. 1999); *Davidson*, 567 F. Supp. at 240 ("One type of loss, however, can be measured: the Fund today holds an investment whose value is significantly less than the value prudent investments would bear. That difference in value represents the damage the Fund has suffered.").

period.  Even if Defendants had adequately shown the Plan's actual net seller status along with proof

of the Plan's profit, those factors are not determinative for ascertaining whether the Plan suffered a

"loss" as interpreted under ERISA.

Assuming for the purposes of this argument that the Plan was a net seller of GE stock during

the relevant period, the Plan's status as a net seller, standing alone, cannot be construed to mean that

there was an increase in the value of Plan assets.  To the contrary, the Plan could have incurred a loss

in value despite being a net seller.  *See* Affidavit of David A. Pratt ("Pratt Aff.") ¶6; Affidavit of

Steven P. Feinstein, Ph.D., CFA ("Feinstein Aff.") ¶52.[8]  In order to prove a gain in value,

Defendants must show that the amount of the Plan's gain on sales during the period (attributable to

inflation in the GE stock price as a result of the alleged under-reserving) was at least equal to the

amount of the Plan's losses on purchases during the period (also attributable to such inflation).  *See*

Pratt Aff. ¶¶2, 6.  Defendants' theory that, as net seller, the Plan experienced a gain during the Class

Period also fails to account for any shares purchased by the Plan prior to (and held during) the

relevant period.  *See* Pratt Aff. ¶6; Feinstein Aff. ¶26.  On these bases, Defendants' assumption –

that the Plan could not have decreased in value when it sold more shares than purchased during the

relevant time period – is clearly flawed, particularly in advance of a detailed review of the relevant

data and a thorough analyses by experts on the issue.  Pratt Aff. ¶6.

A fiduciary breach need not result in a decrease in the Plan's value for there to be a "loss"

under ERISA.  *See Donovan*, 754 F.2d at 1052 (establishing "loss" despite multi-million dollar

increase in Plan assets); *Toussaint*, 2003 U.S. Dist. LEXIS 12940 (rejecting defendants' argument

---

[8] David A. Pratt is a Professor of Law at Albany Law School and has written and lectured extensively in the area of employee benefits and retirement plans.  Steven P. Feinstein is an Associate Professor of Finance and the holder of the Donald P. Babson Endowed Chair in Applied Investments at Babson College.

that claim should be dismissed where Plan did not suffer any loss in value).  Pratt Aff. ¶3.

Defendants notably fail to set forth any legal support for their divergent standard.

In *Donovan*, the Second Circuit in the context of an ERISA claim, specifically focused on the

question of whether there was a "loss" to the plan where "securities are purchased in breach of trust

but are later sold at a price exceeding the purchase price" that resulted in a purported $13 million

gain for the plan at issue in that case.  754 F.2d at 1052.  The Court concluded that §409 was meant

to undo harm caused by a fiduciary and that irrespective of a technical gain experienced by the plan,

the plan still suffered a "loss" from an ERISA perspective.  The Court's decision hinged on what the

plan *could have* earned had it been available for, or invested in, alternate purposes.  *Id.* at 1056.  The

Court specifically stated:

> We do not accept the measures proposed by the parties, nor that applied by the trial
> court.  The [defendant] Trustees' measure, and that applied by the district court,
> require no comment beyond stating that they ignore the greater profits the Plan might
> have earned if the [defendant] Trustees had invested in other Plan assets. . . .

*Id.* at 1054.

In *Dardaganis*, 889 F.2d 1237, the Second Circuit affirmed the district court's decision to

grant summary judgment in favor of plaintiffs, specifically on the issue of damages, against

defendant fiduciaries.  Similar to Defendants' argument here, defendants in *Dardaganis* argued that

there was no "loss" to the plan due to the increase in cash and assets benefiting the plan.[9]  The Court

there emphatically rejected defendants' argument.  The Court explicitly stated that defendants'

contention of what constitutes a "loss" plainly ignores the Second Circuit's decision in *Donovan*

"where we said that an 'appropriate remedy in cases of breach of fiduciary duty is the restoration of

---

[9] 889 F.2d at 1243 (observing that Defendants "suggest that even if they breached a duty, there were
no 'losses' to the plan because the sum of the Fund's assets and the cash withdrawn to meet Fund
obligations increased during their tenure.").

the trust beneficiaries to the position they would have occupied but for the breach of trust.' If, but for the breach, the Fund would have earned more than it actually earned, there is a 'loss' for which the breaching fiduciary is liable." 889 F.2d at 1243; *see also Toussaint*, 2003 U.S. Dist. LEXIS 12940, at *15 (stating that "'if, but for the breach, the Fund would have earned even more than it actually earned, there is a 'loss' for which the breaching fiduciary is liable.'" quoting *Dardaganis*, 889 F.2d at 1243).

