**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

IN RE GENERAL ELECTRIC COMPANY       No. 06-CV-315
ERISA LITIGATION                         (GLS/DRH)
                                         (Lead Case)

_____

### REPLY MEMORANDUM IN SUPPORT OF THIRD MOTION OF CERTAIN INDIVIDUAL DEFENDANTS AND GE ASSET MANAGEMENT INCORPORATED TO DISMISS FOR FAILURE TO STATE A CLAIM

William J. Dreyer (Bar Roll #101539)
April M. Wilson (Bar Roll #105797)
DREYER BOYAJIAN LLP
75 Columbia Street
Albany, NY  12210
(518) 463-7784

John J. Buckley, Jr.
Dane H. Butswinkas
Jonathan M. Landy
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000

Jeffrey G. Huvelle
John M. Vine
Thomas L. Cubbage III
Christian J. Pistilli
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 662-6000

Dated:  July 16, 2007                        *Attorneys for Moving Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 8

I.      Plaintiffs' Reliance upon *Smith* Is Misplaced. ................................................................ 8

II.     Reliance on Plan Documents Is Both Appropriate and Necessary at the
        Motion To Dismiss Stage .......................................................................................... 11

III.    GEAM, GEAM's Officers and Directors, and the Fund Trustees Should Be
        Dismissed Because Plaintiffs' Allegations Are Not Sufficient To Demonstrate
        That They Are Fiduciaries as to the Conduct Alleged ................................................ 15

IV.     The GE Officer Defendants Should Be Dismissed Because Plaintiffs'
        Allegations Are Not Sufficient To Demonstrate that They Are Fiduciaries. ................... 21

V.      The GE Director Defendants Should Be Dismissed Because Plaintiffs'
        Allegations Fail To Implicate the Directors' Limited Fiduciary
        Responsibilities. ...................................................................................................... 24

VI.     Count IV (Co-Fiduciary Liability) Should Be Dismissed as to the Moving
        Defendants Because the Complaint Fails To Sufficiently Allege Knowledge of
        Another Fiduciary's Breach. ..................................................................................... 27

VII.    Count V Must Be Dismissed Because the Plaintiffs Have Failed To Plead
        Facts Sufficient To State a Conflict-of-Interest Claim Under ERISA. ........................... 29

CONCLUSION ....................................................................................................................... 34

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006)...............................10

*Anoka Orthopaedic Assocs., P.A. v. Lechner*, 910 F.2d 514 (8th Cir. 1990) ..............................24

*Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397 (9th Cir. 1995) ..................................................19

*Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12  (1st Cir. 1998) ......................................19, 20

*Bell At. Corp. v. Twombly*, 127 S. Ct. 1955 (2007)………………………………………….. *passim*

*Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir. 1993) .................19

*Blue Cross v. SmithKline Beecham Clinical Labs., Inc.*, 62 F. Supp. 2d 544 (D. Conn.
    1998) ...................................................................................................................................10

*Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574 (7th Cir. 2000) .............................................19

*Conley v. Gibson*, 355 U.S. 41 (1957) .....................................................................................4, 5

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) .......................................6, 12

*Crowley ex rel. Corning, Inc. Inv. Plan v. Corning, Inc.*, 234 F. Supp. 2d 222 (W.D.N.Y.
    2002) ..................................................................................................................13, 24, 25

*Custer v. Sweeney*, 89 F.3d 1156 (4th Cir. 1996) ........................................................................10

*Dow Jones & Co., v. Int'l Sec. Exch., Inc.*, 451 F.3d 295 (2d Cir. 2006)....................................10

*In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786 (W.D.N.C. 2003) .................................7, 12

*Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747 (D.C. Cir. 1990) ....................................................19

*F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250 (2d Cir. 1987) ...........................20

*Feick v. Fleener*, 653 F.2d 69 (2d Cir. 1981) ..............................................................................14

*Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331 (S.D.N.Y. 2000) ...................................................3

*Gerosa v. Savasta & Co.*, 329 F.3d 317 (2d Cir. 2003)................................................................11

*Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93
    F.3d 1171 (3d Cir. 1996) ...................................................................................................19

*Gregg v. Trans. Workers of Am. Int'l*, 343 F.3d 833 (6th Cir. 2003) ............................................19

*Griggs v. E.I. DuPont De Nemours & Co.*, 237 F.3d 371 (4th Cir. 2001) ....................................19

*Haber v. Brown*, 774 F. Supp. 877 (S.D.N.Y. 1991).....................................................................10

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18 (2d Cir. 2002) ........20

*Harte v. Bethlehem Steel Corp.*, 214 F.3d 446 (3d Cir. 2000)........................................................19

*Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361 (N.D. Ga. 2004) ............................................26, 32

*Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450 (3d Cir. 2003)........................................19

*Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69 (2d Cir. 1995) ....................................6, 12

*Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184 (7th Cir. 1994) .................................................20

*Jordan v. Fed. Express Corp.*, 116 F.3d 1005 (3d Cir. 1997) .......................................................19

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006)..........................................................10

*Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542 (6th Cir. 1999)........................................................19

*Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660 (2d Cir. 1996) ...............13

*Newton v. Van Otterloo*, 756 F. Supp. 1121 (N.D. Ind. 1991) .....................................................26

*Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262 (N.D. Ga. 2006)........................................25, 33

*Pegram v. Herdrich*, 530 U.S. 211 (2000)…………………………………………………… *passim*

*Rapoport v. Asia Elec.s Holding Co.*, 88 F. Supp. 2d 179 (S.D.N.Y.  2000) ................................14

*In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646 (S.D. Tex. 2004) .................................26

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000).....................................................................6, 12

*Schied v. Dynegy, Inc. (In re Dynegy, Inc. ERISA Litig.)*, 309 F. Supp. 2d 861 (S.D. Tex. 2004) ...........................................................................................26, 33

*Shea v. Esensten*, 107 F.3d 625 (8th Cir. 1997).........................................................................19

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) ..................................3, 9, 10

*Stander v. Fin. Clearing & Serv. Corp.*, 718 F. Supp. 1204 (S.D.N.Y. 1989) .............................29

*Stein v. Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003) ....................................................................24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, No. 06-4842007 WL
    17773208 (June 27, 2007)...............................................................................................7, 12

*In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970 (C.D. Cal. 2004) ...............................................24

*In re Williams Cos. ERISA Litig.*, 271 F. Supp. 2d 1328 (N.D. Okla. 2003)..............13, 23, 24, 25

*In re Worldcom, Inc. Erisa Litig.*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003)....................................24

## UNPUBLISHED CASES

*2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital L.L.C.*, No. 00 Civ. 5773
    GEL, 2001 WL 410074 (S.D.N.Y. Apr. 23, 2001) ...........................................................14

*In re ADC Telecomms., Inc., ERISA Litig.*, No. 03-2989, 2004 WL 1683144 (D. Minn.
    Jul. 26, 2004)...................................................................................................................32

*In re Calpine Corp. ERISA Litig.*, No. C-03-1685, 2005 WL 1431506 (N.D. Cal. Mar.
    31, 2005) ..........................................................................................................................10

*Cleveland-Goins v. City of New York*, No. 99CV1109, 1999 WL 673343 (S.D.N.Y. Aug.
    30, 1999) ..........................................................................................................................29

*In re Coca-Cola Enter.s, Inc. Erisa Litig.*, No. 06-CV-953, 2007 WL 1810211 (N.D. Ga.
    June 20, 2007)...................................................................................................................31

*Hanlon v. Melillo*, No. 403CV237Y, 2004 WL 2049337 (N.D. Tex. Sept. 7, 2004)...................10

*In re Honeywell Int'l ERISA Litig.*, No. 03-1214, 2004 WL 3245931 (D.N.J. Sept. 14,
    2004) .................................................................................................................................32

*Hull v. Policy Mgmt. Sys. Corp.,* No. Civ.A. 3:00-778-17, 2001 WL 1836286 (D.S.C.
    Feb. 9, 2001) .....................................................................................................................12

*JDS Uniphase Corp. ERISA Litig.,* No. C 03-04743, 2005 WL 1662131 (N.D. Cal. July
    14, 2005) ...........................................................................................................................10

*Pietrangelo v. NUI Corp.,* No. Civ. 04-3223 (GEB), 2005 WL 1703200 (D.N.J. July 20,
    2005) .................................................................................................................................13

## FEDERAL STATUTES

29 U.S.C. § 1105(a) (2000)............................................................................................28

## MISCELLANEOUS

Restatement (Second) of Trusts § 173 cmt. d (1959) ...................................................18

*In re ADC Telecomms., Inc., ERISA Litig.*, Amended Consolidated Complaint for Breach of
    Fiduciary Duty Under ERISA, No. 03-2989 (D. Minn. filed Jan. 25,
    2005)…………………………………………………………………….........32

*Smith v. Local 819 I.B.T. Pension Plan*, Reply Br. for Defs. Third-Party Pls.-Appellants and
    Third-Party Pl.-Appellant, No. 01-7583, 2002 WL 32333023 (2d Cir. filed Jan. 14,
    2002)…………………………………………………………………………………...9

## INTRODUCTION

In terms of the present motion, Plaintiffs' Complaint is most notable for (1) its scattershot (and irresponsible) naming of a diverse multitude of individuals as Defendants despite their lack of any connection to the conduct complained of; (2) its habitual *in haec verba* recitations of statutory language as the sole basis for dragging these individuals into the lawsuit; (3) its calculated eschewal of any factual allegations that might plausibly justify the claims against these individuals; and (4) its flagrant disregard of the very terms of the Plan documents on which its claims are purportedly based and which specifically allocate to *others* the responsibilities that Plaintiffs mistakenly seek to impose on the Moving Defendants.  These fatal flaws require the dismissal of Plaintiffs' Complaint.

