**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

———————————————————————

IN RE GENERAL ELECTRIC COMPANY       No. 06-CV-315
ERISA LITIGATION                                   (GLS/DRH)
                                                  (Lead Case)

———————————————————————

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR FIRST MOTION TO DISMISS THE ENTIRE COMPLAINT FOR FAILURE TO STATE A CLAIM

William J. Dreyer (Bar Roll #101539)
April M. Wilson (Bar Roll #105797)
DREYER BOYAJIAN LLP
75 Columbia Street
Albany, NY 12210
(518) 463-7784

Jeffrey G. Huvelle
John M. Vine
Thomas L. Cubbage III
Christian J. Pistilli
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 662-6000

John J. Buckley, Jr.
Dane H. Butswinkas
Jonathan M. Landy
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Dated:  July 16, 2007                              Attorneys for Moving Defendants

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ................................................................................... iv

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 8

I.    Standard of Review............................................................................................ 8

      A.    Plaintiffs Have Misstated Their Burden Under Rule 8. ...................... 8

      B.    Plaintiffs Improperly Disregard Rule 9(b). ........................................ 10

II.   Plaintiffs' Prudence Claim Fails as a Matter of Law. .................................... 12

      A.    Plaintiffs' Claim That GE Plan Fiduciaries Should Not Have Held or
            Acquired GE Stock Is Barred. ............................................................ 13

      B.    Defendants Are Entitled to the Presumption of Prudence. .................. 14

            1.    Plaintiffs' Brief Mischaracterizes the GE Plan.......................... 14

            2.    The Presumption of Prudence Applies in This Case. .................. 17

            3.    The Presumption of Prudence Applies at this Stage of the
                  Case............................................................................................. 20

      C.    Plaintiffs Cannot Overcome the Presumption of Prudence. ................ 21

III.  The Claims Relating to Alleged Misstatements and Insufficient Disclosures Fail
      as a Matter of Law. ......................................................................................... 28

      A.    ERISA Does Not Support A Common Law Duty to Disclose Non-Public
            Information About Employers Whose Stock Is Held by Pension Plans. .............. 29

      B.    The Complaint Does Not Claim That the Alleged Misrepresentations
            Were Made by Persons Acting in a Fiduciary Capacity. ...................... 35

      C.    The Alleged Misrepresentations Were Immaterial as a Matter of Law................ 37

IV.   Plaintiffs' Allegations of Defendants' Knowledge Are Too Conclusory To State a
      Claim............................................................................................................... 38

A.      Plaintiffs' Allegations of Knowledge Are Insufficient Under Rule 8. ................. 40

B.      Plaintiffs' Allegations of Knowledge Are Insufficient Under Rule 9(b)............. 42

V.    Plaintiffs' Conflict of Interest, Monitoring, and Co-Fiduciary Liability Claims Are Entirely Derivative of Their Prudence and Disclosure Claims and also Should Be Dismissed. ...................................................................................................................... 43

CONCLUSION .......................................................................................................................... 44

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*In re ADC Telecommunications, Inc., ERISA Litigation*, No. 03-2989 ADM/FLN, 2004 WL 1683144 (D. Minn. July 26, 2004) ............................................27

*In re American Express Co. Shareholder Litigation*, 39 F.3d 395 (2d Cir. 1994) ...........17

*American Med. Association v. United Healthcare Corp.*, No. 00 Civ. 2800-LMM-GWG, 2002 WL 31413668, at *8 (S.D.N.Y. Oct. 23, 2002)......................................11

*Estate of Becker v. Eastman Kodak Co.*, 120 F.3d 5 (2d Cir. 1997) ................................33

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .......................................... *passim*

*Berman v. Richford Industrial, Inc.*, No. 78 Civ. 54, 1978 WL 1104 (S.D.N.Y. July 28, 1978)..................................................................................................11

*Board of Trustees of CWA/ITU v. Weinstein*, 107 F.3d 139 (2d Cir. 1997) .....................33

*Caputo v. Pfizer, Inc.*, 267 F.3d 181 (2d Cir. 2001) ........................................................10

*In re Calpine Corp.*, No. C-03-1685 SBA, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ....................................................................................24, 36

*In re Calpine Corp. ERISA Litigation*, No. C-03-1685, 2005 WL 3288469 (N.D. Cal. Dec. 5, 2005) ..........................................................................................10

*In re Coca-Cola Enters., Inc. ERISA Litigation*, No. 06-CV-953, 2007 WL 1810211 (N.D. Ga. June 20, 2007)..................................................... *passim*

*Cokenour v. Household Int'l, Inc.*, No. 02 C 7921, 2004 WL 725973 (N.D. Ill. Mar. 31, 2004)..........................................................................................11

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................40

*Cooper v. IBM Personal Pension Plan*, 457 F.3d 636 (7th Cir. 2006)...............................2

*Credit Suisse Securities (USA) LLC v. Billing*, 127 S. Ct. 2383 (2007) .................. 7, 29-31

*Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222 (W.D.N.Y. 2002) ..............................36, 39

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990).......................................................11

*Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir. 1983) ...........................................14, 23

*In re Duke Energy ERISA Litigation*, 281 F. Supp. 2d 786 (W.D.N.C. 2003) ............15, 24

*Frota v. Prudential-Bache Securities, Inc.*, 639 F. Supp. 1186 (S.D.N.Y. 1986) .............11

*In re General Motors ERISA Litigation*, No. 05-71085, 2006 WL 897444 (E.D. Mich. Apr. 6, 2006)........................................................................................................10

*Hill v. The Tribune Co.*, No. 05 C 2602(L), 2006 WL 2861016 (N.D. Ill. Sept. 29, 2006) ...............................................................................26, 41, 42

*In re Honeywell Intern.*, No. Civ. 03-1214(DRD), 2004 WL 3245931 (D.N.J. Sept. 14, 2004) ................................................................................19, 27, 36

*Kuper v. Iovenko*, 66 F.3d 1447 (1995) ..............................................................................22

*Landgraff v. Columbia/HCA Healthcare Corp.*, No. 3-98-0090, 2000 WL 33726564 (M.D. Tenn. May 24, 2000) .................................................................. 19-20

*Langbecker v. Electronic Data System Corp.*, 476 F.3d 299 (5th Cir. 2007)...................23

*In re McKesson HBOC, Inc. ERISA Litigation*, No. C00-20030RMW, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) ...........................................................13

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) ............................................................1

*Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995) .................................................... *passim*

*In re Nokia Oyj (Nokia Corp.) Securities Litigation*, 423 F. Supp. 2d 364 (S.D.N.Y. 2006).............................................................................................................43

*O'Brien v. National Property Analysts Partners*, 719 F. Supp. 222 (S.D.N.Y. 1989) .................................................................................................38, 42

*O'Brien v. National Property Analysts Partners*, 936 F.2d 674 (2d Cir. 1991) ................................................................................................ 11-12, 44

*Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262 (N.D. Ga. 2006).....................13, 22, 24

*Pegram v. Herdrich*, 530 U.S. 211 (2000)........................................................................37

*Pennsylvania Fed'n v. Norfolk So. Corp. Thoroughbred Ret. Inv. Plan*,
No. 02-9049, 2004 WL 228685 (E.D. Pa. Feb. 4, 2004) ............................................19

*In re Polaroid ERISA Litigation*, 362 F. Supp. 2d 461 (S.D.N.Y.2005) ..........................20

*In re Reliant Energy ERISA Litigation*, No. Civ. A. H-02-2051,
2006 WL 148898 (S.D. Tex. Jan. 18, 2006) ................................................................32

*Smith v. Delta Air Lines*, 422 F. Supp. 2d 1310 (N.D. Ga. 2006) ........................13, 20, 25

*In re Sprint Corp. ERISA Litigation*, 388 F. Supp. 2d 1207 (D. Kan. 2004)....................27

*Stein v. Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003) ........................................................36

*Steinman v. Hicks*, 252 F. Supp. 2d 746 (C.D. Ill. 2003)..................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ..............................31

*In re Tyco International Multidistrict Litigation*, No. MDL 02-1335-PB,
2004 WL 2903889 (D.N.H. Dec. 2, 2004)............................................................32, 37

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ..................................................................1, 33

*Wright v. Or. Metallurgical Corp.*, 222 F. Supp. 2d 1224 (D. Or. 2002)..........................19

*Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004)......................13, 21, 23

## FEDERAL STATUTES, RULES AND REGULATIONS

17 C.F.R. 240.10b-5..............................................................................................................33

17 C.F.R. 243.100 ................................................................................................................33

26 C.F.R. § 54.4975-11(a)(2)........................................................................................15, 16

29 C.F.R. § 2550.407d-6(a)(2)......................................................................................15, 16

29 U.S.C. § 1002(21) ..........................................................................................................38

29 U.S.C. § 1104..........................................................................................................13, 21

29 U.S.C. 1107(d)(6) ..........................................................................................................15

29 U.S.C. § 1113..................................................................................................................11

Fed. R. Civ. P. 8 .......................................................................................................... *passim*

Fed. R. Civ. P. 9 .......................................................................................... *passim*

## OTHER AUTHORITIES AND SOURCES

DOL Adv. Op. 83-6A (Jan. 24, 1983), *available at* 1983 ERISA LEXIS 51 ...................16

Joint Committee on Taxation, Technical Explanation of H.R. 4, the "Pension
    Protection Act of 2006," as Passed by the House on July 28, 2006, and as
    Considered by the Senate on August 3, 2006 (JCX-38-06), August 3, 2006 .............17

U.S. Department of Labor, *Amicus* Brief in *In re Enron ERISA Litig.*
    (Aug. 30, 2002), *available at* http://www.dol.gov/sol/ media/briefs
    enronbrief-8-30-02.pdf.................................................................................................34

Restatement (Second) of Trusts § 167 cmt. b (1959) ........................................................27

# INTRODUCTION

Plaintiffs have failed to allege plausible ERISA claims.  In an effort to support their flawed action, Plaintiffs have relied on erroneous notions of notice pleading, mischaracterized the GE Savings & Security Program ("GE Plan"), and made unfounded contentions about the duties of fiduciaries under ERISA.  Plaintiffs' contentions are meritless, and this action should be dismissed in its entirety.  In some respects, this motion asks this Court to address narrow technical issues — *e.g.*, how government regulations define an ESOP and whether distributing an employer's SEC filings to participants is a fiduciary action.  But in addressing such issues, the Court should also be mindful of the bigger picture.

Plaintiffs contend that because ERISA was enacted, in part, to protect retirement savings through pension plans, expansive rules allowing breach of duty claims against fiduciaries are desirable as a means to protect investments in employer stock.  In reality, however, ERISA's goals will be thoroughly undermined if ERISA is misconstrued or misapplied to make retirement plans — especially those plans that invest in employer stock — more a source of litigation than a source of retirement income.  As the Supreme Court stated, courts must consider —

> competing congressional purposes, such as Congress' desire to
> offer employees enhanced protection for their benefits, on the one
> hand, and, on the other, its desire not to create a system that is so
> complex that administrative costs, or litigation expenses, unduly
> discourage employers from offering welfare benefit [and pension]
> plans in the first place.

*Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ("ERISA [is] an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests — not all in favor of potential plaintiffs.").