Here, Plaintiffs allege that GE stock was an imprudent investment. Therefore, Plaintiffs are entitled to the best alternative investment available to them. Complaint ¶233. With that, not only have Defendants failed to utilize the correct standard, Defendants now have the obligation to show that GE stock was the best alternative investment available to the Plan. In *Dardaganis*, the Court pointed to the *Donovan* decision to maintain that federal district courts "should presume that, but for the breach, the funds would have been invested in the most profitable of the alternatives and that the errant fiduciary bears the burden of proving that the fund would have earned less than this amount." 889 F.2d at 1244; *see also Donovan*, 754 F.2d at 1056. The *Dardaganis* Court further added that "[i]n *Donovan*, we did not discuss how the fiduciary could meet this burden, other than to say that uncertainties in fixing damages will generally be resolved against the wrongdoer." 889 F.2d at 1244; *see also Donovan*, 754 F.2d at 1056 ("The burden of proving that the funds would have earned less than that amount is on the fiduciaries found to be in breach of their duty. Any doubt or ambiguity should be resolved against them.").

The Complaint (in a manner above and beyond what is required in an ERISA action) alleges that Defendants knew or should have known that GE stock was an imprudent investment. *E.g.*, Complaint ¶¶210, 251. It further alleges that the Plan did not earn what it would have earned had its funds been invested in more prudent, alternate investments. *Id.* ¶¶233, 243. *See, e.g., Donovan*, 754

F.2d 1049.  The Complaint, in fact, details GE's under-reserving at both ERC and the Life and Health insurance businesses (Complaint ¶¶8, 150, 183, 231-233) and connects the corresponding impact that the under-reserving had on GE stock (*Id*. ¶¶182, 184-196).

Indeed, the Complaint – in accordance with *Donovan* and its progeny of case law – adequately alleges "loss" by the Plan in that the Plan would have earned more had it been invested in a prudent investment as opposed to the imprudent investment in GE stock.  Complaint ¶243. Moreover, the Complaint alleges that the value of Plan assets invested in GE stock actually decreased during the Class Period.  *Id*. ¶¶5, 129, 177, 281.

Even assuming that this Court accepts Defendants' improper unverified submission of evidence to prove that the Plan was a net seller during the relevant time period and also accepts the multiple, unproven assumption that Defendants use to assert that the Plan made a profit during the relevant time period, this Court should nevertheless deny Defendants' Motion.  In sum, the Plan's supposed profit will not obviate the requirement to evaluate whether the Plan would have earned more money had its funds been placed in more prudent alternate investments.  This analysis, which is irrefutably the standard used by the Second Circuit, is ignored by Defendants.  Their Motion, therefore, must be denied.

**B.     The Parties Have Not Conducted the Discovery Needed to Adequately Assess the Issues Raised in Defendants' Motion for Summary Judgment**

Defendants' Motion is premature as Plaintiffs have not had the opportunity to conduct discovery.  Fed. R. Civ. P. 56(f) provides "that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion."  *Seneca Bev. Corp. v. HealthNow N.Y., Inc.,* 200 Fed. Appx. 25, 26-27 (2d Cir. 2006), quoting *Commercial Cleaning Servs., L.L.C. v. Colin Serv.*

*Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001).  Indeed, the Second Circuit has made it unequivocally clear that "only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."  *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003).  Discovery is both a tool and protection afforded all litigants, and one party should not be permitted to unilaterally deprive the opposition from discovery as an underhanded litigation tactic.  *See Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (emphasizing that a "nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment.").

Here, despite their efforts, Plaintiffs have not been provided any discovery related to the issues in the Motion.  Sherrin Declaration ¶4.  Indeed, Defendants have denied Plaintiffs' requests for discovery propounded in response to the Motion.  *Id.* ¶¶9-11.  Given the lack of discovery and material issues of fact raised by the Motion, this Court should deny the Motion pending completion of necessary document production and deposition discovery.

Notably, in *Donovan*, substantial discovery was conducted before the Court would even entertain a motion for summary judgment on the issue of damages.[10]  Likewise, in *Dardaganis v.*

––––––––––––––––––––

[10] Throughout the decision, the Court highlights the discovery that had been conducted in the litigation up to that point, including, for example:

"taking evidence on the issue of loss to the Plan. . ."  754 F.2d at 1051.

\*     \*     \*

"Evidence was taken in a bench trial. . ."  754 F.2d at 1053.

\*     \*     \*

"Expert testimony at trial. . . ."  *Id*.

\*     \*     \*

"The Secretary accordingly presented evidence as to the investment performance of the other Plan assets, including the Plan's total portfolio, the Plan's stock and cash portfolio, and the Plan's stock portfolio."  *Id*.