Plaintiffs rely on scattershot formulaic allegations instead of supporting facts.  In overreaching by naming seventy-four individuals as defendants (as well as two corporations), Plaintiffs sued almost every person whose name happened to appear in the voluminous documents pertaining to General Electric's retirement plan[1] and related investment options.  To Plaintiffs, it did not seem to matter whether they had the person's correct name, whether he was dead or alive, whether he had retired twenty years ago or was still employed at GE during the events at issue, or whether he had any responsibility for the GE stock investment option that is the subject of Plaintiffs' Complaint.[2]  Simply put, by their lights, the more defendants the better.

---

[1]      The Plan referred to herein is the GE Savings and Security Program or "S&SP."

[2]      Plaintiffs' Complaint names as defendants Silas Cathcart (¶ 32), John Lockton (¶ 66), and Robert Pfenning (¶ 78), all deceased.  Defendants' counsel have notified Plaintiffs' counsel that the individuals are deceased.  As of the date of filing this reply, Plaintiffs have not responded or withdrawn the allegations against the deceased individuals.  There are numerous other examples of similar errors.  Edward Malone (¶ 69) retired in 1985.  John Krenicki, Jr. (¶ 56), alleged to be a Pension Board member, was never on the Pension Board.  Defendants have sought dismissal of these and other erroneously named Defendants in correspondence with Plaintiffs.  On May 1, 2007, Defendants provided the documents requested by Plaintiffs as a condition to dismissing

Particularly with respect to the Moving Defendants, Plaintiffs were understandably unable to allege any facts showing that these persons were fiduciaries under ERISA as to the conduct alleged in the complaint.[3]  Therefore, Plaintiffs resorted to pleading legal conclusions that simply mimic the statutory language and making formulaic allegations that are devoid of any supporting facts and are flatly contradicted by the governing language of the Plan itself.

Strikingly, Plaintiffs do not dispute that they have failed to allege any facts that would support a conclusion that the Moving Defendants were Plan fiduciaries, nor do they dispute that the Plan documents themselves make clear that the Moving Defendants did not possess the authority or functions that Plaintiffs seek to attribute to them.  Instead, Plaintiffs tether their Complaint to two faulty premises:

*First*, Plaintiffs contend that their wholly conclusory allegations of fiduciary status suffice because a complaint need do no more than simply "track[ ] the *statutory language*."  Opp'n 19.  According to Plaintiffs, because ERISA provides that an individual is a fiduciary if he or she "has any discretionary authority or discretionary responsibility in the administration of such plan," it is enough simply to recite the statutory language for every defendant.  Opp'n 1.  And, indeed, that is precisely what Plaintiffs do, alleging in an identical manner that every Defendant exercised "discretionary authority" in the administration of the Plan.  Under Plaintiffs' view, they could have named every current or former GE employee as a defendant and

---

Continued ...

these Defendants.  As of the filing of this reply, Defendants have not received a response from Plaintiffs, nor have these Defendants been dismissed.

[3]     The GE Directors acknowledged that they are limited fiduciaries in light of their power to appoint and remove certain other fiduciaries.  *See* Memorandum of Law in Support of Third Motion of Certain Individual Defendants and GE Asset Management Incorporated To Dismiss for Failure To State a Claim ("Def. Mem.") 34.  But here, too, Plaintiffs are unable to plead any facts showing that their limited fiduciary duties are implicated by the conduct alleged in the Complaint.

survive a motion to dismiss as long as their Complaint repeated the magic words "discretionary authority" following the name of that defendant—even if (as here) there was not a single fact alleged to show that the individual possessed such authority and even where (as here) the very Plan documents upon which Plaintiffs rely demonstrate that such authority in fact lay elsewhere.

Plaintiffs' view of the law, however, is fundamentally mistaken.  A long line of cases holds that pleading legal conclusions is not enough.[4]  This principle has been specifically applied to allegations of fiduciary status in ERISA actions charging breach of fiduciary duty,[5] in which the "threshold question" is whether the defendant was a fiduciary and, if so, whether he "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  To the extent that any doubt may have been created by some district court decisions suggesting a contrary approach, that doubt has now been authoritatively dispelled by the Supreme Court, which recently made clear that complaints that merely track statutory language are insufficient to satisfy the pleading requirements of Rule 8 and must be dismissed.  *See Bell At. Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In language squarely applicable here, the Supreme Court observed that courts "*are not bound to accept as true a legal conclusion couched as a factual allegation*."  *Id.* at 1965 (emphasis added) (quotations omitted).  Rather, to state a claim, a complaint must contain specific factual allegations demonstrating that statutory requirements have been met and must establish a "plausibility of 'entitle[ment] to relief.'"  *Id.* at 1966 (alteration in original).

---

[4]     *See, e.g.*, *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (*quoting Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000))).

[5]     *See* Def. Mem. 11-12.

The complaint found inadequate in *Twombly* was brought by Milberg, Weiss & Bershad LLP—one of the law firms representing the three plaintiffs here—and that firm sought unsuccessfully to defend its conclusory complaint before the Supreme Court.  The *Twombly* decision establishes that conclusory complaints, like the present one, that simply recite statutory language without supporting factual allegations fall fatally short of what Rule 8 of the Federal Rules of Civil Procedure requires.

In *Twombly*, the complaint specifically tracked the language of the Sherman Act, 15 U.S.C. § 1 (2002 & Supp. IV 2006), by alleging that the defendants "have entered into *a contract, combination or conspiracy* to prevent competitive entry in their respective local telephone and/or high speed internet services markets and have agreed not to compete with one another and otherwise allocated customers and markets to one another."  *Twombly*, 127 S. Ct. at 1963 (emphasis added) (quotations omitted).  The Supreme Court nevertheless ordered the complaint dismissed for failure to comply with Rule 8, explaining:

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level . . . .

*Id.* at 1964–65 (second alteration added) (citation omitted).  The Court rejected the notion that "the Federal Rules somehow dispensed with the pleading of facts altogether," *id.* at 1965 n.3, and noted that a plaintiff's obligations to provide a defendant with "fair notice" and to specify the "grounds" for the claim required pleading facts rather than blanket assertions:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out *in detail* the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99(1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.*

The Court noted that "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" the statutory elements of a claim "reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id*. at 1966 (second alteration in original).  It concluded that "[b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 1974.

Furthermore, the Supreme Court specifically rejected the statement in *Conley v. Gibson*, 355 U.S. 41 (1957), upon which Plaintiffs base their position, that "a 'complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Twombly*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. at 45–46).  Taken literally, the *Twombly* Court noted, *Conley*'s "no set of facts" language would allow even "a wholly conclusory statement of claim [to] survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  127 S. Ct. at 1968 (second alteration in original).  To make clear that such conclusory allegations should not survive a motion to dismiss, the Court abrogated the *Conley* formulation, stating:  "*Conley*'s 'no set of facts' language has been questioned, criticized, and explained away long enough. . . .  [A]fter puzzling the profession for 50 years, this famous observation has earned its retirement." *Id.* at 1969.

The Court also discussed the practical reasons why conclusory allegations do not suffice under Rule 8(a)(2) and why it is incumbent upon federal courts to dismiss those cases or claims that simply recite statutory elements with no specific factual support.  *Id*. at 1967.  In particular,

the Court emphasized the high costs that litigation can impose on defendants, noting that "the threat of discovery expense" alone "will push cost-conscious defendants to settle even anemic cases." *Id.* Accordingly, "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* (quotations omitted). Were the rule otherwise, "a plaintiff with a largely groundless claim [would] be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 1966 (internal quotations omitted). So, when the complaint is based on legal conclusions and fails to contain factual allegations showing the plausibility of entitlement to relief, "'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* (alteration in original). In sum, *Twombly* conclusively demonstrates that Plaintiffs are mistaken in assuming both (1) that they can get by with "track[ing] the statutory language"—i.e., merely reciting the elements of the cause of action—and (2) that it is enough to plead legal conclusions while omitting factual allegations showing the "plausibility of 'entitle[ment] to relief.'" *Id.* at 1966 (alteration in original).

*Second*, Plaintiffs argue that the Plan documents cited by the Moving Defendants cannot be considered on a motion to dismiss, and in any event are trumped by their rote allegations of *de facto* "discretionary authority." Opp'n 2. But as noted in Defendants' opening memorandum (at 6 n.12), it is well settled that considering documents relied upon in a complaint is permissible under Federal Rule of Civil Procedure 12(b)(6) and does not convert the motion into one for summary judgment. *See, e.g., Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991). Indeed, just recently in *Tellabs,*

*Inc. v. Makor Issues & Rights, Ltd.*, the Supreme Court observed that "documents incorporated into the complaint by reference" (such as the Plan documents here) are among the "sources courts *ordinarily* examine when ruling on Rule 12(b)(6) motions to dismiss."  127 S. Ct. 2499, No. 06-484, 2007 WL 17773208, at *9 (June 27, 2007) (emphasis added).  For this reason, in ruling on motions to dismiss in ERISA cases courts have often examined plan documents.  *See, e.g., In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 789 n.3 (W.D.N.C. 2003) ("When ruling on a motion to dismiss, the court may properly consider the Plan document in its entirety.").  Indeed, Plaintiffs themselves, in opposing Defendants' First Motion to Dismiss, have relied in part upon a provision of the Plan documents not mentioned in their complaint.  *See* Pls. Opp'n MTD #1, at 41 (citing Section XIII of the S&SP, as set forth in the exhibit submitted with MTD #3).  Thus, Plaintiffs have acknowledged that the Court may consider those documents in resolving a Federal Rule of Civil Procedure 12(b)(6) motion.