With the strong encouragement of Congress, plans allowing investment in employer stock are an important part of the pension landscape.[1]  Courts should be mindful that fiduciaries of such plans not be placed in what Plaintiffs concede is a "conundrum."  (Opp., p. 28.)  Plaintiffs advocate rules whereby fiduciaries may be readily second-guessed for their actions and sued for violating ERISA no matter what they do — *i.e.*, regardless of whether they comply with the plan and allow participants to elect to invest in the employer's stock or violate the terms of the plan and bar participants from investing in the employer's stock.  Yet if courts establish rules that place fiduciaries in such an untenable "no win" situation or allow lawsuits against them whenever the employer's stock suffers a period of decline, the ensuing litigation and litigation risk will thwart Congress's goal of encouraging employers to establish retirement plans for their employees and, in particular, its goal of encouraging employers to give workers the opportunity to invest a portion of their retirement savings in employer stock.

ERISA regulates a voluntary regime that allows an employer to decide whether to establish a retirement plan and what kind of benefits the plan will provide.  As the Seventh Circuit noted in a case last year when the employer had ceased to offer the disputed defined benefit program (even though the defendants won on appeal), "[i]t is possible … for litigation about pension plans to make everyone worse off."  *Cooper v. IBM Personal Pension Plan*, 457 F.3d 636, 642 (7th Cir. 2006).  The same cautionary note applies here, where, it bears emphasizing, Defendants are being sued for *following* the terms of the GE Plan:  if courts make decisions that confront the fiduciaries of plans holding employer stock with a "conundrum" that results in unavoidable and protracted litigation, employers will be strongly discouraged from

---

[1]      *See* Defs.' Mem. in Supp. of First Mot. to Dismiss, pp. 3-4 & n. 2 ("As of 2005, over twenty million Americans participated in 401(k) plans that provided for investment in employer stock.").

maintaining plans that offer participants with the opportunity to invest in employer stock — directly contrary to the intent of Congress.

Workers' retirement investments in employer stock already enjoy the comprehensive protections of the securities laws. ERISA should not be misconstrued in a manner that paralyzes fiduciaries and discourages employers from offering valuable benefits when the matter at issue is properly addressed by imposing appropriate remedies against appropriate defendants under the securities laws. By asserting ERISA claims against the GE Plan's alleged fiduciaries, Plaintiffs are invoking the wrong legal standards against the wrong defendants to obtain the wrong relief.

After responding to Plaintiffs' fundamental errors concerning the standard of review that applies to this motion, this brief addresses (1) the claim that fiduciaries breached their duty of prudence by allowing the GE Plan to continue to invest in GE stock as required by the Plan documents (the "prudence claim"), (2) the claim that fiduciaries breached their fiduciary duty by misstatements or failures to disclose concerning GE's alleged insurance under-reserving (the "misrepresentation claim"), and (3) Plaintiffs' failure to make factual allegations that Defendants had knowledge of any alleged under-reserving, an essential prerequisite to both the prudence and the misrepresentation claims. Those subjects are briefly reviewed here:

*The Prudence Claim.* In addressing this claim, the key question is in what circumstances, if any, should fiduciaries be required to override — *i.e.*, violate — plan terms and divest a plan of employer stock. Plaintiffs suggest that fiduciaries be subject to liability for not eliminating employer stock from a plan any time it is alleged that they knew the stock price might go down. Yet GE is one of the largest, most diversified, well-regarded companies on the face of the planet. It has a stellar track record for growth in earnings and dividends and is often cited as one of the

most respected companies in the world.  If Plaintiffs have stated a claim by alleging that compliance with the terms of the GE Plan by allowing continued Plan investment in GE stock was imprudent, then it follows that a participant in *any* plan that allows participants to elect to invest in employer stock could effectively state a claim against the plan's fiduciaries at any time. In short, it is *always* possible for a plaintiff to allege that the plan's fiduciaries at some time knew that the price of the employer's stock might go down.  If such an allegation is sufficient to state a claim that a fiduciary's decision to continue to invest in employer stock is imprudent, there would be no meaningful checks on what plaintiffs must do in order to initiate expensive and invasive discovery.

It is clear that the terms of the collectively-bargained GE Plan require the responsible Plan fiduciaries to offer GE stock as an investment option to GE Plan participants and to invest in GE stock in accordance with the directions they receive from Plan participants.  If the fiduciaries of the GE Plan did anything else, they would be subject to the real prospect of liability under ERISA for violating the terms of the Plan.

Congress did not intend ERISA to put plan fiduciaries in a no win situation.  Recognizing this, courts have crafted various rules to protect fiduciaries who are sued on the ground that they complied with the terms of the plan (*i.e.,* for *failing* to violate plan terms).  Only such rules can protect fiduciaries from being subject to liability both for *overriding* the plan's terms and for *failing* to override those same terms.  Without such protections, fiduciaries would be subject to the constant threat of second-guessing in the form of protracted and expensive litigation and the opportunity for workers to invest in savings plans would correspondingly suffer.

The more well-reasoned decisions crafting rules to deal with this "conundrum" have held that ERISA itself precludes suit against fiduciaries for failing to violate a plan's terms and cause

4

the plan to divest its holdings of employer stock.  Other courts have held that fiduciaries may be liable for failing to violate the plan, but *only* in circumstances where the employer faces imminent collapse or dire circumstances that threaten not merely to diminish, but to destroy entirely, the value of the plan's investment.  Under either of these two lines of cases, Plaintiffs' prudence claims must be dismissed.

None of Plaintiffs' arguments to the contrary withstands scrutiny.  They first argue that the GE Plan is not required to hold GE stock.  This assertion, however, is just plain wrong.  Plaintiffs next argue that, even if the GE Plan's fiduciaries are entitled to a presumption of prudence, this presumption is inapplicable on a motion to dismiss.  However, the Supreme Court recently ruled that when the allegations in a complaint could not (even if true) give rise to a plausible claim of entitlement to relief, "this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007).  Here, it is wholly implausible to suggest (and Plaintiffs have not suggested) that Plaintiffs could establish that GE was on the brink of collapse (or in comparably dire circumstances), and therefore there is no basis to allow this claim to go forward.

Plaintiffs virtually ignore the authorities recognizing that allowing claims against fiduciaries based on their compliance with plan terms is contrary to sound policy and congressional intent.  Instead, Plaintiffs suggest that all sorts of minimalist allegations, well short of imminent collapse, are sufficient to overcome the presumption of prudence to which fiduciaries are entitled.  Indeed, Plaintiffs argue that the presumption may be overcome merely by alleging that the fiduciary knew that the price of employer stock might decline, even in the absence of any suggestion that the employer faced truly dire circumstances.  To so hold, however, would eviscerate the presumption.  It *always* will be possible to allege in hindsight that

the employer's stock was overvalued; if such an allegation were enough fiduciaries would have no meaningful protection from the "*Moench* conundrum" (Opp., p. 28) and retirement savings opportunities would decline.   If plaintiffs are permitted to bring suit against fiduciaries for holding employer stock in compliance with the terms of a plan at all, they should be permitted to do so only when plaintiffs can allege facts indicating that the company faced imminent collapse or comparable peril.  Otherwise, fiduciaries should be safe in the knowledge that they have complied with the plan terms.

Wherever the Court draws the line in this case, it is clear the GE Plan's investment in the stock of GE — one of the world's largest, most diversified, and most profitable companies — falls on the side requiring dismissal.  Nothing in the Complaint, or in reality, suggests that GE is akin to Enron.

*The Misrepresentation Claim.*  Insofar as Plaintiffs allege that the fiduciaries should be liable for misstatements and non-disclosure, it is plain that this is a securities fraud case masquerading as an ERISA case.  Underlying each of the various claims brought by Plaintiffs is the single factual allegation that someone manipulated the price of GE stock by overstating GE's earnings in GE's SEC filings.  These are heartland securities-law claims and bear only an indirect and attenuated relationship to ERISA.  ERISA regulates communications to employee benefit plan participants about the terms of their plans, not the securities in which such plans invest.  As a number of other courts have recognized, the Court should not create common-law rules under ERISA that encroach upon the core purposes of the securities laws.

Plaintiffs rely on some contrary district court opinions from other jurisdictions permitting such claims under ERISA.  Those courts reasoned that, because the allegations of wrongdoing involved would (if true) be prohibited under the securities laws, judge-made rules under ERISA

prohibiting the same conduct would not conflict with the securities laws.  Those district courts, however, did not have the benefit of the recent Supreme Court decision in *Credit Suisse Securities (USA) LLC v. Billing*, 127 S. Ct. 2383 (2007), which clarified that such issues should be regulated *exclusively* by the securities laws and that courts should not create even supposedly complementary causes of action under other statutes.  As the Supreme Court explained, permitting such cases to go forward under other statutes would impermissibly circumvent the heightened pleading requirements imposed by Congress to deal with allegations involving securities fraud.  In light of this controlling precedent, there can no longer be any doubt that Plaintiffs' misrepresentation claim must be dismissed.

There are two additional, independent bases for dismissing Plaintiffs' misrepresentation claim.  First, to the extent that Plaintiffs have made non-conclusory allegations regarding alleged misrepresentations, *all* of the alleged misrepresentations took the form of statements in GE's SEC filings.  It is clear that SEC filings are not themselves fiduciary communications; they are business communications, governed by the securities law and directed to the investing public generally.  It is also clear that SEC regulations *require* that SEC filings, including those at issue here, be furnished to plan participants.  Thus, complying with this requirement is not a fiduciary act because it is not a discretionary act.  That this securities-law obligation was fulfilled here by incorporating SEC filings by reference into Plan communications ought not to change this result.

Second, it is clear that, even if true, the size of the under-reserving that Plaintiffs have alleged is simply too small — in view of GE's size, profitability, and diversity — to have materially affected the price of GE stock.  This reality is demonstrated by the fact that GE's stock price did not even fall when the alleged under-reserving was allegedly revealed to the

market in November 2005.  Therefore, Plaintiffs' misrepresentation claim, which depends on

materiality, should be dismissed.

     *The Lack of Allegations Concerning Knowledge.*  The Complaint's conclusory averments

concerning Defendants' knowledge of alleged under-reserving by GE's insurance subsidiaries (a

premise of all of Plaintiffs' claims) fail to satisfy even the notice pleading standard of Rule 8, as

recently annunciated by the Supreme Court.  Even more clearly, those allegations fail to satisfy

Rule 9(b), which applies to this ERISA case because both the prudence and misrepresentation

claims are premised on an alleged underlying fraud.  Notably, in their opposition, Plaintiffs fail

to offer any argument that their allegations of knowledge satisfy *either* pleading standard.  Nor

could they, because the Complaint is virtually bereft of specific allegations.  For almost all

Defendants, the only factual averment is the allegation that the person held a certain position

within the GE organization.  Because the allegations of knowledge do not come close to

satisfying either requisite standard, the Complaint should be dismissed in its entirety.

# ARGUMENT

## I.    Standard of Review

### A.    Plaintiffs Have Misstated Their Burden Under Rule 8.

     The Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955

(2007), sets forth the proper standards for evaluating the sufficiency of a complaint under Rule 8

on a motion to dismiss.  The Supreme Court held in *Twombly* that a complaint must allege *facts*

showing that the plaintiff is entitled to relief; conclusory allegations and blanket assertions are

not enough.  *See id.* at 1965 & n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket

assertion, of entitlement to relief.").  Thus, while a complaint attacked by a Rule 12(b)(6) motion

to dismiss does not need detailed factual allegations, "a plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964 (internal citation omitted).