*Grace Capital Inc.*, the litigants conducted discovery and the Court analyzed the expert affidavits of both parties before granting summary judgment to the plaintiffs on the issue of damages.  684 F. Supp. 1196 (S.D.N.Y. 1988).

The cases relied upon by Defendants in support of the Motion are wholly distinguishable as they were all decided ***after*** discovery was conducted.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986) ("The parties had conducted discovery. . .").  In *Celotex*, the Court had the parties conduct discovery prior to the filing of a motion for summary judgment because it understood the importance of discovery:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, ***after adequate time for discovery*** and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322-23 (emphasis added); *see also New York State Teamsters Conference Pension and Retirement Fund*, 426 F.3d 640 (2d Cir. 2005) (noting the importance of discovery prior to entertaining a motion for summary judgment).  Here, Defendants filed the Motion despite a complete lack of discovery in the action.  As set forth in the corresponding affidavits of Jeffrey J. Sherrin, Steven P. Feinstein and David A. Pratt, Plaintiffs and this Court require several categories of documents to be produced by Defendants before the issue of damages, or "loss" to a Plan, can be adequately evaluated, including:

- all misstatements to Plan participants concerning the alleged under-reserving and/or adequacy of insurance reserves for all GE's insurance units during the Class Period (*see* Sherrin Declaration ¶7; Feinstein Aff. ¶54);

---

\*        \*        \*

"The Trustees, on the other hand, presented evidence suggesting that if the funds had not been invested in the Grumman shares, they would have remained in short-term cash equivalents, where they would have earned only a relatively low return compared with the portfolios analy[z]ed by the Secretary."  *Id.*

- the daily prices of each investment alternative in the Plan during the Class Period, including but not limited to: (1) the GE S&S Program Mutual Fund; (2) the GE S&S Income Fund; (3) the GE S&S Short-Term Interest Fund; (4) the GE S&S Money Market Fund; (5) U.S. Savings Bond; (6) the GE Institutional International Equity Fund; (7) the GE Institutional Small-Cap Value Equity Fund; (8) the GE Institutional Strategic Investment Fund; and (9) the Vanguard Institutional Index Fund (the "Alternative Investments") (*see* Sherrin Declaration ¶7; Feinstein Aff. ¶59);

- the date each of the Alternative Investments were made available to the Plan participants (*see* Feinstein Aff. ¶30);

- the daily contributions of GE Stock in the Plan during the Class Period (*see* Sherrin Declaration ¶7; Feinstein Aff. ¶59);

- the daily withdrawals and/or redemption of GE Stock in the Plan during the Class Period (*see* Sherrin Declaration ¶7; Feinstein Aff. ¶59);

- the amount of net cash in or out of GE Stock in the Plan  (*see* Sherrin Declaration ¶7; Feinstein Aff. ¶59);

- descriptions of the GE Stock investment option of the Plan (*see* Sherrin Declaration ¶7; Feinstein Aff. ¶59);

- estimation of the share price inflation on a day-to-day basis (*see* Sherrin Declaration ¶7; Feinstein Aff. ¶54); and

- determination of the inflation ribbon of GE's stock (the daily level of inflation in GE stock due to among other things insurance under-reserving) (*see* Sherrin Declaration ¶7; Feinstein Aff. ¶54).

Defendants' Motion should be denied for the reasons set forth herein.  Or, at a very minimum, Defendants' Motion should be deferred pending the completion of court-ordered discovery on the issue of damages.

### C.    The Conway Declaration Is Inadmissible as Evidence Under Fed. R. Civ. P. 56(e) and Must Be Stricken from the Record

The Conway Declaration should be stricken on the grounds that it is inadmissible as evidence under Fed. R. Civ. P. 56(e).  Rule 56(e) requires, in pertinent part:

> supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified

copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

The declarant, Thomas A. Conway ("Conway") is employed by GE Asset Management Inc. ("GEAM").  GEAM is a Defendant in this action.  According to Defendants, however, GEAM has nothing to do with the GE Stock investment option of the Plan.[11]  Conway, as an employee of GEAM, would thereby have no basis to assert facts related to how the Plan buys or sells GE Stock, nets sales and purchases of GE Stock, or recognizes such sales and purchases in Plan participants' account balances.[12]  Fed. R. Evid. 602.  Also, Conway has not and cannot claim personal knowledge of any dealings with the Plan, Plan participants or the administration of the Plan.  Conway does not even claim that he read any of the documents concerning the administration, legal ownership, or structure of the Plan.  Tellingly, Conway has only been employed by GEAM since February 2006, almost five years since the start of the Class Period.  Conway Declaration ¶1.  This fact alone makes Conway unable to affirmatively swear, upon personal knowledge, what actions the Plan took, including how the Plan purchased and sold GE Stock during the five years when he was not yet employed by GEAM.  Accordingly, Conway has no personal knowledge of any of the facts asserted

---

[11] *See* Defendants' Third Motion of Certain Individual Defendants and GE Asset Management Incorporated to Dismiss for Failure to State a Claim (Docket no. 45) at 13, 14 ("neither GEAM nor the individual GEAM Defendants had any fiduciary responsibilities with regard to the GE stock investment option" . . . "GEAM is not an investment advisor with regard to the Plan's GE stock investment option" . . . "GEAM is not an investment manager or fiduciary with respect to the Plan's GE stock investment option").