Thus, the Plan documents are properly considered and reinforce the conclusion that Plaintiffs' Complaint must be dismissed as to the Moving Defendants.  The Plan documents establish a detailed and comprehensive regime for organizing and administering GE's retirement programs and, to this end, are specific in allocating discretion, authority, and control to particular carefully identified entities and persons.  Significantly, the Plan documents expressly grant to *other* persons—but not to the Moving Defendants—the discretion, authority, and control to act with respect to the GE stock option, the only Plan option as to which the Complaint alleges any misconduct.

The provisions in the Plan documents granting discretion, authority, and control to others, but not to the Moving Defendants, take on heightened significance in light of the Supreme Court's insistence that a complaint contain sufficient factual allegations to make the asserted

legal conclusions "plausible," rather than just "conceivable." *Twombly*, 127 S. Ct. at 1974.  The plausibility hurdle that Plaintiffs must clear in this case is substantially elevated by the Plan documents showing that the Moving Defendants did not in fact possess the discretion, authority, or control necessary to be fiduciaries with respect to the conduct alleged concerning the GE stock option.  Contrary to Plaintiffs' suggestion, vague allegations of "discretionary authority"—identically asserted for every defendant—do not come close to clearing this plausibility bar in the face of Plan documents contradicting Plaintiffs' allegations.  It is not enough for Plaintiffs to speculate that the Moving Defendants "may" have exercised discretionary authority not specifically allocated to them by the Plan documents; *Twombly* requires that Plaintiffs plead facts showing that it is plausible that they did so.  In the absence of such factual allegations, Plaintiffs, like those in *Twombly*, "have not nudged their claims across the line from conceivable to plausible" and thus "their complaint must be dismissed."  *Id*.

Plaintiffs' attempt to drag the Moving Defendants into this dispute is not only legally unfounded but also completely unnecessary.  The remaining Defendants—who have *not* moved to dismiss at this stage of the proceedings—already provide the critical mass of defendants needed to adjudicate all of Plaintiffs' claims.  On the other hand, inclusion of the many Moving Defendants adds nothing to Plaintiffs' claims, other than to increase the expense and burden of the litigation for the Defendants.

## ARGUMENT

### I.       Plaintiffs' Reliance upon *Smith* Is Misplaced.

The linchpin of Plaintiffs' argument in defense of their fiduciary allegations is the proposition that an allegation relating to a statutory cause of action is "sufficient" if it "tracks the statutory language."  Opp'n 19.  It is Plaintiffs' first and principal response to every point raised in Defendants' Motion.  *See id.* at 2, 6, 7, 14, 15, 16, 20.  As purported authority for this

proposition, Plaintiffs rely mainly on *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d

Cir. 2002), and some district court decisions that rely upon *Smith*.  *See, e.g.*, Opp'n 7.  But *Smith*

involved detailed factual allegations that stand in sharp contrast to the bare-bones allegations of

the Complaint in this case, and the Supreme Court's recent decision in *Twombly* establishes that

parroting statutory language does not suffice.

    In a short passage in *Smith*, the Second Circuit, without articulating a legal standard to

guide future decisions, ruled that a third-party complaint against Connecticut General Life

Insurance Company sufficiently alleged its fiduciary status.  291 F.3d at 241.  The decision does

not support Plaintiffs' position here because the third-party complaint in *Smith*, unlike Plaintiffs'

Complaint, contained substantial factual allegations to support the conclusion regarding fiduciary

status.  As the third-party plaintiffs noted in *Smith*:

> Local 819 Fund's factual allegations for establishing that Connecticut
> General is a fiduciary include the allegation that it amended the Plan's benefit
> formula and restated the Plan (App. 47–51, 53, 55), but they also include the alle-
> gation that Connecticut General "exercised discretionary authority and control
> with respect to the administration of the Fund and the management and disposi-
> tion of the Fund's assets." (App. 53, 54–55).  Moreover, the third-party complaint
> also alleges that:
>
> > From 1966, when the Plan was first created, to June 7, 1995,
> > Connecticut General, either explicitly or implicitly, assumed the
> > following responsibilities with respect to providing and adminis-
> > tering benefits under the Plan:  (a) responsibility for calculating
> > retirement benefits pursuant to the Plan; (b) making payments of
> > retirement benefits; (c) assuming liabilities in connection with such
> > payments; (d) supervising a record keeping system in
> > administering the payment of retirement benefits; (e) exercising
> > sole discretionary authority with respect to management of dispo-
> > sition of the Fund's assets; and (f) exercising sole discretionary
> > authority in making investment and reinvestment decisions with
> > respect to the Fund's assets.

Reply Br. for Defs.–Third-Party Pls.-Appellants and Third-Party Pl.–Appellant, No. 01-7583,

2002 WL 32333023, at *12–13 (2d Cir. Jan. 14, 2002) (attached as Exhibit A).  Given these

detailed factual allegations, *Smith* is no authority for the proposition that merely tracking the statutory language with conclusory allegations of "discretionary authority" will do.[6]  291 F.3d at 240–241.  Indeed, the Second Circuit itself has cited *Smith* in dismissing claims "consist[ing] of conclusory allegations unsupported by factual assertions."  *Dow Jones & Co., v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307–308 (2d Cir. 2006) (quotations omitted); *see also Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006).

And certainly after the Supreme Court's recent decision in *Twombly*, it cannot be maintained that tracking the text of a statute is enough.  The *Twombly* complaint tracked the words of § 1 of the Sherman Act, but the Supreme Court held that pleading legal conclusions couched as factual allegations is insufficient and that the complaint was correctly dismissed by the district court.  *See* pp. 4–5, *supra*.

Thus, *Smith* does not support Plaintiffs' position; and whatever plaintiffs could have argued before *Twombly*, the Supreme Court's decision precludes any argument that mimicking the statutory language is enough.

*Twombly* confirms the correctness of the approach taken by many courts in dismissing ERISA claims where the complaint simply tracked the statutory language and failed to allege facts sufficient to show that the defendants were fiduciaries as to the conduct alleged.[7]  Like the

---

[6]  To the extent that the district court cases cited by Plaintiffs relied on *Smith* for the proposition that tracking the statutory language is sufficient, *Smith* will not support such a conclusion for the reasons discussed above.  Even if it could, *Twombly* makes clear that merely tracking statutory language is insufficient.  *Twombly,* 127 S. Ct. at 1964-65.

[7]  *See Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996); *JDS Uniphase Corp. ERISA Litig.*, No. C 03-04743, 2005 WL 1662131, at *2, *5 (N.D. Cal. July 14, 2005); *In re Calpine Corp. ERISA Litig.*, No. C-03-1685, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005); *Hanlon v. Melillo*, No. 403CV237Y, 2004 WL 2049337, at *1 & n.1 (N.D. Tex. Sept. 7, 2004); *Blue Cross*

agreement element of a Sherman Act claim that the Court considered in *Twombly*, the fiduciary

status of the Defendants is an essential element of Plaintiffs' ERISA claims.  *See Gerosa v.*

*Savasta & Co.,* 329 F.3d 317, 322 (2d Cir. 2003) (ERISA does not impose liability on non-

fiduciaries).  Also, like the conclusory allegations in the *Twombly* complaint, Plaintiffs'

Complaint offers no more than a blanket recitation of the statutory definition of a fiduciary

couched as a factual allegation.  Plaintiffs concede, as they must, that to state that someone is a

fiduciary is a legal conclusion.  Opp'n 14.  Reciting the statutory definition of "fiduciary" adds

nothing of substance and does not transform a legal conclusion into a factual allegation.

Because Plaintiffs have failed to meet their burden of alleging a factual basis for the

conclusion that the Moving Defendants are fiduciaries as to the conduct alleged in the

Complaint, the claims against the Moving Defendants must be dismissed.

## II.   Reliance on Plan Documents Is Both Appropriate and Necessary at the Motion To Dismiss Stage.

In their motion, the GEAM Defendants, the GE Officer Defendants, and the Fund Trustee

Defendants rely upon Plan documents to demonstrate that they are not fiduciaries as to the Plan's

GE stock option, the sole focus of Plaintiffs' Complaint.  *See* Def. Mem., Parts II – IV.

Furthermore, the Director Defendants rely upon Plan documents to show that their fiduciary role

is limited to appointing and removing certain fiduciaries and that dismissal is therefore required

because Plaintiffs' allegations do not implicate that limited fiduciary function.  *See id*., Part V.

*Plaintiffs do not dispute that Defendants have correctly read the Plan documents.*  Instead, they

essentially urge this Court (1) to disregard the Plan documents altogether or (2) to hold that the

mere recitation of the statutory definition of a *de facto* fiduciary after a defendant's name in the

―――――――――――――――

Continued ...
*v. SmithKline Beecham Clinical Labs., Inc.*, 62 F. Supp. 2d 544, 554 (D. Conn. 1998); *Haber v.*
*Brown*, 774 F. Supp. 877, 879 (S.D.N.Y. 1991).  These cases are discussed at Def. Mem. 11–12.

complaint precludes a court from ever granting a motion to dismiss as to that defendant.  Opp.n'
2.  Plaintiffs are wrong on both counts.