As the Supreme Court explained, the requirement that plaintiffs establish a plausible basis for their claim at the pleading stage "serves the practical purpose of preventing a plaintiff with a largely groundless claim from tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 1959. The Supreme Court frankly acknowledged the fact that "discovery can be expensive," and reminded courts of their obligation to take their gate-keeping function seriously. *Id.* The Court should therefore require "some specificity in pleading before allowing [this] potentially massive factual controversy to proceed." *Id.* at 1967.

In their opposition, Plaintiffs cited the Second Circuit's opinion in *Twombly* for the proposition that "a court may dismiss a complaint on a Rule 12(b)(6) motion only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  (Opp., p. 13.)  In reversing the Second Circuit, the Supreme Court expressly rejected the "no set of facts" standard, observing that it "has earned its retirement." 127 S. Ct. at 1969.  In *Twombly,* the Supreme Court stated that plaintiffs' factual allegations must demonstrate that their entitlement to relief is plausible — not merely speculative or possible.  *See id*. at 1965-66 & n.5; *see also id.* at 1974 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").  Thus, Plaintiffs must allege, as to each element of their claim, facts that if true establish a plausible entitlement to relief.  Because Plaintiffs have failed to aver facts that make the basis for their recovery plausible, their Complaint must be dismissed.[2]

---

[2]     Although Rule 12(b)(6) requires the Court to treat all well-pleaded facts as true for purposes of this motion, it is inaccurate for Plaintiffs to assert that Defendants "do not dispute"

**B.** **Plaintiffs Improperly Disregard Rule 9(b).**

Rule 9(b) also applies to the Complaint's allegations of "the circumstances constituting fraud." Fed. R. Civ. P. 9(b).[3]  That rule applies insofar as an allegation of fraud is put at issue; the cause of action need not be for "fraud."  District court decisions cited by Plaintiffs, concluding that Rule 9(b) does not apply to ERISA cases, overlook that the rule applies whenever a plaintiff's claim puts a fraudulent misrepresentation at issue.  Better-reasoned cases have frequently applied this standard to allegations, like Plaintiffs' allegations, that defendants misled plan participants and artificially inflated the price of the employer's stock.  *See In re Coca-Cola Enters., Inc. ERISA Litig.*, No. 06-CV-953, 2007 WL 1810211, at *5, *14 (N.D. Ga. June 20, 2007) (holding that Rule 9(b)'s heightened pleading standard applied to plaintiffs' ERISA claims "because the underlying allegations are grounded in fraud," notwithstanding allegation that defendants "knew or should have known" of alleged wrongdoing); *In re Gen. Motors ERISA Litig.*, No. 05-71085, 2006 WL 897444, at *16 (E.D. Mich. Apr. 6, 2006) ("[T]he rationale behind Rule 9(b) applies where a plaintiff alleges that a defendant has lied, albeit in the context of a fiduciary duty claim, and albeit without the use of the word 'fraud.'"); *accord In re Calpine Corp. ERISA Litig.*, No. C-03-1685, 2005 WL 3288469, at *7 (N.D. Cal. Dec. 5, 2005); *Cokenour v. Household Int'l, Inc.*, No. 02 C 7921, 2004 WL 725973, at *7 (N.D. Ill. Mar. 31, 2004).[4]

---

the allegations that GE's insurance businesses maintained inadequate reserves and that Defendants published erroneous or incomplete information to plan participants.

[3]    Rule 9(b) does not apply to allegations unrelated to Plaintiffs' assertion that Defendants knowingly misled Plan participants, such as Plaintiffs' allegations of Defendants' fiduciary status.

[4]    These decisions are consistent with Second Circuit precedent that Plaintiffs disregarded. Courts in this circuit do not limit the application of Rule 9(b) to claims alleging "fraud" as the cause of action, and, in appropriate cases, have applied Rule 9(b) to fiduciary duty claims.  *See, e.g.*, *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (requiring plaintiffs to satisfy Rule

Moreover, where "Plaintiffs' allegations of fraud," as in this case, "are intrinsic to each and every one of the Plaintiffs' claims under ERISA," failure to satisfy Rule 9(b) necessitates dismissal of the entire Complaint. *See Coca-Cola Enters.*, 2007 WL 1810211, at *4. Here, because all of Plaintiffs' claims — including their prudence claim — depend on their allegation that Defendants knew that GE's SEC filings were misleading, each of their claims must be dismissed if the allegations concerning the alleged fraud do not satisfy Rule 9(b).

"The purpose of Rule 9(b) is threefold — it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991). Moreover,

> the charge of fraud, which implies moral turpitude, should not be casually alleged, since its mere averment may irreparably harm a defendant even if that party is ultimately vindicated. This is particularly true where the accused is invested with a public trust or a fiduciary duty.

*Berman v. Richford Indus., Inc.*, No. 78 Civ. 54, 1978 WL 1104, at *6 (S.D.N.Y. July 28, 1978) (internal citations omitted).

In order to satisfy Rule 9(b)'s pleading requirement, Plaintiffs must plead the circumstances of the alleged fraud with particularity. "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). The Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *O'Brien*, 936 F.2d at 676.

---

9(b) when relying upon the ERISA statute of limitations, 29 U.S.C. § 1113, for "case[s] of fraud or concealment"); *American Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800-LMM-GWG, 2002 WL 31413668, at *8 (S.D.N.Y. Oct. 23, 2002) (applying Rule 9(b) to "allegations of fraud underlying … breach of fiduciary duty claims" under ERISA); *Frota v. Prudential-Bache Secs., Inc.*, 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986) ("Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty — statutory, common law, tort, contractual, or fiduciary.").

Thus, "while Rule 9(b) permits scienter to be demonstrated by inference, this 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.' …   An ample factual basis must be supplied to support the charges." *Id.* (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).  Because Plaintiffs' allegations fail to satisfy even Rule 8 (as shown below), it follows *a fortiori* that their averments of fraud do not remotely satisfy the heightened pleading standards of Rule 9(b).

## II.    **Plaintiffs' Prudence Claim Fails as a Matter of Law.**

Plaintiffs' allegation that investment in GE — one of the world's largest, most profitable, and most diversified businesses — was imprudent is facially incredible.  The GE Plan required its fiduciaries to offer GE stock to participants, and to hold GE stock as directed.  Their failure to do so would almost certainly have exposed them to significant liability.

Recognizing the no win bind that such fiduciaries face, courts have crafted a variety of rules designed to afford protections to them, implicitly recognizing that, without such protections, employers will be unable to offer company stock funds to their employees.  Under one line of cases, courts have held that there is a *per se* bar on suits against fiduciaries for failing to violate plan terms and remove company stock as a plan option.  Other courts have held that fiduciaries may be liable for their failure to delete plan-required company stock funds, but only in the face of the company's imminent collapse or similarly dire circumstances.  The Court need not decide between these two approaches here, however, since it is clear that either would require dismissal of Plaintiffs' prudence claims in this case.  Because it is plain from the face of Plaintiffs' Complaint that they will be unable to establish that investment in GE was imprudent, the Court should dismiss this case now, at the point of minimum expenditure of time and money.

A.   **Plaintiffs' Claim That GE Plan Fiduciaries Should Not Have Held or Acquired GE Stock Is Barred.**

A number of courts have ruled that holding fiduciaries of eligible individual account plans, or EIAPS, liable for failing to override plan terms and remove company stock as an investment option "may run afoul of [the] express provisions" of ERISA Section 404(a)(2). *Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262, 1275 (N.D. Ga. 2006); *accord Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004); *Smith v. Delta Air Lines*, 422 F. Supp. 2d 1310, 1327 (N.D. Ga. 2006); *Steinman v. Hicks*, 252 F. Supp. 2d 746, 758-59 (C.D. Ill.), *aff'd*, 352 F.3d 1101 (7th Cir. 2003); *Coca-Cola Enters.*, 2007 WL 1810211, at *9-10.  It is undisputed that Section 404(a)(2) applies to all EIAPs, regardless of whether they also qualify as ESOPs.  *See* 29 U.S.C. 1104(a)(2).  Because Plaintiffs allege, and therefore admit, that the GE Plan is an EIAP (Compl. ¶ 118), Section 404(a)(2) bars Plaintiffs' prudence claim here.

Plaintiffs concede that Section 404(a)(2) bars diversification claims.  (Opp., p. 22.)  They argue, however, that Section 404(a)(2) does not bar their claim because, on their theory, *any* investment in GE stock would have been imprudent.  Such a claim, however, is logically indistinguishable from the forbidden diversification claim:  "If there is no duty to diversify … plan assets under the statute, it logically follows that there can be no claim for breach of fiduciary duty arising out of … allowing the plan to become heavily weighted in company stock."  *In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030RMW, 2002 WL 31431588, at *5 (N.D. Cal. Sept. 30, 2002).

These decisions recognize the unfairness and impracticality caused by any rule that allows suits against fiduciaries for offering employer stock in accordance with plan documents, as fiduciaries of such plans would necessarily be forced to guess where a court might draw the line if participants later sue.  They also serve to honor the congressional purpose underlying

13

Section 404(a)(2) — namely, to encourage employers to create and maintain plans providing for employee ownership of employer stock.  *See Donovan v. Cunningham*, 716 F.2d 1455, 1458 (5th Cir. 1983).  By recognizing that, despite their guise as prudence claims, these claims are fundamentally challenges to fiduciaries' alleged failure to diversify by divesting employer stock holdings, courts allow Section 404(a)(2)'s bright line rule to play its appropriate normative function.  Because Plaintiffs' claim here depends on the premise that fiduciaries should have caused the GE Plan to invest in alternatives other than GE stock, it is thus barred by Section 404(a)(2).

### B.    Defendants Are Entitled to the Presumption of Prudence.

Although Defendants submit that such a bright-line rule is most consistent with both the plain language of ERISA and the policy of promoting employee stock ownership, the Court need not reach the question whether a *per se* bar is appropriate.  This is because a number of other courts have held that fiduciaries are entitled to a strong presumption that the plan's investment in employer stock was prudent, and thus while suits against fiduciaries may under appropriate circumstances go forward, those courts would allow them to do so only where plaintiffs have pled facts sufficient to overcome this presumption.  While Plaintiffs argue that this presumption does not apply here and that they have pled facts sufficient to overcome it, both contentions are meritless.  Because it is outlandish to suggest that GE faced the kind of dire circumstances necessary to allow such a claim to proceed even under this second approach, Plaintiffs' prudence claim must be dismissed.

#### 1.    Plaintiffs' Brief Mischaracterizes the GE Plan.

Plaintiffs falsely assert that the GE stock portion of the GE Plan is not an ESOP.  The starting point for determining whether a plan is an ESOP is the statutory language.  Tellingly,

however, Plaintiffs ignore the statute and its implementing regulations in making their argument. The statute and regulations governing ESOPs make plain that their assertion is without merit.