[12] While the Conway Declaration claims to have been executed pursuant to 28 U.S.C. §1746, it does not claim to be made under personal knowledge.  Rather, the facts asserted in the Conway Declaration are based on the best of Conway's "knowledge and belief" – far from being based on personal knowledge as required under Rule 56(e).  *But Cf. Cianciosi v. Home Depot U.S.A., Inc.*, No. 99-7289, 1999 U.S. App. LEXIS 28032, at *8 (2d Cir. Oct. 28, 1999) (finding declaration under 28 U.S.C. §1746 was made under personal knowledge because there were sufficient "indicia of their authors' first-hand knowledge of the information they were relaying").

in his own Declaration and is, therefore, incompetent to testify in support of the Motion. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) (motion for summary judgment must be supported by affidavit based upon personal knowledge). *See also Hollander v. American Cyanamid Co.*, 999 F. Supp. 2d 252, 256 (D. Conn. 1998) (striking portions of affidavit for lack of personal knowledge and finding that "Plaintiff's affidavit flagrantly disregards the requirements of Rule 56(e)"); *Roberts v. Ground Handeling, Inc.*, No. 04 Civ. 4955 (WCC), 2007 U.S. Dist. LEXIS 23441, at *51 (S.D.N.Y. March 30, 2007) (striking paragraphs of Rule 56(e) affidavit where affiant failed to cite any document upon which he relied).

In addition, the exhibits to the Conway Declaration are hearsay and, therefore, inadmissible as evidence for purposes of this Motion. Fed. R. Evid. 801 and 802. The exhibits were neither prepared in the ordinary course of business or public records. *Contrast* Fed. R. Evid. 803(6) and 803(8). Further, the Federal Rules of Evidence require that to be admissible as evidence, the documents must be authenticated. Fed. R. Evid. 901 ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."); *Ball v. Metallurgie Hoboken – Overpelt, S.A.*, No. 87-CV-191, 1989 U.S. Dist. LEXIS 9107, at *22 (N.D.N.Y. July 31, 1989) ("Documents which are not properly authenticated or identified would violate the authentication and identification requirements set forth in Fed. R. Evid. 901."). Here, there has been: (1) no such authentication; (2) no explanation of the procedures used to create the exhibits; and (3) the person who has created the exhibits[13] has not been subjected to cross-examination. *See Charles Alan Wright, et al.*, 10A *Fed. Practice & Procedure* 3d §2722 (2005) ("To be admissible, documents must

---

[13] The Conway Declaration does not state that Conway created the exhibits.

- 15 -

be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.").

Accordingly, Plaintiffs respectfully request that the Court strike the Conway Declaration and the exhibits thereto as violative of Fed. R. Civ. P. 56(e).[14]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Summary Judgment.

DATED:  June 18, 2007                         Respectfully submitted,

O'CONNELL AND ARONOWITZ, P.C.


By: /s/ Jeffrey J. Sherrin_____
JEFFREY J. SHERRIN (Bar Roll # 102601)
YVONNE E. MARCIANO (Bar Roll # 510021)
54 State Street, 9th Floor
Albany, New York  12207-2501
(518) 462-5601
(518) 462-2670

---

[14] Given that the Motion is premised on Defendants' Statement of Material Facts, which is premised in significant part on the Conway Declaration, the Court should deny the Motion on this independent basis.

MILBERG WEISS & BERSHAD LLP
LORI G. FELDMAN (Bar Roll #513863)
ARVIND B. KHURANA (Bar Roll #513864)
SARA FUKS
One Pennsylvania Plaza
New York, NY  10119
Telephone:  (212) 594-5300
(212) 868-1229 (fax)

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN (Bar Roll #513976)
EVAN J. KAUFMAN (Bar Roll #513975)
MARK S. REICH (Bar Roll #511263)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  (631) 367-7100
(631) 367-1173 (fax)

LAW OFFICES OF ALFRED G. YATES, JR.
ALFRED G. YATES
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
Telephone:  (412) 391-5164
(412) 471-1033 (fax)

*Counsel for Plaintiffs*