First, on a motion to dismiss, a court may consider documents relied on in the complaint
without converting the motion into one for summary judgment, particularly where, as here, the
documents are integral to the complaint.  *See Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d
69, 72 (2d Cir. 1995) (per curiam) ("Although the amended complaint in this case does not
incorporate the Agreement, it relies heavily upon its terms and effect; therefore, the Agreement is
integral to the complaint, and we consider its terms in deciding whether" the complaint should be
dismissed (internal quotations omitted)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42,
47–48 (2d Cir. 1991) (holding that documents not attached to the complaint or incorporated in it
could be considered on motion to dismiss because plaintiffs had possession of the documents or
had knowledge of them and relied upon them).  Indeed, last month the Supreme Court reiterated
in *Tellabs* that "documents incorporated into the complaint by reference" are among the "sources
courts *ordinarily* examine when ruling on Rule 12(b)(6) motions to dismiss."  2007 WL
1773208, at *9.[8]  Plaintiffs' Complaint refers to and relies extensively upon the Plan documents.
Compl. ¶¶ 19, 21(b)–(e), 117, 119–22, 127–28.

Accordingly, courts considering motions to dismiss in ERISA cases can, and frequently
do, refer to the Plan documents.  *See In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 789,
n.3 (W.D.N.C. 2003) ("When ruling on a motion to dismiss, the court may properly consider the
Plan document in its entirety."); *Hull v. Policy Mgmt. Sys Corp.*, No. Civ.A. 3:00-778-17, 2001
WL 1836286, at *1 (D.S.C. Feb. 9, 2001) ("[I]t is proper for the court to consider language
contained in the Plan documents even though the plan is not attached to or incorporated into the

---

[8]      *See also Rothman*, 220 F.3d at 88; *Int'l Audiotext Network,* 62 F.3d at 72; *Cortec Indus.,*
949 F.2d at 47-48 (2d Cir. 1991).

complaint.").  Specifically, courts routinely look to the Plan documents in ERISA cases to determine whether a defendant is a fiduciary as to the conduct alleged.  *See In re Williams Cos*. *ERISA Litig*., 271 F. Supp. 2d 1328, 1339 (N.D. Okla. 2003) (dismissing breach of fiduciary duty claims against certain fiduciaries where Plan documents demonstrated that they lacked a fiduciary responsibility for the challenged conduct); *Crowley ex rel. Corning, Inc. Inv. Plan v. Corning, Inc.*, 234 F. Supp. 2d 222, 228–30 (W.D.N.Y. 2002) (same); *Pietrangelo v. NUI Corp*., No. Civ. 04-3223 (GEB), at *3 2005 WL 1703200 (D.N.J. July 20, 2005) ("[T]his Court will consider the Plans' documents in determining whether Plaintiff has sufficiently alleged Defendants' fiduciary status.").  Thus, Plaintiffs' argument that it is inappropriate for the Court to look at the Plan documents at this stage of the proceeding has absolutely no merit.[9]

Plaintiffs seek to circumvent the Plan documents by pointing out that they have alleged that the Defendants exercised *de facto* discretionary authority.  Opp'n 17.  But Plaintiffs have pled no *facts* at all to show that the Moving Defendants in fact had or exercised such authority— their allegations regarding discretionary authority are wholly conclusory.  Under *Twombly*, the absence of supporting factual allegations would by itself require rejection of Plaintiffs' *de facto* fiduciary theory—without regard to the fact that the Plan documents vest such authority elsewhere.  *Twombly* makes clear that courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  127 S. Ct. at 1965 (quotations omitted).

---

[9]   The sole case cited by the Plaintiffs in support of this proposition, *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660 (2d Cir. 1996), states explicitly that the court can consider documents incorporated by reference in the complaint. *Id*. at 662.  In that case, the Second Circuit reversed the district court's granting of a motion to dismiss because the district court relied upon an affirmation that was neither attached to the complaint nor incorporated by reference, *id*., a situation not even remotely analogous to the Plan documents that were incorporated by reference in Plaintiffs' Complaint.

The grounds for dismissal in the present case are even more compelling than *Twombly* because, in addition to the absence of supporting factual allegations, the Plan documents explicitly assign to other persons or entities the authority that Plaintiffs allege the Moving Defendants exercised.  For example, the GEAM investment management agreement explicitly states that GEAM will not be an investment advisor as to GE stock.  *See* Def. Mem. 14–17. Similarly, the Fund Trustee Agreements, combined with the limitations placed on what assets may be held by the funds, provide that the Fund Trustees may not hold GE stock in their funds. *Id.* 21–24.  Accordingly, neither GEAM nor the Fund Trustees have the power to exercise any control over the GE stock option; such power is affirmatively denied them by the Plan documents.  The Plan documents also make clear, and the Plaintiffs do not dispute, that discretion, authority, and control with respect to the GE stock option and communicating with beneficiaries regarding the GE stock option has been delegated to others and not to the GE Officers and Directors.  *Id.*

Thus, the Plan documents directly contradict Plaintiffs' allegations of discretionary authority with respect to GE stock.  Where a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss.  *See Feick v. Fleener*, 653 F.2d 69, 75 (2d Cir. 1981) ("Since the documents upon which appellants based their claim show on their face absence of any grounds for relief, dismissal was proper."); *2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital L.L.C.*, No. 00 Civ. 5773 GEL, 2001 WL 410074, at *9 (S.D.N.Y. Apr. 23, 2001) ("Plaintiffs' conclusory allegations to the contrary are contradicted by the documents attached to the Complaint, and are therefore insufficient to defeat the motion to dismiss."); *see also Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y.

2000) (where "documents contradict Plaintiffs' allegations . . . this Court must grant Defendants' motion to dismiss").

*Twombly* further clarifies that not only must facts be pled, but those facts must make the claimed entitlement to relief "plausible" and not simply "conceivable."  *Twombly*, 127 S. Ct. at 1974.  Plaintiffs are particularly challenged in clearing this hurdle because the Plan documents show that the fiduciary functions Plaintiffs attribute to the Moving Defendants are in fact assigned to other persons and entities.  Plaintiffs' claims are therefore premised on the assumption that the Moving Defendants violated the Plan or, at a minimum, exercised functions that had not been assigned to them but instead to others, and thus intruded on the province of other persons and entities.  Yet they cite no facts remotely supporting the plausibility of such a theory in the face of Plan documents to the contrary.

In light of the Plan documents, Plaintiffs' conclusory allegations regarding the Moving Defendants do not come close to satisfying the requirement that Plaintiffs "nudge[] their claims across the line from conceivable to plausible."  *Id.*  As such, Plaintiffs' claims against the Moving Defendants fall squarely within that class of cases that the Supreme Court has stated should be dismissed "at the point of minimum expenditure of time and money by the parties and the court."  *Id.* at 1966 (quotations omitted)

**III.    GEAM, GEAM's Officers and Directors, and the Fund Trustees Should Be Dismissed Because Plaintiffs' Allegations Are Not Sufficient To Demonstrate That They Are Fiduciaries as to the Conduct Alleged.**

As stated in Defendants' opening memorandum, GEAM and the Fund Trustees should be dismissed because Plaintiffs have failed to plead sufficient facts demonstrating that they are fiduciaries as to the conduct complained of, and, in any event, the Plan documents make clear that they are not fiduciaries with regard to the GE stock investment option at issue in this litigation and had no authority or responsibility for communicating with Plan participants

regarding GE stock.[10]  The Complaint and the Plan documents establish that such authority was committed to others, and that these Defendants exercised responsibilities solely with regard to other Plan investments.  *See* Def. Mem. Parts II–III.

      The GEAM Officers and Directors likewise should be dismissed because Plaintiffs have failed to plead sufficient facts demonstrating that they are fiduciaries and the Plan documents make it clear that they are not fiduciaries at all.[11]  Even if GEAM were a fiduciary with regard to the GE stock investment (which it was not), the law is clear that simply being an officer or director of a fiduciary does not make the GEAM officers and directors fiduciaries.  *See* Def. Mem., Parts II.B. and IV.  Plaintiffs do not dispute that the Plan documents limit the authority of GEAM, its Officers and Directors, and the Fund Trustees such that, under those documents, these Defendants do not exercise any control over the GE stock option, and are not responsible for communicating with beneficiaries regarding the GE stock option.  *See* Def. Mem., Parts II–III.  Plaintiffs argue, however, that because those Defendants may have had fiduciary duties to *some* beneficiaries as a result of *other* investment options not implicated in the Complaint, they had a duty to warn beneficiaries about alleged problems with GE stock.  Opp'n 9–11.  Plaintiffs

---

[10]    In their opposition, Plaintiffs rely on their conclusory allegations of "discretionary authority" to establish that GEAM and the Fund Trustees are Plan fiduciaries.  *See* Opp'n 7 (allegations relating to GEAM as an "investment manager" that "exercises discretionary authority with respect to management and administration of the Plan"); Opp'n 12–13 (allegations relating to GEAM Officers and Directors, that they "exercised discretionary authority with respect to management and administration of the Plan" and that they "carried out GEAM's role as a fiduciary . . . and influenced, managed and controlled GEAM in its role as a Plan fiduciary"); and Opp'n 14 (allegations that the Fund Trustees "exercised discretionary authority or discretionary responsibility in the administration of the Plan").