As Defendants explained in their opening brief, ERISA Section 407(d)(6) defines an ESOP, in relevant part, as (1) "a stock bonus plan which is qualified," (2) "which is designed to invest primarily in qualifying employer securities," and (3) which meets any other requirements imposed by regulation. *See* 29 U.S.C. 1107(d)(6). Plaintiffs do not, and could not, argue that the GE Plan is not a qualified stock bonus plan or that it fails to satisfy any applicable regulation.[5] Instead, they erroneously suggest that the GE stock portion of the GE Plan is not an ESOP because it is not designed to invest primarily in GE stock.

Insofar as it owns GE stock, however, the GE Plan is an ESOP. Applicable regulations state that "[a]n ESOP may form a portion of a plan the balance of which includes a qualified pension, profit-sharing, or stock bonus plan which is not an ESOP." 26 C.F.R. § 54.4975-11(a)(5) (2006); 29 C.F.R. § 2550.407d-6(a)(4) (2006). Thus, the GE stock portion of the GE Plan may be an ESOP even if the balance of the Plan is invested in something other than GE stock. It is clear that the "portion of [the] plan" invested in GE stock is "designed to invest primarily in" GE stock, since it is necessarily invested *entirely* in GE stock. The fact that other portions of the GE Plan are invested in other funds does nothing to alter this reality. *See id.*; *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 794 (W.D.N.C. 2003).

It is true that the GE Plan does not require any particular "percentage of Plan assets to be invested in [GE] stock." (Opp., p. 26.) However, all that the statute requires is that the ESOP

---

[5]     Plaintiffs state that the summary plan description ("SPD") "is silent on the Plan's purported status as an ESOP." (Opp., p. 27.) This, however, is irrelevant: governing regulations require that the plan documents, not the SPD, state the plan's ESOP status, *see* 26 C.F.R. § 54.4975-11(a)(2) (2006); 29 C.F.R. § 2550.407d-6(a)(2) (2006), and it is undisputed that the GE Plan does so here, *see* Compl. ¶ 236; S&SP § I.

portion of the GE Plan be *designed* to invest primarily in GE stock   "Neither ERISA nor the applicable regulations promulgated thereunder contain maximum or minimum percentages of plan assets which must be invested in employer securities over the life of an ESOP in order to satisfy the 'primarily' requirement."  DOL Adv. Op. 83-6A (Jan. 24, 1983), *available at* 1983 ERISA LEXIS 51.  While there might be a theoretical possibility that each of the hundreds of thousands of GE Plan participants would direct their portion of the Plan assets elsewhere, leaving the Plan with no GE stock, that possibility is so far-fetched as to be completely implausible.  And, in any event, the possibility is *purely* theoretical.  As Plaintiffs themselves acknowledge, the GE Plan in fact was "heavily invested in GE stock" throughout the so-called Class Period.  *See* Compl. ¶ 1 ("in excess of $16 billion of the Plan's $25 billion or more in assets were invested in GE Stock"); *see also id.* ¶ 5 ("GE Stock comprised a significant percentage of the overall value of the assets held by the Plan,").  Thus, the GE stock portion of the GE Plan is an ESOP.[6]

Plaintiffs' argument, if accepted, would contravene clear congressional policy.  Under Plaintiffs' theory, if the sponsor of a defined contribution plan *required* investment in employer stock, then the GE Plan would be entitled to the special treatment afforded ESOPs under the law (and discussed in detail in Defendants' opening brief).  By contrast, if a plan sponsor instead gave beneficiaries greater control over their investments, permitting but not requiring them to invest in employer stock, the plan would not be entitled to ESOP treatment.  This would

---

[6]     Plaintiffs' purported distinction between an ESOP and a 401(k) plan based on the latter's purpose of providing retirement savings is nonsensical.  There is no reason why a plan cannot simultaneously serve both purposes, as applicable regulations expressly permit.  *See* 26 C.F.R. § 54.4975-11(a)(5) (2006); 29 C.F.R. § 2550.407d-6(a)(4) (2006).  Here, the GE Plan is plainly designed both to facilitate retirement savings and to encourage employee stock ownership.  Although the GE Plan does not mandate employee ownership of GE stock, it is obvious, given the popularity of the GE stock investment option, that it does not need to do so in order to realize the goal of employee ownership.

discourage plan sponsors from offering participants substantial diversification rights, which is precisely the opposite of what Congress intended.  Indeed, while recently amending ERISA, Congress emphasized that an "ESOP will not be treated as failing to be designed to invest primarily in qualifying employer securities merely because the plan provides diversification rights as required [by law] or greater diversification rights than required under the" law.[7]  The fact that the GE Plan permits but does not require investment in GE stock does nothing to alter the fact that the GE stock portion of the Plan is an ESOP.  Any other result would penalize plans for offering more than the minimum diversification rights to participants, contrary to congressional intent.[8]

Finally, Plaintiffs' reliance on the unsupported allegation in their Complaint that the GE Plan is not an ESOP cannot save them, even on a motion to dismiss.  Whether the GE stock portion of the Plan is an ESOP is a question of law, and legal conclusions stated in a complaint need not be accepted as true.  *See In re Am. Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n.3 (2d Cir. 1994).  Moreover, Plaintiffs offer no authority for their assertion that the Court cannot determine whether the GE Plan is an ESOP at this stage.  The GE Plan documents, along with ERISA and its implementing regulations, make plain that it is an ESOP.

### 2.   The Presumption of Prudence Applies in This Case.

Plaintiffs' argument that the *Moench* presumption applies only to ESOPs is a red herring because, as established above, the GE Plan clearly is an ESOP.  Plaintiffs argue in the alternative

---

[7]     Joint Committee on Taxation, Technical Explanation of H.R. 4, the "Pension Protection Act of 2006," as Passed by the House on July 28, 2006, and as Considered by the Senate on August 3, 2006 (JCX-38-06), August 3, 2006, at 221 n.248

[8]     Plaintiffs' argument also proves too much:  if they were correct, no defined contribution plan could ever qualify as an ESOP because no plan can be certain that it will always hold employer stock.  According to Plaintiffs, plan fiduciaries might under many circumstances be required to liquidate an ESOP's holdings of employer stock.

that Defendants are not entitled to the presumption even if the GE stock portion of the GE Plan is an ESOP or EIAP.  This argument, however, is wholly unsupported by case law.  Plaintiffs cannot and do not point to a single case holding that ESOP fiduciaries are not entitled to at least the deference and protection afforded by the *Moench* presumption.  The Court should reject Plaintiffs' novel view in this case.

Plaintiffs' argument depends on the false premise that GE Plan fiduciaries are not required by the Plan to acquire and hold GE stock as participants direct.  As Defendants' opening brief explained, the GE Plan permits individual participants to choose among investment alternatives, including the GE stock investment option, and then mandates that GE Plan fiduciaries acquire GE stock as required by participants' individual elections.  Thus, while the GE Plan is not required to hold any particular amount of GE stock, the Plan document does require its fiduciaries to offer GE stock as an investment option and to hold GE stock to the extent necessitated by its participants' individual investment decisions.  Eliminating GE stock as an investment option or declining to follow directions to hold or acquire GE stock would have required fiduciaries to violate the terms of the GE Plan.  Plaintiffs simply ignore this reality. (*See* Defendants' Opening Mem., pp. 10-11.)

As Plaintiffs explain, the *Moench* court was rightly "sympathetic to the conflicted position of plan fiduciaries" in circumstances where the "the fiduciary would run afoul of the plan documents" if he "were to divest the plan of Company stock."  (Opp., pp. 26-27.)  Plaintiffs argue that the *Moench* presumption should not apply in this case because GE Plan fiduciaries do not face this "'no-win' situation."  (Opp., p. 28.)  The purported distinction, however, is chimerical.  The terms of the GE Plan, every bit as much as the terms of the plan in *Moench*, require that the GE Plan invest in employer stock.  The fiduciaries of the GE Plan could prevent

the Plan from acquiring GE stock only by disobeying either the Plan requirement to offer GE stock or the Plan requirement to make investments of Plan funds as directed by participants. Therefore, GE Plan fiduciaries are in precisely the "no win" conundrum that justified the presumption of prudence in *Moench* itself:  if the GE Plan's fiduciaries did "not maintain the investment in the employer's securities," they may well have "face[d] liability for" that decision. *Moench v. Robertson*, 62 F.3d 553, 571-72 (3d Cir. 1995).[9]

Moreover, even if the GE Plan were not an ESOP, the presumption of prudence nevertheless would apply in this case.  Plaintiffs' argument "that *Moench* is inapplicable because the case concerned an ESOP instead of a 401(k) profit sharing plan … is incorrect."  *Penn. Fed'n v. Norfolk So. Corp. Thoroughbred Ret. Inv. Plan*, No. 02-9049, 2004 WL 228685, at *7 (E.D. Pa. Feb. 4, 2004).  This is because all EIAPs, including but not limited to ESOPs, "are treated the same for the purpose of fiduciary duty analysis."  *Wright v. Or. Metallurgical Corp.*, 222 F. Supp. 2d 1224, 1233 (D. Or. 2002), *aff'd*, 360 F.3d 1090 (9th Cir. 2004); *accord In re Honeywell Int'l*, No. Civ. 03-1214(DRD), 2004 WL 3245931, at *11 n.15 (D.N.J. Sept. 14, 2004) ("The argument for similar treatment appears to be a strong one:  an EIAP no less than an ESOP calls for investment in employer securities, and it would seem appropriate to give the same deference in either case to fiduciary decisions that conform to the demands of the plan.").  Thus, the better-reasoned opinions have applied the presumption of prudence to EIAPs even when they are not ESOPs.  *See, e.g.*, *Landgraff v. Columbia/HCA Healthcare Corp.*, No. 3-98-0090, 2000 WL

---

[9]     Plaintiffs' suggestion that Section 404(a)(1)(D) of ERISA trumps a fiduciary's obligation to follow the terms of the GE Plan is question-begging at best.  ERISA requires fiduciaries to follow the plan unless the plan's provisions are inconsistent with ERISA.  Assuming such suits may ever go forward, it is at least clear that, absent circumstances demonstrating imprudence, Section 404(a)(1)(D) does not trump the terms of a plan.  Therefore, insofar as concerns an ESOP or other EIAP, a plaintiff must at a minimum demonstrate imprudence sufficient to overcome the *Moench* presumption in order for Section 404(a)(1)(D) to control.

33726564, at *6 (M.D. Tenn. May 24, 2000).  Because Plaintiffs do not and could not contest

that the GE Plan is an EIAP, the Court should apply the *Moench* presumption in this case

regardless of whether the GE stock portion of the GE Plan is an ESOP.

3.      The Presumption of Prudence Applies at this Stage of the Case.

Plaintiffs also attempt to delay the inevitable by contending that the Court must ignore

the presumption at the motion to dismiss stage.  To the contrary, the Court should test the

adequacy of the pleadings (taken as true) against all applicable legal standards, including this

presumption.

Even under Rule 8, plaintiffs must plead facts that establish grounds for relief and a

plausible case.  *See Twombly*, 127 S. Ct. at 1965.  Where plaintiffs face the ultimate burden of

overcoming a presumption, they must at a minimum allege facts that render plausible their

ability to overcome that presumption.  Thus, for instance, the *Delta Air Lines* court applied

*Moench* on a motion to dismiss and held that the plaintiffs' factual allegations (taken as true)

failed to support their "claim that the presumption can be overcome."  *Delta Air Lines, Inc.*, 422

F. Supp. 2d at 1331 n.21; *accord In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 475

(S.D.N.Y.2005) ("this Court must ensure that Plaintiffs have sufficiently alleged facts entitling

them to present evidence in support of their claims").  While Plaintiffs rely on a number of cases

refusing to test the adequacy of plaintiffs' pleadings in light of the presumption that they would

ultimately need to overcome, *Twombly* clarifies that these cases should not be followed.