[11]    Plaintiffs' attempted reliance on their allegations that the GEAM Officers and Directors "exercised discretionary authority with respect to management and administration of the Plan" (*see* Opp'n 12) again falls short of the mark for the reasons detailed above.

seek to find support for their novel theory by reference to a comment to Section 173 of the Restatement (Second) of Trusts (1959) and twelve decisions cited in their Opposition.  Opp'n 10.

Plaintiffs' argument fails for three reasons.  First, neither the comment to Section 173 of the Restatement (Second) of Trusts (1959) nor the cited cases stand for the proposition that a fiduciary has a responsibility to communicate with beneficiaries about an asset or investment option over which the fiduciary has no discretion, authority, or control.  Second, Plaintiffs' proposed expansion of the duty to disclose to areas over which the Moving Defendants have no discretion, authority, or control conflicts with the well-accepted concept of a limited fiduciary under ERISA.  Third, even assuming such a duty existed, Plaintiffs have failed to allege any facts that would make it plausible that GEAM, its Officers and Director, or the Fund Trustees had any knowledge of the alleged problems with GE stock.

Plaintiffs selectively quote comment (d) to Section 173 of the Restatement (Second) of Trusts (1959)[12] as support for their novel theory that, even though the GEAM Defendants and the Fund Trustees lacked any responsibility for the GE stock option, they had a duty to communicate with beneficiaries about GE stock.  But when the comment is read in full in the context of the larger section, it is clear that the Restatement comment refers to a situation where the information relates to an asset within the trustee's discretion, authority, or control, not one over which the trustee has no responsibility.  The full comment, including the language that Plaintiffs omitted, reads:

> d.  Duty in the absence of a request by the beneficiary.  Ordinarily the trustee is not under a duty to the beneficiary to furnish information to him in the absence of a request for such information.  As to his duty to render accounts, see § 172.  In dealing with the beneficiary on the trustee's own account,

---

[12]    The Restatement (Third) of Trusts (2003), while incomplete, does not contain a parallel provision.

> however, he is under a duty to communicate to the beneficiary all
> material facts in connection with the transaction which the trustee
> knows or should know. See § 170(2).  Even if the trustee is not
> dealing with the beneficiary on the trustee's own account, he is
> under a duty to communicate to the beneficiary material facts
> affecting the interest of the beneficiary which he knows the
> beneficiary does not know and which the beneficiary needs to
> know for his protection in dealing with a third person with respect
> to his interest.  ***Thus, if the beneficiary is about to sell <u>his interest
> under the trust</u> to a third person and the trustee knows that the
> beneficiary is ignorant of facts known to the trustee which make
> the interest of the beneficiary much more valuable than the
> beneficiary believes it to be the trustee is under a duty to the
> beneficiary to inform him of such facts.***

Restatement (Second) of Trusts § 173 cmt. d (1959) (emphasis added).  As an initial matter, it is

clear from the context of Section 173 that the Section deals with the usual circumstances of a

*single* trust involving a single trustee with fiduciary responsibility for all of the assets in the trust.

Thus, whether the trustee is "dealing with the beneficiary on the trustee's own account" or "is

not dealing with the beneficiary on the trustee's own account," the assets at issue remain the

same—the assets within the trust over which the trustee has responsibility.  The Section simply

does not address circumstances where a trustee has information alleged to be material to a

beneficiary regarding assets that are not within the trust over which the trustee has responsibility.

Nor does the Section address a situation involving multiple trusts and multiple fiduciaries.  Thus,

nothing in Section 173 can be read as imposing on a plan fiduciary an obligation of disclosure

relating to assets over which the fiduciary has no responsibility and for which he is not the

trustee.  In fact, the full comment makes clear that the language relied upon by Plaintiffs, "[e]ven

if the trustee is not dealing with the beneficiary on the trustee's own account," does not refer to a

situation where the fiduciary is dealing with the beneficiary regarding assets held outside the

trust, but simply addresses third-party transactions involving the assets held in trust.  The context

makes it apparent that the "interest under the trust" about which the trustee has information is an

asset for which he is the trustee.  The comment simply does not address situations where the trustee for an unrelated portion of the plan has no responsibility for the underlying asset involved in the transaction.  Accordingly, this comment does not stand for the proposition that a fiduciary has a duty to disclose information about an asset over which he has no discretion, authority, or control.

Similarly, the twelve cases cited by Plaintiffs stand for nothing more than the unremarkable proposition that a fiduciary may have a duty to disclose information about assets or administrative issues for which the fiduciary is responsible.  None of those cases involves the situation that Plaintiffs concede exists here—an alleged duty to communicate regarding an asset for which the fiduciary is not responsible.  Instead, each of the cited cases involved an allegation that the fiduciary failed to disclose information about an asset or benefit over which the fiduciary had responsibility.[13]  Indeed, Plaintiffs cite *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12

---

[13]     *See Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833 (6th Cir. 2003) (defendant insurance company and plan administrator responsible for insurance component of ERISA plan failed to disclose information related to insurance program); *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450 (3d Cir. 2003) (HMO did not breach duty by failing to disclose details of physician incentives that it was responsible for); *Griggs v. E.I. DuPont De Nemours & Co.*, 237 F.3d 371 (4th Cir. 2001) (plan administrator breached fiduciary duty by failing to disclose effect of lump sum distribution distributed by plan administrator); *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574 (7th Cir. 2000) (plan administrator breached fiduciary duty by failing to disclose effect of plan's rehire provision); *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446 (3d Cir. 2000) (plan administrator alleged to have breached fiduciary duty by failing to disclose effect of long-term disability on pension eligibility); *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542 (6th Cir. 1999) (plan administrator breached fiduciary duty by failing to disclose information about entitlement to long-term disability benefits under the plan); *Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1015 (3d Cir. 1997) (plan and plan administrator alleged to have breached fiduciary duty by failing to inform beneficiary that his retirement benefit election was irrevocable); *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1182 (3d Cir. 1996) (if brokerage firm was a fiduciary, then firm had a duty to disclose information about suspect dealings of a former broker where ERISA plan moved plan assets as to which brokerage was a fiduciary from brokerage to suspect former broker); *Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir. 1997) (HMO that administered ERISA plan had a duty to disclose physician incentive structure practiced by HMO); *Barker v. Am. Mobil Power Corp.*, 64 F.3d

(1st Cir. 1998), which actually did raise the question presented here, but the First Circuit

declined to answer that question because it was raised for the first time on appeal.  Plaintiffs cite

no case before or after *Beddall* that even addresses this issue, let alone resolves it in their favor.

Plaintiffs' proposed expansion of the duty to disclose to reach fiduciaries who had no

discretion, authority, or control over the asset at issue should be rejected because it would

eviscerate the concept of a limited fiduciary that is central to ERISA.  The "threshold question"

in every ERISA action for breach of fiduciary duty is whether the defendant was a fiduciary and,

if so, whether he "was acting as a fiduciary (that is, was performing a fiduciary function) *when*

*taking the action subject to complaint*."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  Courts

have established that "a person may be an ERISA fiduciary with respect to certain matters but

not others."  *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir.

1987).[14]  Plaintiffs do not dispute this proposition.  *See* Opp'n 5.

The theory advanced by Plaintiffs would render meaningless the concept of a limited

fiduciary by removing the requirement to plead facts demonstrating that a fiduciary had some

responsibility for the conduct alleged in the complaint.  Instead, under Plaintiffs' theory, a

complaint need only allege that a fiduciary had some unrelated fiduciary responsibility combined

---

Continued ...

1397, 1403 (9th Cir. 1995) (per curiam) (plan trustee breached a fiduciary duty by failing to
disclose suspicions about other plan trustees' mismanagement of plan funds); *Bixler v. Cent. Pa.
Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993) (allegations that plan
administrator failed to disclose availability of certain benefits under the plan); *Eddy v. Colonial
Life Ins. Co.*, 919 F.2d 747, 751 (D.C. Cir. 1990) (fiduciary insurer breached fiduciary duty by
failing to disclose information about insurance options under the plan that were administered by
the insurer).

[14]     *Accord Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28
(2d Cir. 2002); *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998)
("[F]iduciary status is not an all or nothing proposition . . . ."); *Johnson v. Georgia-Pacific
Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994) (ERISA "does not make a person who is a fiduciary
for one purpose a fiduciary for every purpose.").

with a conclusory allegation about knowledge of a problem with an asset over which the fiduciary had no responsibility.  As a result, every fiduciary would then be responsible for every aspect of an ERISA plan.  Such a result is clearly counter to the functional test laid out by the Supreme Court in *Pegram*, 530 U.S. at 226.  In effect, it would be a license for plaintiffs to sue multitudes of corporate employees in every ERISA case.

Finally, even if there were a duty of disclosure relating to assets over which a fiduciary has no responsibility, Plaintiffs' allegations against the GEAM Defendants and the Fund Trustees would still be insufficient because the Complaint contains no facts to demonstrate that these Defendants had any knowledge of problems with GE stock that they could have or should have communicated to Plan participants.  *See* Defs.' Mem. in Support of MTD #1, at 51–54; Defs.' Reply Mem. in Support of MTD #1, Part IV.  As discussed above, *Twombly* makes it clear that in order to survive a motion to dismiss, a Complaint must contain sufficient facts to make a conclusory allegation "plausible."  *Twombly*, 127 S. Ct. at 1974.   Plaintiffs' Complaint contains no facts that would make it plausible that these Defendants, whose roles Plaintiffs concede did not involve GE stock or insurance reserving, had any knowledge or reason to know of the alleged underreserving issues in one of GE's many subsidiaries and that such alleged underreserving made GE stock an imprudent investment.  This fatal flaw in the Complaint is discussed in greater detail in Defendants' First Motion to Dismiss and those arguments will not be repeated here.  *See* Defs.' Mem. in Support of MTD #1, at 51–54; Defs.' Reply Mem. in Support of MTD #1, Part IV.