Ignoring the *Moench* presumption at the outset would result in an enormous amount of

time and expense being spent on discovery, notwithstanding the fact that the presumption

indisputably cannot ultimately be overcome.  As the Supreme Court explained in *Twombly*, "lest

a plaintiff with a largely groundless claim be allowed to take up the time of a number of other

people, with the right to do so representing an *in terrorem* increment of the settlement value,"

20

something beyond the mere possibility of an ultimate recovery must be alleged.  127 S. Ct. at 1966 (internal quotation marks omitted).  Thus, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Id.* (internal quotation marks omitted).  Especially in light of *Twombly*, where a plaintiff's factual allegations (taken as true) are insufficient to overcome a presumption of prudence, the case must be dismissed at the pleadings stage.  *See, e.g.*, *Wright*, 360 F.3d at 1099 (applying the *Moench* presumption at the pleadings stage); *Coca-Cola Enters.*, 2007 WL 1810211, at *9-10 (same).

      **C.**     **Plaintiffs Cannot Overcome the Presumption of Prudence.**

      The GE Plan plainly requires Plan fiduciaries to invest in GE stock.  By its terms, ERISA generally requires fiduciaries to act "in accordance with the documents and instruments governing the plan."  29 U.S.C. § 1104(a)(1).  Therefore, fiduciaries who violate the express terms of a plan do so at extreme peril.  Unless fiduciaries are offered significant and predictable protection when they honor the terms of the plan, they will be placed in the impossible position of being sued regardless of what they do and the availability of these retirement savings vehicles will dwindle.

      As discussed above, some courts have held — in light of the "no win" bind — that claims alleging that fiduciaries should have violated the plan and divested the plan from company stock are barred entirely.  Other courts have instead held that such suits may go forward, but only where the complaint alleges that the company faces imminent collapse (or, at the very least, similarly dire circumstances).  The latter line of cases recognizes that, at least absent extraordinary circumstances, a fiduciary's decision to follow the express terms of a plan should be deemed prudent.

If nothing more than the allegation that a plan overpaid somewhat for an asset constitutes the requisite extraordinary circumstances, however, then it is clear that the purpose of the presumption would be entirely thwarted, since it will always be possible to dispute the true value of an asset.  Such a low threshold would do nothing to resolve the "conundrum" confronting fiduciaries, who must choose between following the plan or disregarding it to obey a supposed duty not to overpay.  Thus, if accepted, Plaintiffs' argument about the meager showing needed to overcome the *Moench* presumption would render it nugatory:

> If any combination of factors potentially can overcome *Moench*'s presumption, ERISA fiduciaries are left with no meaningful guidance as to when they should, or should not, ignore an ERISA plan's requirement to offer company stock.  A fiduciary who decides to scrap the ESOP is just as apt to be sued as he would be if he enforced the plan provisions.  This uncertainty fosters expensive, speculative litigation.  It could also cause employers to be hesitant to offer the benefits of an ESOP to its employees.

*Pedraza*, 456 F. Supp. 2d at 1276.

While Plaintiffs contend that investment in GE stock was "risky," they do not and could not allege that GE was in danger of going bankrupt or that it faced any real risk that it would cease being what it is today — one of the world's largest, most profitable, and most diversified companies.  Rather, the Complaint makes clear that the supposed riskiness of GE stock was only that it might decline somewhat in value.  This allegation, however, is insufficient to overcome the *Moench* presumption as a matter of law.  Indeed, this is precisely the allegation that the Sixth Circuit held was insufficient to overcome the presumption of prudence.  *See Kuper v. Iovenko*, 66 F.3d 1447, 1460 (1995) ("plaintiffs merely assert that defendants' decision to continue to hold Quantum stock was unreasonable because defendants were aware of events that would continue to cause Quantum's stock to decline in value").  The bare contention that a fiduciary has bought

or held an asset with knowledge that its value may decline is insufficient to overcome the presumption of prudence and does not state a claim.

The principle that plan investment in employer stock may be deemed imprudent whenever fiduciaries have reason to believe that the stock's price is at risk of some decline would be extremely hostile to investment by pension plans in employer stock.  All too often corporations face challenges or setbacks that do not threaten their viability, but may lead to a diminution in stock price when disclosed to markets (*e.g.*, an oil company whose exploration project found dry holes, a pharmaceutical company whose new drug performed poorly in clinical trials).  The approach advocated by Plaintiffs would mean that fiduciaries would be required to stop a plan's purchases and divest its holding of company stock every time this occurred.  That impractical outcome would be inconsistent with congressional intent to promote employee capitalism through plan ownership of employer stock, *see Cunningham*, 716 F.2d at 1458,[10] as well as "the long-term horizon of retirement investing," *Langbecker v. Electronic Data Sys. Corp.*, 476 F.3d 299, 308 (5th Cir. 2007).

If such a claim is allowed at all, the only sensible approach would be to bar fiduciaries from acquiring or holding employer stock in compliance with a plan *only* when the fiduciary knows facts indicating that the employer faces imminent collapse, which would destroy the plan's investment.  As the Ninth Circuit wrote, "[m]ere stock fluctuations, even those that trend down significantly, are insufficient to establish the requisite imprudence to rebut the *Moench* presumption."  *Wright*, 360 F.3d at 1099.

---

[10]     *See also* Defs.' Opening Mem., pp. 4-5 & n.2 (identifying provisions of ERISA and the Internal Revenue Code encouraging employers to offer employer stock funds as a vehicle for employees to invest in such stock).

The better-reasoned of the decisions employing the presumption of prudence approach recognize this principle.  In *Pedraza*, for instance, the court accepted as true plaintiffs' detailed allegations of alleged wrong-doing but held that the "drastic action Plaintiff advocates" — deleting the company stock option and/or selling the plan's shares of company stock — "would only be appropriate in the case of a company on the brink of collapse, where employee participants in the plan have no further incentive to participate."  *Pedraza*, 456 F. Supp. 2d at 1276.[11]  The court thus dismissed plaintiffs' claims because they could not meet this standard. *See id.* ("As Defendants have pointed out, Coca-Cola was a financially robust company with substantial net revenues throughout the Class Period.").

Plaintiffs purport to distinguish both *Pedraza* and *Duke Energy* on the ground that those case involved ESOPs.  (Opp., p. 33 n.10.)  As discussed above, however, that distinction is neither significant nor factually accurate.  Thus, the reasoning of those cases, in which the courts held that plaintiffs' prudence claim failed as a matter of law, applies equally here:

> nowhere d[id] Plaintiffs allege that [the company] was anything other than a viable, strong company with substantial assets.  In fact, the materials Plaintiffs incorporate in their Complaint or upon which this court can take judicial notice demonstrate that [the company] is a solid, viable company, far from "impending collapse," and not in "dire circumstances."

*Duke Energy*, 281 F. Supp. 2d at 795.  Similarly unavailing is Plaintiffs' dismissal of *Calpine Corp.*; in that case, the court dismissed the prudence claim because the defendant's SEC filings established that it "was a viable concern throughout the alleged class period and was not in the sort of deteriorating financial circumstances that must be pled to rebut the presumption of prudence."  2005 WL 1431506, at *5.

---

[11]     *Pedraza* is one of a number of opinions holding both that Section 404(a)(2) of ERISA *per se* barred plaintiffs' claims and, in the alternative, that plaintiffs had failed to overcome the presumption of prudence.

These cases represent examples of the better-reasoned analysis that should foreclose the prudence claim here.  It is undisputed that GE was not and is not facing imminent collapse.  The size and strength of GE, along with the performance of its stock throughout the so-called Class Period, make plain that it is not an "Enron-like corporation teetering on the brink of collapse." *Coca-Cola Enters.*, 2007 WL 1810211, at *10 (requiring that plaintiff plead that "a company is on the verge of financial collapse" in order to state a claim regarding employer stock).

Plaintiffs argue, in essence, that allegations of impending collapse are not the only way to overcome the *Moench* presumption, and that allegations of "some other impropriety, such as misrepresentation, fraud, or accounting irregularities" are sufficient.  (Opp. at 32 (quoting *Delta Air Lines*, 422 F. Supp. 2d at 1331).)[12]  Defendants respectfully submit that the cases providing *per se* protection to fiduciaries or those requiring impending collapse should be followed, as they provide greater guidance to plan fiduciaries and more appropriately address the realities confronting fiduciaries of plans with company stock funds.[13]

On Plaintiffs' theory, the bare allegation of a misstatement of earnings in one small portion of an enormous, multi-national conglomerate would be sufficient to overcome the presumption of prudence, even if the magnitude of the alleged wrong necessarily could not seriously undermine the overall health and well-being of the corporation.  While investors, including retirement plan participants, should — and, under the securities laws, do — have recourse in cases where company insiders mislead them, it is nonsensical to suggest that the

---

[12]   Insofar as *Delta Air Lines* stated that a stock decline and knowledge of fraud would suffice, that observation was *dicta*.  The court in that case concluded that the allegations did not suffice to plead a case that would overcome the presumption.  *See* 422 F. Supp. 2d at 1331.

[13]   Even if allegations short of imminent collapse were sufficient to overcome the presumption of prudence, Plaintiffs' allegations in this case fall far short of what any reasonable standard would require.

existence of such fraud *necessarily* renders continued investment in company stock so imprudent that fiduciaries should disregard the plan's terms and divest the plan of employer stock.

Imagine, for instance, an employee of a large and prosperous corporation who is aware of a relatively minor overstatement of earnings within one of the company's myriad business units. According to Plaintiffs, that employee, if a fiduciary of the company's pension plan, would violate his duty to plan participants unless he were to override the terms of the plan and divest the plan of company stock, even though (a) continued investment in company stock would be highly advantageous to the plan's beneficiaries and (b) sudden divestment of company stock could itself trigger significant investment losses to the plan.  This theory cannot possibly be right.  *See Hill v. The Tribune Co.*, No. 05 C 2602(L), 2006 WL 2861016, at * 17 (N.D. Ill. Sept. 29, 2006) ("Even assuming … full knowledge of the overstatements of circulation and the potential for a $95 million charge to income, … prudence did not require selling off the Plans' Tribune stock and closing the Company Stock Fund." (footnote omitted)).

This case, however, is fundamentally indistinguishable from that hypothetical.  Plaintiffs' position is that GE Plan fiduciaries should have prevented participants from acquiring GE stock during the so-called Class Period because it allegedly was inflated during this time.  In 2002, the earlier part of the so-called Class Period, GE stock could have been purchased for $22/share; as of the date of this filing, GE stock is worth more than $40/share and, throughout the period, has paid substantial dividends.  Thus, had GE Plan fiduciaries done what Plaintiffs allege they were required to do, they would have prevented Plan participants from making an investment that by any measure would have been extremely successful (and likely been subject to liability for doing so).  Moreover, as the Complaint itself alleges, sudden divestment of billions of dollars worth of GE Stock would have had an immediate adverse effect on the stock's price, requiring the GE

26

Plan to dump the stock into a falling market.  *See* Compl. ¶ 228 (alleging that "[e]limination of Company Stock as a Plan investment option would have reduced the overall demand for GE Stock and sent a negative signal to Wall Street analysts, which would have adversely affected the price of GE Stock …").  The predictable result of that course of action would have been fiduciary breach claims as well.