**IV.    The GE Officer Defendants Should Be Dismissed Because Plaintiffs' Allegations Are Not Sufficient To Demonstrate that They Are Fiduciaries.**

The GE Officer Defendants moved to dismiss on the ground that Plaintiffs not only failed to plead sufficient facts demonstrating that they are fiduciaries, but the Plan documents

affirmatively demonstrate that they are not fiduciaries and have no responsibility to communicate with beneficiaries regarding the GE stock option.  *See* Def. Mem., Part IV.

Plaintiffs concede that a person's status as the officer of a corporate entity that is a fiduciary is insufficient, in and of itself, to confer fiduciary status on the individual.  Opp'n 16.  Despite making this unavoidable concession, Plaintiffs proceed to attribute the authority granted to the corporate entity, GE, to its officers.  *Id*.  But such a blanket attribution of authority, absent any specific allegations of facts showing that GE Officers actually exercised authority regarding the GE stock option, is at bottom nothing more than a claim that the Officers are fiduciaries because GE is a fiduciary and they are officers of GE.  As a matter of law, that is not a valid basis for alleging fiduciary status.  *See id*. at 26–27.

Plaintiffs also do not dispute that the Plan documents do not vest the GE Officer Defendants with the discretion, authority, or control that is necessary for fiduciary status.  Opp'n 16–17.  Rather, they contend (1) that they have properly alleged *de facto* fiduciary status for these Defendants, which trumps the Plan language, and (2) that signing certain SEC disclosure forms confers fiduciary status on the signer when the SEC form is incorporated into the Plan documents.  Opp'n 16–18.  Neither contention can withstand scrutiny.

Plaintiffs argue that they have properly alleged that the Officer Defendants are fiduciaries because they have tracked the statutory language and alleged that the Officer Defendants exercised "discretionary authority."  Opp'n 16.  However, as discussed in detail *supra* at pages 4–6, such allegations are insufficient under *Twombly* (as well as under numerous decisions prior to *Twombly*) because they fail to allege facts that would make such a conclusion plausible.  First, because a corporate officer can serve both as a corporate officer and as a fiduciary under the two-hat principle, an ERISA complaint against a corporate officer must allege not only that the

officer was a fiduciary, but that he was acting in his capacity as a fiduciary when he took the action complained of.[15]  The Complaint here alleges *failures to act* (the failure to remove GE stock as an investment option, the failure to notify beneficiaries, etc.).  A failure to act cannot constitute "acting as a fiduciary," and therefore cannot suffice to allege a *de facto* fiduciary duty.  In other words, a failure to act cannot create a fiduciary duty where none existed.  In order to allege *de facto* fiduciary status, Plaintiffs would have had to allege facts demonstrating that the Officer Defendants actually had the discretion, authority, or control necessary to take the actions that the Complaint alleges they should have taken.  The Complaint is completely devoid of such factual allegations.

Plaintiffs attempt to evade this requirement by again contending that repeating the statutory language is sufficient.  Opp'n 16 ("allegations that a company officer exercised discretionary authority over a plan are sufficient [to establish fiduciary status], even if they 'do little more than track the statutory definition of a fiduciary.'" (citations omitted)).  As *Twombly* confirms, however, parroting statutory language does not satisfy a plaintiff's burden under Rule 8.  *See* pp. 4–6, *supra*.

Finally, Plaintiffs assert that both the Officer and Director Defendants are ERISA fiduciaries because they signed certain SEC filings.  Signing SEC filings is a corporate act, aimed at the securities market, which is performed by a person wearing a non-fiduciary "hat."  Such act of signing is not retroactively transformed into a fiduciary one when, at another time, someone complies with the securities laws by incorporating the SEC filing into the Plan's Section 10(a)

---

[15]      *See Pegram,* 530 U.S. at 226 (functional test for fiduciary status focuses on whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint"); *Williams Cos. ERISA Litig.*, 271 F. Supp. 2d at 1341 ("Because a fiduciary may wear 'two hats,' the statute does not describe fiduciaries simply as administrators of the plan, or managers, or advisers.  Instead, it defines an administrator as a fiduciary only to the extent that he or she acts in such a capacity in relation to a plan.").

prospectus communication aimed at participants.  Defs.' Mem. in Supp. of MTD #1, at 46–47;

Defs.' Reply Mem. in Supp. of MTD #1, Part III.  Although some district courts have found that

signing an SEC filing constitutes a communication to ERISA beneficiaries when that filing is

incorporated into the Plan documents, more persuasive are the many district court decisions

holding that SEC disclosure statements are statements to the market and, even when incorporated

into Plan documents, do not confer fiduciary status on their signatories.[16]  The latter decisions

are more consistent with the two-hat theory that is central to ERISA.

## V.    The GE Director Defendants Should Be Dismissed Because Plaintiffs' Allegations Fail To Implicate the Directors' Limited Fiduciary Responsibilities.

The GE Director Defendants moved to dismiss because the Complaint fails to plead facts

supporting the conclusory allegations of "discretionary authority" attributed to them, the Plan

documents in fact demonstrate that the only fiduciary function that the Director Defendants

perform is the appointment and removal of other fiduciaries, and no facts were alleged that

would plausibly support a conclusion that the Director Defendants breached their appointment or

removal powers.  *See* Def. Mem., Part V.

Plaintiffs again maintain that it is sufficient that they have tracked the statutory language

by alleging that the Director Defendants "exercised discretionary authority or discretionary

---

[16]    *See, e.g., In re Worldcom, Inc. Erisa Litig.* 263 F. Supp. 2d 745, 760 (S.D.N.Y. 2003) (citing the two-hat theory and dismissing directors despite allegations that they signed SEC statements); *Crowley* 234 F. Supp. 2d at 228 (holding as a matter of law that statements to the market are not made in a fiduciary capacity where plaintiffs alleged that the SPD's incorporation of SEC filings converted them to fiduciary communications); *Stein v. Smith*, 270 F. Supp. 2d 157, 173 (D. Mass. 2003) ("With respect to [press releases and SEC filings], no fiduciary liability can be implicated:  these were statements made to the market in general, not to Plan participants specifically."); *see also Anoka Orthopaedic Assocs., P.A. v. Lechner*, 910 F.2d 514, 517 (8th Cir. 1990) ("The performance of ministerial functions, including the preparation of reports required by government agencies, does not entail discretionary authority or responsibility within the meaning of 29 U.S.C. § 1002(21)(A)."); *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 987 (C.D. Cal. 2004) (holding that statements made to the market were not made in a fiduciary context); *Williams Cos. ERISA Litig.*, 271 F. Supp. 2d at 1338 (holding that statements concerning company's future performance were not actionable since they were "not made . . . in any fiduciary capacity regarding the Plan").

responsibility in the administration of the Plan," and that the Plan documents "are not dispositive because the Director Defendants' discretionary authority over the Plan is sufficient to render them fiduciaries, even if Plan documents say otherwise." Opp'n 19–20. But again, for the reasons set out in Part II, *supra*, this contention fails because the Plan documents grant to others the authority that the Director Defendants are alleged to have exercised, and the Complaint fails to provide any factual basis that would otherwise make such a claim of *de facto* authority plausible. *Twombly*, 127 S. Ct. at 1974; *see also Williams Cos*., 271 F. Supp. 2d at 1339 (motion to dismiss granted where, "under the Plan documents, the Board does not have the power to control investment options"); *Crowley,* 234 F. Supp. 2d at 229 (motion to dismiss granted where "the Board did not control investment options").

Plaintiffs point to their allegations that the Director Defendants (1) failed to monitor their appointees, (2) failed to provide information to the appointed fiduciaries, and (3) improperly appointed the fiduciaries.[17] Opp'n 19–24. But none of these allegations is legally sufficient.

Plaintiffs appear to assume that a failure-to-monitor claim may never be resolved on a motion to dismiss because it involves the adjudication of facts. Opp'n 22. To the contrary, where a complaint does not demonstrate a factual basis for a failure-to-monitor claim—such as a factual allegation showing how the Director Defendants were on notice of misconduct by an appointed fiduciary—the claim should be dismissed at the pleading stage. *See Twombly*, 127 S. Ct. at 1973–74. This is because the duty to monitor "is not breached without the monitoring party having notice of possible misadventure by [the] appointees." *Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262, 1278 (N.D. Ga. 2006) (alteration in original) (quotations omitted); *accord*,

---

[17] In addition, Plaintiffs argue that the Director Defendants, like the Officer Defendants, are fiduciaries because they signed SEC statements. Opp'n 20. This contention fails for the reasons discussed in Part IV, *supra*.

*Schied v. Dynegy, Inc. (In re Dynegy, Inc. ERISA Litig.)*, 309 F. Supp. 2d 861, 904 (S.D. Tex. 2004); *Newton v. Van Otterloo*, 756 F. Supp. 1121, 1132 (N.D. Ind. 1991).  Instead of alleging facts demonstrating notice of misadventure, Plaintiffs recite a stock list of actions the Directors allegedly should have taken, or actions that they knew other fiduciaries should have taken, once they were on notice of misadventure.  *See* Compl. ¶ 284.  But these stock lists simply highlight the absence of actual facts demonstrating notice of misadventure and beg the question of whether "the Director Defendants were on notice of conduct on the part of their appointees that warranted removal." Opp'n 23.