For this reason, it is clear that mere allegations of accounting irregularities, or similar allegations of wrongdoing, cannot suffice to overcome the presumption of prudence.  Indeed, even a number of the cases cited by Plaintiffs implicitly recognize this fact. [14]  In *Sprint*, the plaintiffs alleged fiduciaries' knowledge of circumstances that led to the employer's credit rating being reduced to "near-junk bond" status.  *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1224 (D. Kan. 2004).  In *ADC*, the plaintiffs alleged that "the company stock price plummeted, losing almost 95% of its value."  *In re ADC Telecomms., Inc., ERISA Litig.*, No. 03-2989 ADM/FLN, 2004 WL 1683144, at *2 (D. Minn. July 26, 2004).  Thus, even if the Court accepts that allegations of imminent collapse of the company are not required, some sort of dire change in the fundamental nature of the enterprise must be.  *See Sprint*, 388 F. Supp. 2d at 1225. [15]

---

[14]     In others of the cases cited by Plaintiffs, the courts gave too little deference to the "no win" situation of the fiduciaries and permitted cases to go forward that should have been dismissed.  These decisions, Defendants suggest, were in error and would render nugatory the policy underlying the *Moench* presumption.  The Court is not bound by, and need not follow, such cases.

[15]     According to this line of cases, the question is whether the alleged wrong-doing was so pervasive and significant that "the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate."  *In re Honeywell Int'l*, No. Civ. 03-1214(DRD), 2004 WL 3245931, *11 (D.N.J. Sept. 14, 2004).  It is clear, however, that a deviation "from the terms of the trust merely because such deviation would be more advantageous to the beneficiaries than compliance with such direction" is not authorized.  *Restatement (Second) of Trusts* § 167 cmt. b (1959).  Here, the bare allegation of inflation, without more, could not plausibly call into question the intention of the settlor (*i.e.*, the plan sponsor, GE) that GE stock remain available as an investment option.

Defendants submit that this line-drawing exercise adopted by a minority of cases is imprecise and does nothing to solve the fiduciary conundrum. For this reason, Defendants respectfully suggest that the bright-line rules adopted by the majority of courts either barring such claims entirely or requiring allegations of imminent collapse are more appropriate. Under any rational standard, however, if the presumption of prudence is to have any practical significance whatsoever, it must bar Plaintiffs' claims in this case.

At most, Plaintiffs have alleged that GE Plan fiduciaries knew that GE's stock price was somewhat inflated.[16] Even assuming that the fiduciaries had knowledge of some degree of inflation, however — in light of the size, strength, and profitability of GE as a whole — this knowledge simply would not have sufficiently called into question the prudence of continuing to abide by the dictates of the Plan and permitting continued investment in GE. If Plaintiffs' allegations are sufficient, then the presumption of prudence could be overcome as a matter of formulaic pleading in every case. The Court should not countenance such a result.

## III.   The Claims Relating to Alleged Misstatements and Insufficient Disclosures Fail as a Matter of Law.

Because Congress, through the securities law, has already pervasively regulated corporate disclosures, the Court should not create common law disclosure obligations regarding investments in employer stock under ERISA. While Plaintiffs relied in their opposition on a number of district court cases rejecting a similar argument, the Supreme Court recently made clear that the argument set forth in Defendants' opening brief was correct. Thus, Plaintiffs' misrepresentation claim does not state a claim under ERISA, and should be dismissed.

---

[16]    Plaintiffs do not contend that GE stock ever was, or at risk of becoming, worthless. *See also* Defs.' Opening Mem., pp. 13, 30, 49-50 (discussing why the alleged under-reserving, even if true, would have constituted a small fraction of GE's revenues, profits, and assets).

Plaintiffs' misrepresentation claim fails for two additional reasons.  First, it is clear that furnishing GE Plan participants with SEC filings — as required by the securities laws — was not a discretionary act.  Therefore, it may not form the basis of a violation of fiduciary duty.  Second, in light of GE's size and strength, it is plain that the alleged under-reserving was immaterial.  In fact, GE's stock price actually rose when GE's reserve-adjusting announcement was made in November 2005.

A.      **ERISA Does Not Support A Common Law Duty to Disclose Non-Public Information About Employers Whose Stock Is Held by Pension Plans.**

In their opening brief, Defendants argued that the Court should not create common law disclosure obligations regarding investments in employer stock under ERISA because Congress, through the securities law, had already "occupied the field."  In response, Plaintiffs argue that federal common law regulating disclosures about employer stock under ERISA is not preempted by the securities law because the two are "complementary to each other."  (Opp., pp. 43-44.)  In other words, Plaintiffs argue that a fiduciary duty of disclosure regarding employer stock is not preempted because both the securities laws and ERISA would prohibit the same undesirable activity — here, the alleged misrepresentations and non-disclosures in GE's SEC filings.  The Supreme Court, however, recently rejected precisely this reasoning in finding that the antitrust laws were preempted even with respect to practices that also would have violated the securities laws.

In *Credit Suisse Securities (USA) LLC v. Billing*, the Court held that the federal securities laws impliedly precluded an antitrust suit alleging unlawful practices in connection with initial public offerings.  127 S. Ct. 2383 (2007).  The securities laws preclude an antitrust suit where "there is a 'clear repugnancy' between the securities law and the antitrust complaint," or where "the two are 'clearly incompatible.'"  *Id.* at 2392.  In determining whether there is a "sufficient

29

incompatibility to warrant an implication of preclusion," the Supreme Court treats the following

factors as "critical":

> (1) the existence of regulatory authority under the securities law to supervise the activities in question; (2) evidence that the responsible regulatory entities exercise that authority; and (3) a resulting risk that the securities and antitrust laws, if both applicable, would produce conflicting guidance, requirements, duties, privileges, or standards of conduct.

*Id.*; *see also id.* ("We also note (4) that … the possible conflict affected practices that lie squarely

within an area of financial market activity that the securities law seeks to regulate.").

In *Billing*, the Court readily concluded that the first, second, and fourth factors were

satisfied.  Plaintiffs argued, however, that the third factor was not satisfied because "both the

securities law and the antitrust law aim to prohibit the same undesirable activity."  *Id.* at 2394.

The Court disagreed, finding that the securities laws precluded the antitrust suit even though the

underwriting practices alleged in that case also would violate the securities laws.  *See id.* ("We

accept … that the SEC has disapproved … the conduct that the antitrust complaints attack.").

The Court concluded that two statutes would be "clearly incompatible" even if they were

interpreted to prohibit the same activities.  Thus, in arguing that imposition of liability under

ERISA cannot be preempted by securities laws when the latter prohibit the challenged conduct,

Plaintiffs are plainly wrong.

Furthermore, each of the factors set out above, and relied on by the Supreme Court in

*Billing*, supports a finding that the securities laws preempt judicial rule-making under ERISA

here.  There can be no doubt that the securities laws govern disclosures of financial information

about publicly-traded corporations such as GE (factor 1), that the SEC exercises its authority to

supervise such disclosures by regulation and enforcement actions (factor 2), or that such

disclosures are squarely within an area of financial market activity the securities laws regulate

(factor 4).  Likewise, for some of the same critical reasons articulated by the *Billing* Court, as well as others that follow from its reasoning, imposition of disclosure duties arising from ERISA would create "conflicting guidance, requirements, duties, privileges, or standards of conduct" (factor 3).  *Id.* at 2392.

The decision in *Billing* echoed a number of the arguments made by Defendants here in their opening brief.  For instance, Defendants have argued that this Court should refrain from creating common-law disclosure obligations because it would effectively permit Plaintiffs to make an end-run around the heightened procedural requirements enacted by Congress in recent years on securities fraud suits.  Similarly, the Supreme Court relied on the same heightened pleading requirements as one basis for finding incompatibility between application of the antitrust laws and securities laws:

> We also note that Congress, in an effort to weed out unmeritorious securities lawsuits, has recently tightened the procedural requirements that plaintiffs must satisfy when they file [securities] suits.  *To permit an antitrust lawsuit risks circumventing these requirements by permitting plaintiffs to dress what is essentially a securities complaint in antitrust clothing.*

*Id.* at 2396 (emphasis added); *cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) (recognizing congressional intent that cases involving securities fraud be held to a stricter pleading standard than other cases).

In the opening brief, Defendants also argued that creation of common-law ERISA disclosure obligations regarding employer stock would be unnecessary, since such disclosures are already comprehensively regulated, and a full range of remedies are provided under the securities law for violations of those rules.  The *Billing* Court similarly observed that "any enforcement-related need for an antitrust lawsuit is unusually small" because both the SEC and shareholders may bring suit under the securities laws.  *Billing*, 127 S. Ct. at 2396.

The judicial creation of ERISA disclosure obligations also would be incompatible with the securities laws for other reasons.  As advocated by Plaintiffs here, such obligations would potentially mandate disclosures of adverse information about the employer at an earlier time, and to a different segment of investors (*i.e.*, plan participants), than the disclosure requirements of the securities laws.[17]  Moreover, creation of such ERISA-based obligations would appear to warrant Department of Labor oversight of financial disclosures by employers who offer employer stock funds — creating a ripe basis for conflicts with SEC regulation of the same activity.

There is no basis on which meaningfully to distinguish the Supreme Court's reasoning in *Billing* from this case.  Therefore, the prior district court authority cited by Plaintiffs to the contrary has effectively been abrogated by the Supreme Court.  It is now clear that the properly reasoned cases are those relied upon by Defendants in their opening brief.  *See, e.g.*, *In re Tyco Int'l Multidistrict Litig.*, No. MDL 02-1335-PB, 2004 WL 2903889, at *6 (D.N.H. Dec. 2, 2004) ("Although plaintiffs plainly ha[ve] a right to expect that [their employer] would refrain from making material misstatements in its SEC filings, that expectation must be enforced under the securities laws rather than ERISA."); *In re Reliant Energy ERISA Litig.*, No. Civ. A. H-02-2051, 2006 WL 148898, at *4 (S.D. Tex. Jan. 18, 2006) ("Although the Plan and its participants plainly had the right to expect that [REI] would refrain from making material misstatements in its SEC filings, where, as here, the corporation does nothing more than comply with SEC filing requirements, that expectation must be enforced under the securities law rather than ERISA."). After *Billing*, it can no longer be argued credibly that ERISA's general fiduciary duty provisions

---

[17]     In addition, an ERISA-based duty to disclose non-public material information to participants would in some (perhaps all) cases clash with SEC regulations forbidding selective disclosures and insider trading.  *See* Rule 10b5-1, 17 C.F.R. 240.10b-5 (forbidding insider trading); Regulation FD, 17 C.F.R. 243.100 (forbidding disclosure of material information to selected audiences without disclosure to the investing public at large).

may be hijacked to tread on a field that is comprehensively regulated by the securities laws. Therefore, it is clear that courts should not create federal common law under ERISA to regulate disclosures regarding employer stock.