Plaintiffs also argue that the Director Defendants "breached their fiduciary duty by failing to remove appointed fiduciaries, as named herein, whose performance was inadequate." Compl. ¶ 284.  But the Complaint does not provide any factual basis for such claims.  Which appointed fiduciaries?  All thirty-five non-Moving Defendants?  How and when did the Moving Defendants learn of this allegedly inadequate performance?  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 127 S. Ct. at 1965.  There are no such factual allegations as to the Director Defendants.

Moreover, despite Plaintiffs' argument to the contrary, *see* Opp'n 24, the duty to appoint and remove fiduciaries does not include a duty to provide information to those fiduciaries.  *See In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 656, 664 (S.D. Tex. 2004).[18]  Plaintiffs

---

[18]     *See also Dynegy,* 309 F. Supp. 2d at 901, 903 (dismissing duty-to-inform allegations because plaintiffs failed to allege that the directors' powers "extended beyond the power to appoint and remove," or "that they had received any notice of possible misadventure either by their appointees or by the [Benefit Plan Committee] that a reasonable investigation would have revealed"); *Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361, 1369 (N.D. Ga. 2004)("[T]he court must emphasize that the mere fact that an ERISA plan consists, at least in part, in employer stock does not mean that the ERISA fiduciary duty to disclose plan-related information to beneficiaries is transformed into a general duty to disclose the financial details of the business: some sort of 'special circumstance,' will be required to trigger these heightened obligations.").

attempt to distinguish *Dynegy* by claiming that, unlike that case, the present Complaint does allege that the Directors had knowledge of misconduct by appointed fiduciaries.  *See* Opp'n 24. But the allegations that the Directors had knowledge are mere legal conclusions, unsupported by factual allegations making such conclusions plausible, and are therefore insufficient.

Finally, Plaintiffs argue that the Director Defendants are alleged to have breached their fiduciary duties by "failing to appoint persons with the requisite knowledge, skill, and expertise to properly administer the Plan and manage its assets."  Compl. ¶ 281; *see* Opp'n 21.  According to Plaintiffs, such an allegation is sufficient to allege that the Director Defendants violated a fiduciary duty.  Opp'n 19, 21.  But this allegation in fact illustrates the fundamental flaw in all of the allegations of fiduciary status against the Moving Defendants—it is a blanket legal conclusion without a single factual allegation to support it.  Again, which "persons" do Plaintiffs claim lacked the requisite knowledge, skill, or expertise to act as fiduciaries?  In what way did they lack the requisite knowledge, skill, or expertise?  How would the Director Defendants have known this?  Plaintiffs have pled no facts that would indicate that the Director Defendants had any reason not to appoint any of the defendant fiduciaries in the first instance.  Plaintiffs attempt to distinguish *Williams* and *Crowley* by claiming that in those cases "the Plaintiffs made no allegations whatsoever that the Defendants had improperly appointed fiduciaries . . . .  Here, Plaintiffs have made just such an allegation."  Opp'n 21.  But Plaintiffs left out the critical ingredient—facts.  Under *Twombly*, the insertion of additional legal conclusions cannot make up for the absence of factual allegations.

## VI.   Count IV (Co-Fiduciary Liability) Should Be Dismissed as to the Moving Defendants Because the Complaint Fails To Sufficiently Allege Knowledge of Another Fiduciary's Breach.

Plaintiffs interpret ERISA's co-fiduciary liability section, ERISA § 405(a), and Rule 8 to justify including every fiduciary as a defendant despite the absence of any factual allegations

that, if proven, would demonstrate any knowledge of or involvement in the conduct alleged in the Complaint.  Count IV alleges that all seventy-four individual Defendants and two corporate entities should be held liable as a co-fiduciary for either enabling a breach of fiduciary duty, failing to remedy a breach of fiduciary duty, or both.  Compl. ¶¶ 288–303.  Absent any factual allegations sufficient to show that it is plausible that the Moving Defendants actually knew of a breach by another fiduciary, Count IV must be dismissed as to the Moving Defendants. Plaintiffs do not deny that they have failed to provide any factual allegations that the Moving Defendants were aware of any breach on the part of any fiduciary.  Instead, Plaintiffs again argue that the Complaint "closely tracks the statutory language, which is sufficient."  Opp'n 27.  But as discussed above and as *Twombly* confirms, that manner of pleading is not sufficient.

For the Officer Defendants and the GEAM Officer and Director Defendants, the Complaint also does not sufficiently allege fiduciary status, which is a prerequisite for co-fiduciary liability.  *See* 29 U.S.C. § 1105(a) (2000).  In addition, for all of the Moving Defendants, the allegation of co-fiduciary liability rests solely on a bare conclusion that the Defendants "knew of the others' breaches and of the underlying unsuitability of GE stock as a Plan investment."  *See* Opp'n 26.  This conclusion lacks any supporting factual allegations demonstrating how a fiduciary who had no responsibility for the GE stock option knew of a breach by another fiduciary related to GE stock, or how a fiduciary who had no involvement in the insurance businesses knew of alleged underreserving in those businesses.  Accordingly, the Complaint fails to sufficiently allege the knowledge required for co-fiduciary liability.

Plaintiffs suggest that they "will need to take depositions and engage in other discovery to obtain such information."  Opp'n 26.  But this is exactly the danger that the Supreme Court was trying to avoid in *Twombly*.  There the Court held that Rule 8's pleading standard should be

used to *avoid* forcing defendants—when the complaint lacks factual allegations that make the claim against them plausible—to bear the burden and expense of discovery.  127 S. Ct. at 1967. Accordingly, to admit that discovery is needed in order to develop factual allegations that might make the claim plausible is to admit that the Complaint fails to state a claim.  *See Stander v. Fin. Clearing & Servs. Corp.*, 718 F. Supp. 1204, 1210 (S.D.N.Y. 1989) ("[A]n insufficient and conclusory complaint cannot serve as the basis for discovery aimed at fishing for a possible claim against the purported defendant."); *cf. Cleveland-Goins v. City of New York*, No. 99CV1109, 1999 WL 673343, at *2 (S.D.N.Y. Aug. 30, 1999) ("Discovery … is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.").

Because the Complaint fails to sufficiently allege actual knowledge of a breach by another fiduciary, the *sine qua non* of co-fiduciary liability, Count IV must be dismissed as to the Moving Defendants.

## VII.   Count V Must Be Dismissed Because the Plaintiffs Have Failed To Plead Facts Sufficient To State a Conflict-of-Interest Claim Under ERISA.

The Moving Defendants demonstrated in their opening Memorandum that (a) ERISA departs from the strict common law approach to conflicts of interest in favor of the prohibition of three specific categories of transactions, none of which is alleged to have occurred here; (b) Congress exempted Plans such as the one at issue here from restrictions that would otherwise limit their ability to invest in employer stock; and (c) Congress expressly authorized officers and directors of corporations that sponsor benefit plans to serve as fiduciaries notwithstanding that they might have financial interests adverse to the beneficiaries[19] and that their compensation

---

[19]     Contrary to the common law rule, an ERISA fiduciary "may have financial interests adverse to beneficiaries."  *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000).

almost universally includes awards of company stock.  Accordingly, Defendants established that Count V must be dismissed because (1) it contravenes Congress's intent that Directors and Officers serve as ERISA fiduciaries and that plans offer company stock as an investment alternative; (2) it runs afoul of binding Supreme Court and Second Circuit precedent directing courts to refrain from filling in "unwritten gaps" in ERISA's remedial scheme; and (3) courts in this jurisdiction and others have repeatedly dismissed conflict-of-interest claims resting on vague and conclusory allegations similar to Plaintiffs' claims.  *See* Def. Mem. 46–47 (*Pedraza*, *Polaroid*, *Dynegy*, *Syncor*, and *Worldcom*).

Plaintiffs respond only by contending that they have alleged facts similar to those alleged in three district court decisions (all from other circuits; two unpublished) where conflict-of-interest claims were upheld at the pleadings stage.  Plaintiffs' argument must be rejected and Count V dismissed because (1) Plaintiffs have failed to respond at all to Moving Defendants' first two arguments;[20] (2) Plaintiffs' Opposition Memorandum makes it clear that Count V is duplicative of other Counts;[21] (3) Plaintiffs' allegations fall well short of those in the cases upon which they rely; and (4) in any event, those cases applied an overly-liberal pleading standard that is inconsistent with the Supreme Court's recent decision in *Twombly*.

First, Count V—brought against the Director and Officer Defendants only—is entirely duplicative of Counts I, II, and III and fails for the same reasons that those claims fail against the Director and Officer Defendants.[22]  In this regard, Plaintiffs' Opposition Memorandum confirms

---

[20]     Plaintiffs' silence should be deemed concessions warranting dismissal.

[21]     In addition, Count V must be dismissed against Officer Defendants because they are not fiduciaries for any purpose.  *See* Def. Mem. 44.