None of the appellate authority — and certainly none of the Supreme Court or Second Circuit authority — cited by Plaintiffs is to the contrary. Rather, Plaintiffs' suggestion that the duty of loyalty implicitly contains a duty to disclose facts regarding plan investments is based on their misreading of cases from inapposite contexts. In *Varity v. Howe*, for instance, the Court held that fiduciaries may not mislead plan participants about plan benefits. *See* 516 U.S. 489 (1996). *Varity*, however, did not concern communications about employer stock, but instead involved communications designed to encourage employees voluntarily to switch from one benefits platform to another upon accepting jobs with an affiliated company. Similarly, in *Estate of Becker v. Eastman Kodak Co.*, 120 F.3d 5, 8 (2d Cir. 1997), the Second Circuit found a duty to convey complete and accurate information to plan beneficiaries, but again in the context of communications regarding plan benefits, not employer securities. These cases therefore provide no support for the proposition that fiduciaries have an ERISA duty to disclose information or correct misrepresentations regarding publicly-traded employer stock.

Moreover, other Second Circuit authority makes plain that the courts should not "infer an unlimited disclosure obligation on the basis of general ERISA fiduciary provisions that say nothing about disclosure." *Board of Trustees of CWA/ITU v. Weinstein*, 107 F.3d 139, 146-47 (2d Cir. 1997). Plaintiffs do not allege that Defendants violated any of ERISA's detailed disclosure requirements. Instead, they argue only that the duty of loyalty implicitly creates a disclosure obligation that ERISA does not otherwise provide. This, however, is precisely the sort of argument that the Second Circuit rejected in *Weinstein*.

Plaintiffs erroneously suggest the position taken by the Department of Labor in its *Enron* amicus brief supports their theory of unlimited ERISA disclosure obligations.  (*See* Opp., pp. 45-46 (citing DOL Amicus Brief, *Tittle v. Enron*, H-01-3913 (S.D. Tex. filed Aug. 30, 2002) available at http://www.dol.gov/sol/media/briefs/enronbrief-8-30-02partI.htm.)).  It does not.  The DOL did endorse, in the face of the massive fraud and corporate meltdown involved in the *Enron* case, a limited ERISA disclosure obligation.  Defendants disagree that even such limited ERISA disclosure obligations are appropriate, particularly in light of the Supreme Court's decision in *Billing*.  Notably, however, even the DOL did not go so far as Plaintiffs, as the DOL made clear that no such obligation would attach under circumstances like those presented here:

> *This is not to say that fiduciaries must inform plan participants of every transitory corporate event that might have an impact on the stock's price*, but it does mean that fiduciaries must take action when they know or should know of potentially *ruinous facts*, as alleged here.  In *McDonald*, for example, the court found that the failure to disclose material information constituted a fiduciary breach, because the fiduciary knew or should have known that the consequences of the failure to disclose the information could be disastrous for the plan and its participants ....

DOL Amicus Brief, *Tittle v. Enron*, at 20-22 (emphasis added).  By contrast, where plaintiffs have made less drastic factual allegations regarding the impact of the non-public information on the viability of the employer and its shareholders, the DOL brief stated that plan fiduciaries have no obligation under ERISA to disclose the non-public information to plan participants.  Thus, if the Court chooses to consider (as Plaintiffs request) a position stated by DOL in a different case, the Court should, at a minimum, recognize the limitation on ERISA fiduciary disclosure obligations that DOL endorsed in its *Enron* brief.  Even the  "ruinous facts" standard articulated in that DOL brief acknowledges that the disclosures by the issuers of employer stock are primarily governed by the securities laws.

34

Even the "ruinous facts" standard set forth in the DOL brief recognizes that the primary authorities governing disclosure by the issuers of employer stock are the securities laws. Plaintiffs have not alleged, and could not allege, facts sufficient to meet this burden. They allege, in essence, that the GE Plan overpaid somewhat for company stock. They could not, however, credibly assert that GE was faced with "ruinous facts" like those present in *Enron*. Therefore, even if the Court were to accept that ERISA imposes limited fiduciary disclosure obligations regarding employer stock in the face of Enron-like "ruinous facts," it is clear that those obligations do not attach here. If the limiting principle endorsed by the DOL is to have any meaning whatsoever, Plaintiffs' disclosure claims in this case must be dismissed.

Moreover, Defendants respectfully suggest that even the "ruinous facts" standard should not be adopted. Investors, including retirement plan participants, plainly have a right to expect that statements made in SEC filings are accurate. If they are not, however, their remedy is under the securities law — not ERISA. As the Supreme Court recently made clear, plaintiffs should not be permitted to make an end-run around the heightened pleading requirements of the securities laws by bringing core securities law claims under other statutory provisions. Thus, the Court should reject entirely Plaintiffs' attempt to fit a square peg into a round hole, and dismiss their ERISA disclosure claims.

B. **The Complaint Does Not Claim That the Alleged Misrepresentations Were Made by Persons Acting in a Fiduciary Capacity.**

Plaintiffs concede that breach of fiduciary duty claims may be asserted only against defendants whose alleged conduct occurred while they were acting in a fiduciary — that is, discretionary — capacity. Thus, communications made in a business capacity are not actionable under ERISA. Because each of the alleged misstatements allegedly made by Defendants were

made purely in business capacities, Plaintiffs' disclosure claims must be dismissed for this reason as well.

Plaintiffs again rely on purely conclusory allegations to argue that they have satisfied their pleading burden on this score. The Supreme Court's decision in *Twombly* makes clear that they must do more. Thus, the bare allegation that various alleged (but unspecified) misstatements were made by Defendants "in their fiduciary capacity" is plainly insufficient. (Opp., p. 39.) Rather, the Court must look to the substance of the factual allegations in the Complaint to determine whether the misleading communications alleged (taken as true) were plausibly made in a fiduciary capacity.

None of the concrete allegations of misleading statements in the Complaint were directed specifically at GE Plan participants or were made in the context of a discussion of Plan benefits. Rather, each of the alleged misstatements was either (1) made to the investing public generally or (2) contained in SEC filings. With respect to the first category, the law is clear that such communications cannot give rise to liability under ERISA. *See Honeywell Int'l*, 2004 WL 3245931, at *9; *Calpine*, 2005 WL 1431506, at *6; *Stein v. Smith*, 270 F. Supp. 2d 157, 173 (D. Mass. 2003); *Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222, 228 (W.D.N.Y. 2002). Thus, comments made on conference calls with investors or Wall Street analysts, for instance, plainly are made in a purely business capacity, and are not fiduciary communications, even where they are incidentally made to GE Plan participants in the audience as well.[18]

---

[18]   While Plaintiffs rely on conclusory allegations that statements were made by Defendants in their fiduciary capacity and assert in a footnote that "it would be premature for the Court to hold that GE's public communications were not statements made by Defendants in their capacity as ERISA fiduciaries" (Opp., p. 40 n.16), they do not cite any cases standing for the proposition that statements made to the investing public generally might be deemed fiduciary in nature.

With respect to the second category, although a number of district court decisions have found that SEC filings, incorporated by reference into GE Plan documents, constitute fiduciary communications, those decisions were wrongly decided.  In their opening brief, Defendants explained in detail why that is so.  Such decisions failed to recognize, or to give proper weight to the fact, that employers offering company stock are *required* under the federal securities laws to provide participants with a number of SEC filings, including the employer's Form 10-Ks and 10-Qs.  It is black letter law that, in order to act as an ERISA fiduciary, one must exercise *discretionary* control or authority.  *See* 29 U.S.C. § 1002(21)(A); *see also Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000).  Fulfilling an obligation required by the securities law obviously is not a discretionary activity.  Thus, furnishing participants with SEC filings — regardless of precisely how it is accomplished — should not be deemed a fiduciary act.  *See, e.g.*, *Tyco Int'l*, 2004 WL 2903889, at *6.  Notably, Plaintiffs failed entirely to discuss, let alone refute, Defendants' argument on this point.

## C.   The Alleged Misrepresentations Were Immaterial as a Matter of Law.

Contrary to Plaintiffs' contention, it is established that the Court may assess materiality as a matter of law at the pleadings stage.  Although Plaintiffs contend that there is no "bright line" for materiality, even if immateriality has an uncertain frontier, the alleged misrepresentations here are clearly on the immaterial side of the boundary.  Therefore, Plaintiffs' misrepresentation claims should be dismissed.

Plaintiffs do not allege that GE's profitability (let alone solvency) was threatened by the purportedly understated expenses in the insurance subsidiaries.  Indeed, it is undisputed that GE remained enormously profitable throughout the relevant period, even if the magnitude of under-reserving alleged in the Complaint actually occurred.  Under Plaintiffs' proposed "qualitative" approach, it is equally clear that the understated expenses in GE's insurance subsidiaries were

37

not material to the market, as demonstrated by the increase in GE's stock price following the

reserve adjustment disclosure on November 18, 2005.  Given the Complaint's factual averments

(taken as true) and indisputable, cognizable facts, such as the performance of GE stock,

Plaintiffs' allegations of materiality are not "enough to raise [their] right to relief above the

speculative level."  *Twombly*, 127 S. Ct. at 1965.

Plaintiffs also suggest that the Court should disregard the fact that GE's stock price rose

after the disclosure of a reserve adjustment on November 18, 2005, because on the same day GE

announced favorable financial information (a dividend and a plan to increase the buy back of GE

stock from the market).  Standing alone, Plaintiffs contend, the disclosure of under-reserving

likely would have caused the decline in market value that would demonstrate its materiality to

investors.  That contention, however, is rank speculation.  Even if the Complaint alleged these

facts (which it does not), such speculation cannot constitute adequate pleading of the required

element of materiality.[19]  *See generally Twombly*, 127 S. Ct. at 1965-66.

## IV.   Plaintiffs' Allegations of Defendants' Knowledge Are Too Conclusory To State a Claim.

Both the prudence claim and the misrepresentation claim asserted by Plaintiffs depend

upon the premise that all 74 individual Defendants knew that GE's insurance businesses were, as

---

[19]     Plaintiffs also seek, in effect, to amend their Complaint by suggesting in a footnote that there had been other disclosures of under-reserving in GE's insurance subsidiaries before November 18, 2005, with negative market reactions.  (Opp., p. 56 n.33.)  But their Complaint alleges that the truth was first revealed to the market only on November 18, 2005, and does not claim that the alleged under-reserving at ERC was gradually revealed to the market during an earlier period.  *See* Compl. ¶ 177 ("Defendants never accurately disclosed to Plaintiffs or Plan participants the true nature, extent, and risks of these problems until at least November 18, 2005."); ¶ 179 ("It was not until November 18, 2005 that Plan participants had actual knowledge of material facts necessary to partially understand the negative impact of the under-reserving at ERC…").  Plaintiffs may not amend their Complaint in their opposition to Defendants' motion to dismiss.  *See*, *e.g.*, *O'Brien v. National Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."); *Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222, 224 (W.D.N.Y. 2002) (same).

Plaintiffs allege, under-reserved.  With respect to their prudence claim, they assert that purchasing GE stock was imprudent because its price was artificially inflated.  This allegation, however, is premised on the assertion that Defendants knew that the price of the stock was inflated.  Similarly, GE Plan fiduciaries could breach a duty to disclose accurate information about GE stock only if they knew (or, Plaintiffs contend, should have known) of facts making the disclosures inaccurate.  Therefore, a necessary element of all their claims is that Defendants knew or should have known of the alleged under-reserving.  *See Coca-Cola Enters.*, 2007 WL 1810211, at *6 ("None of the Plaintiffs' claims can succeed if this fraudulent scheme cannot be proven.").