[22]     *See In re Coca-Cola Enters, Inc. Erisa Litig*., No. 06-CV-953, 2007 WL 1810211, at *15 (N.D. Ga. June 20, 2007) (conflict-of-interest claim against Directors and Officer Defendants

that Plaintiffs are *not* alleging that Moving Defendants engaged in any transaction prohibited by ERISA and that Plaintiffs do *not* contend that Defendants' "mere ownership of stock constituted an impermissible conflict of interest."  Opp'n 27.  Instead, Count V is plainly predicated upon the existence of one of three alleged independent ERISA breaches:  (1) "allowing the Plan to invest in GE stock at the same time the stock was over-valued," *id*. at 27, (2) "publication of false financial statements," *id*, or (3) failing to monitor and remove fiduciaries, *id*. at 28.  These allegations—which are necessary to Count V—merely duplicate Counts I (alleging imprudence), II (alleging nondisclosure), and III (alleging failure to appoint and monitor fiduciaries).  As a result, Count V must be dismissed as against the Moving Defendants for all the reasons discussed *supra*.

Second, Plaintiffs' allegations fall far short of those in the three district court cases upon which they rely and are, in fact, analogous to those that courts have consistently rejected.  What is common to the cases relied upon by Defendants (in which conflict claims were dismissed) and Plaintiffs (in which they were not) is conflict-of-interest claims must be supported by extremely detailed factual allegations establishing that particular defendants personally benefited from the alleged fiduciary violations in specific ways.  The sweeping general allegations that Defendants "violated their duty to avoid conflicts of interest by allowing the Plan to invest in GE stock," and "the Plan's purchase of GE stock propped up the Company's stock price to Defendants' benefit," Opp. 27, are simply too conclusory and vague to state a claim.  Count V plainly differs in this regard from those claims brought in the cases upon which Plaintiffs rely.  For example, plaintiffs in *ADC* alleged that five named defendants "used their positions as company insiders to sell

---

Continued ...
failed because Plaintiffs failed to state a claim for breach of fiduciary duty; where such an underlying breach was stated, allegations were sufficient to state a conflict-of-interest claim).

nearly a million shares of ADC stock, reaping collective proceeds of more than $44 million."[23]

In short, Plaintiffs have failed to identify any authority permitting a conflict-of-interest claim

under ERISA to survive a motion to dismiss where the supporting allegations are as vague and

conclusory as theirs.

Moreover, Plaintiffs' attempt to distinguish Defendants' authority is unavailing.

Plaintiffs argue that *Worldcom* and *Syncor* (and *Polaroid* insofar as it relied on *Worldcom*) are

distinguishable because the plaintiffs in those cases "did not allege that [defendants] engaged in

any active conduct detrimental to the plan." Opp'n 28.  But it is clear that Plaintiffs' vague and

conclusory allegations align Count V with the claims rejected in *Worldcom*, *Syncor*, *Polaroid*,

*Pedraza*, and *Dynegy* as opposed to the specific factual allegations in *ADC*, *BellSouth*, and

*Honeywell* (each of which included allegations of insider trading).[24]  For example, the inadequate

allegations in *Pedraza* are indistinguishable from those here:

> Plaintiff claims that [compensation through stock or stock options] gave the
> Officer Defendants an incentive to keep the Plan's assets invested in Coke stock,
> so as to protect its price in the market.  According to Plaintiff, this conflict of
> interest "put Defendants in the position of having to choose between their own
> interests as executives and stockholders, and the interests of the plan participants
> and beneficiaries."  Plaintiff alleges that the Officer Defendants acted in their own

---

[23]     *See* Ex. B, *ADC* Am. Compl. ¶ 118.  In addition to *In re ADC Telecomms., Inc., ERISA Litig.*, No. 03-2989, 2004 WL 1683144 (D. Minn. Jul. 26, 2004), Plaintiffs rely upon *BellSouth* and *Honeywell*, which also involved detailed allegations of insider trading.  *See Hill v. BellSouth*, 313 F. Supp. 2d 1361, 1370 (N.D. Ga. 2004) ("At the very least, Plaintiffs' facts, accepted here as true, show that fiduciaries had insider knowledge . . . which affected the price of stock that they held *and in some cases sold* . . . ."(emphasis is added); *In re Honeywell Int'l ERISA Litig.*, No. 03-1214, 2004 WL 3245931, at *5 (D.N.J. Sept. 14, 2004) (Plaintiffs alleged defendants sold "portions of their holdings of Honeywell stock before the true state of the Company's affairs was disclosed.").

[24]     While Defendants do not concede that such allegations would save Count V, their conspicuous absence clearly distinguishes Count V from the allegations in those cases, dooming it to dismissal.

interests, by failing to engage independent fiduciaries and failing to take steps to ensure that participants' interests were loyally and prudently served.[25]

These allegations—which the *Pedraza* court found insufficient—are on all fours with Plaintiffs' allegations. Plaintiffs' allegation that the GE Officer Defendants were influenced to improperly appoint fiduciaries as a result of their personal financial stakes, Opp'n 28, does not distinguish Count V from that rejected in *Pedraza* because that is precisely the kind of unsupported conclusory allegation that the Supreme Court recently rejected in *Twombly*. In short, Plaintiffs' allegations are akin to those rejected in *Worldcom*, *Syncor*, *Polaroid*, *Dynegy*, and *Pedraza*, rather than to those sustained in *ADC*.[26]

In *Twombly*, it was undisputed that plaintiffs' allegations of "parallel conduct" were insufficient by themselves to constitute an actionable violation of the Sherman Act. The dispute was whether, taken together, plaintiffs' allegations of (i) parallel conduct and (ii) the existence of an impermissible conspiracy sufficiently stated a claim. The Court concluded that allegations of parallel conduct—which is not prohibited by the Sherman Act—were "consistent with conspiracy, but just as much in line with a wide swath of" permissible business activities. 127 S. Ct. at 1964. As a result, the allegation of such conduct added nothing to the conclusory allegation of a conspiracy. *Id.* at 1971 (observing that if the allegations were sufficient "Pleading a §1 violation against almost any group of competing businesses would be a sure thing.").

---

[25]     *Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262, 1282 (N.D. Ga. 2006) (citations omitted).

[26]     Plaintiffs attempt to distinguish *Dynegy* by arguing that it "does not address conflict of interest claims let alone the pleading standards for such claims." Opp'n. 28 n.22. But this is plainly incorrect. *See Dynegy*, 309 F. Supp. 2d 861, 897–98 ("Because plaintiff has not alleged either an identifiable conflict or harm, and has similarly failed to allege either that the committee defendants benefited from that conflict or, if so, how they benefited, and has not cited the court to any case that has recognized allegations like those asserted in Count VII as actionable, the court concludes that plaintiff has failed to state a conflict of interest claim because she has failed to allege an identifiable conflict that either benefited the defendants or caused an identifiable harm to the Plan.").

A similar result is warranted here.  "Plaintiffs do not argue . . . that . . . mere ownership of stock constituted an impermissible conflict of interest."  Opp'n 27.  As in *Twombly*, Plaintiffs' claim is based entirely upon (i) the allegation that Moving Defendants owned company stock (which is indisputably permissible) and (ii) the conclusory allegation—unsupported by any facts—that Moving Defendants actually acted out of self-interest to the detriment of Plaintiffs. As in *Twombly*, Plaintiffs' allegations of lawful conduct (ownership of company stock) add nothing to their conclusory conflict-of-interest allegation.

Plaintiffs' allegations are so vague and conclusory that they would subject any director or officer fiduciary who received company stock as part of her compensation to the "potentially enormous expense of discovery"[27] whenever the stock price fell.  *Twombly* seeks to halt such invitations to litigation.

## CONCLUSION

For the foregoing reasons, Moving Defendants respectfully request that this Court dismiss them from this action because Plaintiffs have failed to state a claim against them.

---

[27]     *Twombly*, 127 S. Ct. at 1967.

Respectfully submitted,


William J. Dreyer (Bar Roll #101539)
April M. Wilson (Bar Roll #105797)
DREYER BOYAJIAN LLP
75 Columbia Street
Albany, NY  12210
(518) 463-7784

/s/ Jonathan M. Landy
John J. Buckley, Jr.
Dane H. Butswinkas
Jonathan M. Landy
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000


Jeffrey G. Huvelle
John M. Vine
Thomas L. Cubbage III
Christian J. Pistilli
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 662-6000


Dated: July 16, 2007                    *Attorneys for Moving Defendants*

35

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

IN RE GENERAL ELECTRIC COMPANY                No. 06-CV-315
ERISA LITIGATION                                       (GLS/DRH)
                                                              (Lead Case)

_____

## <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that on the 16th day of July, 2007, I caused to be electronically filed the foregoing Reply Memorandum in Support of Third Motion of Certain Individual Defendants and GE Asset Management Incorporated to Dismiss for Failure To State a Claim and all supporting Papers referenced therein along with a Proposed Order with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

Jeffrey J. Sherrin                                  Lori G. Feldman
James A. Shannon                               Milberg, Weiss Law Firm
O'Connell, Aronowitz Law Firm          One Pennsylvania Plaza
54 State Street                                     Suite 4915
9th Floor                                            New York, NY 10119-0165
Albany, NY 12207-2501                      212-594-5300
518-462-5601                                      Fax: 212-273-4457
Fax: 518-462-6486                              Email: lfeldman@milbergweiss.com
Email: jsherrin@oalaw.com
         jshannon@oalaw.com

                                                       Evan J. Kaufman
                                                       Mark S. Reich
                                                       Lerach, Coughlin Law Firm
                                                       58 South Service Road
                                                       Suite 200
                                                       Melville, NY 11703
                                                       631-454-7733
                                                       Fax: 631-367-1173
                                                       Email: ekaufman@lerachlaw.com
                                                                mreich@lerachlaw.com

Dated:  July 16, 2007                                    /s/
                                                       _____
                                                       Jonathan M. Landy