In Defendants' opening brief, they argued that the Complaint contained no specific allegations that would support the conclusion that Defendants knew or should have known of the allegedly insufficient insurance reserves.  In response, Plaintiffs did not even attempt to argue that their allegations of knowledge satisfied either Rule 8 or Rule 9(b).  Other than passing references to three of the Defendants (Messrs. Pressman, Sherin, and Dammerman) in the fact section of their opposition (pp. 8-9), Plaintiffs' brief is utterly devoid of any assertions that Defendants possessed knowledge of the alleged under-reserving or its effects.

Moreover, their Complaint itself is wholly devoid of non-conclusory allegations of knowledge with respect to all but the same three individual Defendants.[20]  Indeed, the only allegation of scienter in the Complaint for the other 71 individual Defendants is that they "knew or should have known that [GE] Stock was not a prudent investment for the Plan and knew or should have known that the value of [GE] Stock was exposed to an unacceptable risk of loss."

---

[20]     *See* Compl. ¶¶ 170, 173.  Despite their exclusion from dismissal on Rule 8 grounds, the claims against Messrs. Pressman, Sherin, and Dammerman should be dismissed for the other reasons set forth in this Motion, including Plaintiffs' failure to satisfy Rule 9(b), and those set forth in the accompanying motions to dismiss.

(Compl. ¶ 210.)  These allegations, however, are insufficient regardless of the pleading standard

that applies in this case.

### A.   Plaintiffs' Allegations of Knowledge Are Insufficient Under Rule 8.

At a minimum, Plaintiffs' allegations of scienter must comply with Rule 8.  As clarified

by *Twombly*, it is plain that they do not even come close to doing so.  *See* 127 S. Ct. at 1964-65

("plaintiff[s'] obligation to provide the grounds of [their] entitle[ment] to relief requires more

than labels and conclusions").  After *Twombly*, there can be no doubt that the bare allegation that

Defendants "knew or should have known" of the alleged under-reserving (Compl. ¶ 210) is

insufficient.  Yet, in their opposition, Plaintiffs merely refer to the Complaint's conclusory

allegation of scienter and disavow any obligation to do more.  (*See* Opp., pp. 7, 10-11, 17.)

In defending their wholly conclusory allegations of scienter, Plaintiffs rely on the

standard set out in *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and the Second Circuit's

overturned decision in *Twombly*.  (Opp., pp. 13, 16-17.)  This standard, however, was flatly

rejected by the Supreme Court in *Twombly*.  *See* 127 S. Ct. at 1968 ("*Conley*'s 'no set of facts'

language has been questioned, criticized, and explained away long enough"; "this famous

observation has earned its retirement").  It is now perfectly clear that a plaintiff must do more:

something beyond the mere possibility that a defendant knew of the alleged wrong-doing must

be alleged to prevent a plaintiff from wasting resources and seeking to extract settlements with a

groundless claim.  *See id.* at 1966.

The Complaint, however, makes no specific allegations that, if true, support the

conclusion that 71 of the 74 individual Defendants knew or should have known of the allegedly

insufficient insurance reserves.  At most, Plaintiffs have alleged only that those 71 Defendants

knew that GE is a company where business units are required to set and meet targeted earnings

goals.  (*See, e.g.*, Compl. ¶ 172.)  Even if true, this would not be enough to establish a plausible claim that under-reserving occurred and that these Defendants knew or had reason to know of it.

Moreover, other allegations in the Complaint regarding the job titles and duties of the 71 individual Defendants are themselves "inconsistent with any of the individual defendants having knowledge" of the alleged under-reserving in the insurance subsidiaries, let alone knowledge of the arcane actuarial assumptions and methodologies so central to the Complaint.  None of these Defendants are alleged to have held positions in GE's insurance subsidiaries.  *See Hill*, 2006 WL 2861016, at *17 ("Tribune is alleged to have a number of larger newspaper and other media holdings.  Those allegations are inconsistent with any of the individual defendants having intimate knowledge of operations at *Newsday* and *Hoy*.").  Thus, Plaintiffs' factual allegations do not render plausible the claim that these 71 individual Defendants knew of the alleged under-reserving.  This is fatal to all claims against those Defendants.

Plaintiffs' reliance on their equally conclusory allegation that all the Defendants should have known of the alleged under-reserving is equally unavailing, because Plaintiffs likewise plead no facts that would even remotely suggest that all of the Defendants had reason or opportunity to know of the alleged under-reserving.  Moreover, under their theory, the *absence* of knowledge of the alleged under-reserving itself constitutes a violation of an alleged fiduciary duty to investigate, and therefore states a claim.  (Opp., p. 18.)  Thus, according to Plaintiffs, the conclusory allegation that a fiduciary should have known something would in every instance be sufficient to survive a motion to dismiss.  This proposition, however, is wholly inconsistent with Rule 8, as clarified in *Twombly*, and would effectively hold fiduciaries to the standard of omniscience.

It is clear that fiduciaries do not have all-encompassing investigatory duties.  As the cases cited by Plaintiffs themselves make clear, a fiduciary is obligated only to undertake an investigation that is reasonable under the circumstances.  Thus, in order to survive a motion to dismiss, Plaintiffs would need to have alleged facts indicating that the Defendants had reason to be on notice of serious potential under-reserving in the GE insurance subsidiaries such that they may have had some obligation to investigate.  Here, however, "the alleged facts do not support that defendants should have known" of the alleged under-reserving, which related to complex actuarial issues in one small portion of GE's myriad businesses.  *See Hill*, 2006 WL 2861016, at *20.  Thus, Plaintiffs' conclusory allegation that all Defendants should have known of the alleged under-reserving cannot save their claim.

B.    **Plaintiffs' Allegations of Knowledge Are Insufficient Under Rule 9(b).**

Rule 9(b) applies to the Complaint's allegations of "the circumstances constituting fraud."  As discussed in the Standard of Review section above, the heightened pleading required by  Rule 9(b) is not limited to cases where the cause of action is for fraud; rather, it applies in cases, like this one, where an element of the claim is that defendants lied.  Because Plaintiffs' prudence and misrepresentation claims both plainly depend on the allegation that Defendants knew of and concealed facts that artificially inflated the price of GE stock, Plaintiffs' failure to plead Defendants' knowledge of the alleged under-reserving in accordance with Rule 9(b) requires dismissal of the entire Complaint.

"[A]lthough Rule 9(b) permits knowledge to be averred generally," the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent."  *O'Brien*, 936 F.2d at 676.  Here, Plaintiffs seek to satisfy their pleading burden as to 71 of the 74 individual Defendants based exclusively on "speculation and conclusory allegations" — a far cry from the "ample factual basis" that is required.  *Id.*  Because

the Complaint is entirely devoid of any facts even suggesting that these 71 Defendants knew or

had reason to know of the alleged under-reserving, Plaintiffs plainly have failed to plead facts

creating a "strong inference" of fraudulent intent.  *See, e.g.*, *In re Nokia Oyj (Nokia Corp.) Secs.*

*Litig.*, 423 F. Supp. 2d 364, 406 (S.D.N.Y. 2006) ("Plaintiffs also allege … that the individual

Defendants knew, or should have known, that they were misrepresenting material facts, based on

their senior positions in the company ….  Such generalized allegations are insufficient, as a

matter of law, to establish scienter.").  Indeed, even the slightly more specific allegations as to

Messrs. Pressman, Sherin, and Dammerman are insufficient under Rule 9(b)'s "strong inference"

requirement.  This reality provides an independent basis for dismissal.

As the *Coca-Cola* court observed, permitting Plaintiffs "to proceed to discovery based

only on their notice pleading that [the alleged wrongdoing] took place" would "allow an

impermissible fishing expedition by the Plaintiffs."  *Coca-Cola Enters.*, 2007 WL 1810211, at

\*6.  Here, as in that case, "the Complaint presupposes the existence of a fraud that [Defendants]

knew about, participated in, benefited from, and concealed."  *Id.*  And here, as in that case, the

"Complaint suffers from terminal vagueness when it comes to the Defendants' alleged

knowledge" of the alleged wrongdoing or, to put it another way, their involvement in the alleged

fraud.  *See id.* at \*7.  In the absence of non-conclusory, specific allegations that the Defendants

knew about the alleged under-reserving, the Court should not countenance Plaintiffs' attempt to

undertake a similarly burdensome and expensive fishing expedition here.

**V.**      **Plaintiffs' Conflict of Interest, Monitoring, and Co-Fiduciary Liability Claims Are
         Entirely Derivative of Their Prudence and Disclosure Claims and also Should Be
         Dismissed.**

Plaintiffs do not dispute that their remaining claims depend on the viability of their

prudence and disclosure claims.  They have offered no argument that these claims would survive

dismissal if the principal claims are dismissed.  Therefore, the Complaint should be dismissed in

its entirety.

## **<u>CONCLUSION</u>**

For these reasons, and those set forth in Defendants' opening memorandum, this motion

to dismiss for failure to state a claim should be granted.

Respectfully submitted,

_____
William J. Dreyer (Bar Roll #101539)
April M. Wilson (Bar Roll #105797)
DREYER BOYAJIAN LLP
75 Columbia Street
Albany, New York 12210
(518) 463-7784

Jeffrey G. Huvelle
John M. Vine
Thomas L. Cubbage III
Christian J. Pistilli
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 662-6000

John J. Buckley, Jr.
Dane H. Butswinkas
Jonathan M. Landy
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005
(202) 434-5000

Attorneys for Moving Defendants

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

IN RE GENERAL ELECTRIC COMPANY                    No. 06-CV-315
ERISA LITIGATION                                          (GLS/DRH)
                                                                  (Lead Case)

_____

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on the 16th day of July, 2007, I caused to be electronically filed the foregoing memorandum with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| Jeffrey J. Sherrin | Lori G. Feldman |
| O'Connell, Aronowitz Law Firm | Milberg, Weiss Law Firm |
| 54 State Street | One Pennsylvania Plaza |
| 9th Floor | Suite 4915 |
| Albany, NY 12207-2501 | New York, NY 10119-0165 |
| 518-462-5601 | 212-594-5300 |
| Fax: 518-462-6486 | Fax: 212-273-4457 |
| Email: jsherrin@oalaw.com | Email: lfeldman@milbergweiss.com |

| | |
|---|---|
| James A. Shannon | Evan J. Kaufman |
| O'Connell, Aronowitz Law Firm | Lerach, Coughlin Law Firm |
| 54 State Street | 58 South Service Road |
| 9th Floor | Suite 200 |
| Albany, NY 12207-2501 | Melville, NY 11703 |
| 518-462-5601 | 631-454-7733 |
| Fax: 518-462-6486 | Fax: 631-367-1173 |
| Email: jshannon@oalaw.com | Email: ekaufman@lerachlaw.com |

Mark S. Reich
Lerach, Coughlin Law Firm
58 South Service Road
Suite 200
Melville, NY 11703
631-367-7100
Fax: 631-367-1173
Email: Mreich@lerachlaw.com

Dated:  July 16, 2007

        /s/ <u>CHRISTIAN J. PISTILLI</u>