## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE GENERAL ELECTRIC COMPANY ERISA LITIGATION | No. 06-CV-315 (GLS/DRH)<br><br>(Lead Case) |

## DECLARATION OF LORI G. FELDMAN
## FILED ON BEHALF OF MILBERG LLP IN SUPPORT OF
## APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES

I, LORI G. FELDMAN, declare as follows:

1.      I am a member of the law firm of Milberg LLP.  I am submitting this Declaration in support of my firm's application for an award of attorneys' fees and expenses in connection with services rendered in the above-entitled action.

2.      My firm acted as co-counsel for the Plaintiffs in this litigation.  In that capacity, my firm has been actively involved in virtually in every material aspect of this case.  By way of example, Milberg's attorneys, in-house investigators and forensic accountants undertook a comprehensive pre-filing investigation and Milberg attorneys drafted the initial complaints.  The initial complaints were detailed and included analyses of the Plan, the factual and legal predicate for the ERISA claims, and the complex actuarial and accounting issues surrounding the alleged under-reserving in GE's insurance business.  After the initial complaints were filed, my firm took a lead role in the extensive, continuing factual and legal investigations and in the drafting the comprehensive operative amended Complaint.  Milberg also took a lead role in the drafting of responses to the three motions to dismiss the Complaint and the motion for summary judgment,

and worked closely with experts and consultants in preparing the opposition papers. Also, Milberg took the lead role in conducting the settlement negotiations, preparing the settlement proposals, and the drafting of Plaintiffs' submissions to the mediator. At the mediation, my firm primarily handled the negotiations for Plaintiffs that ultimately led to the proposed settlement. Following the mediation, Milberg took a lead role in the extensive negotiation of the terms and conditions set forth in the Settlement Agreement, the forms of the proposed Preliminary Approval Order, Class Notice, and the proposed Final Order and Judgment. After execution of the Settlement Agreement, Milberg took a lead role in providing the information requested by U.S. Trust, the Independent Fiduciary to the Plan, to assist U.S. Trust in reviewing the terms of the Settlement and Named Plaintiffs' Counsel's application for fees and expenses. Milberg also played a lead role in preparing the Settlement for preliminary approval and presenting the Settlement to the Court at the Preliminary Approval hearing. After the entry of the preliminary approval order, my firm handled numerous matters relating to the Settlement, including inquiries from the Class regarding the Settlement. Thereafter, Milberg played a lead role in preparing the papers in support of final Settlement approval.

3.    The partners, attorneys and professional support staff at my firm spent a recorded total of 4,653.25 hours on this litigation. The total lodestar amount for partners, attorneys, and professional support staff, based on the firm's billing rates as of December 5, 2008, is $1,996,638.75. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. A chart summarizing the work performed by my firm by category of tasks is attached hereto as Exhibit A. The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. In the

exercise of billing judgment, certain time expended by Milberg LLP personnel in the prosecution of this litigation has not been included in this request, including time expended by former Milberg attorney Steven G. Schulman.

4.    The hourly rates for the partners, attorneys and professional support staff in my firm included in Exhibit A were the usual and customary rates charged for their services in non-contingent matters as of December 5, 2008.

5.    My firm incurred a total of $252,508.94 in unreimbursed expenses in connection with the prosecution of this litigation.  A breakdown of these expenses is attached hereto as Exhibit B.

6.    The expenses pertaining to this case are reflected in the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other documents and are an accurate record of the expenses incurred.

7.    With respect to the standing of counsel in this case, attached hereto as Exhibit C is a brief biography of my firm and attorneys of my firm who were principally involved in this litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 6th day of May 2009, at New York, New York.

_____
LORI G. FELDMAN

# Exhibit A

**Exhibit A**

## GE ERISA
## Milberg LLP
### Reporting Period: Inception through May 1, 2009

Categories:
(1) Factual Investigation
(2) Discovery
(3) Pleadings, Briefs & Pretrial Motions
(4) Court Appearances (Preparation/ Attendence)
(5) Draft Initial or Amended Complaint
(6) Client / Shareholder Communications
(7) Litigation Strategy & Analysis
(8) Settlement Negotiations, and Drafting of Settlement Documents

| Name | Title | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Current Hours | Hourly Rate ($) | Current Lodestar ($) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Andrejkovics, Paul J. | P | 0.00 | 0.00 | 0.00 | 0.25 | 0.00 | 0.00 | 0.75 | 86.00 | 87.00 | 475 | $41,325.00 |
| Feldman, Lori G. | P | 119.25 | 8.75 | 273.75 | 11.25 | 95.00 | 43.50 | 137.25 | 280.00 | 968.75 | 635 | 615,156.25 |
| Khurana, Arvind B. | P | 72.25 | 62.00 | 482.00 | 17.00 | 163.00 | 4.50 | 158.00 | 193.25 | 1,152.00 | 435 | 501,120.00 |
| Spencer, Michael C. | P | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.50 | 4.00 | 0.00 | 16.50 | 750 | 12,375.00 |
| Weiss, Melvyn I. | P | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.50 | 19.25 | 19.75 | 925 | 18,268.75 |
| Kupillas, Matthew A. | P | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 34.50 | 34.50 | 525 | 18,112.50 |
| Fuks, Sara | A | 29.50 | 63.00 | 264.00 | 34.25 | 0.00 | 0.00 | 89.00 | 59.00 | 538.75 | 325 | 175,093.75 |
| Quinn, MJ | A | 1.25 | 0.00 | 0.00 | 0.00 | 2.25 | 0.00 | 7.75 | 0.00 | 11.25 | 295 | 3,318.75 |
| Sosa, Jennifer | A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 270.25 | 270.25 | 325 | 87,831.25 |
| Young, Jennifer L. | A | 5.50 | 0.00 | 10.25 | 0.00 | 33.00 | 0.00 | 1.25 | 0.00 | 50.00 | 400 | 20,000.00 |
| Guttman, Mindi | SA | 13.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13.00 | 250 | 3,250.00 |
| Boria, Cheryl | S | 0.00 | 0.00 | 2.00 | 0.00 | 15.25 | 0.00 | 0.00 | 0.00 | 17.25 | 225 | 3,881.25 |
| Dennehy, Erin | S | 8.50 | 7.75 | 85.75 | 17.00 | 0.50 | 0.00 | 0.00 | 115.25 | 234.75 | 245 | 57,513.75 |
| Dube, Newman | S | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11.50 | 11.50 | 245 | 2,817.50 |
| Jo, Eunice | S | 12.75 | 2.50 | 2.75 | 8.50 | 5.00 | 0.00 | 0.00 | 0.00 | 31.50 | 225 | 7,087.50 |
| Leifer, David | S | 3.00 | 0.00 | 14.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 17.50 | 245 | 4,287.50 |
| Purcell, Matt | S | 9.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3.00 | 12.00 | 245 | 2,940.00 |
| Supple, Richard | S | 22.75 | 0.00 | 2.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25.00 | 235 | 5,875.00 |

## GE ERISA
## Milberg LLP
### Reporting Period: Inception through May 1, 2009

**Exhibit A**

| Name | Title | | | | | | | | | Total | Rate | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wertzer, Rebecca | S | 0.00 | 0.00 | 1.50 | 0.00 | 8.50 | 0.00 | 0.00 | 0.00 | 10.00 | 225 | 2,250.00 |
| Amador, Jorge A. | S | 17.75 | 0.00 | 0.00 | 35.00 | 0.00 | 0.00 | 20.25 | 0.00 | 73.00 | 450 | 32,850.00 |
| Brown, James M. | S | 263.25 | 0.00 | 11.00 | 28.75 | 0.00 | 0.00 | 21.25 | 0.00 | 324.25 | 400 | 129,700.00 |
| Lomonaco, Kristi | S | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7.00 | 0.00 | 7.00 | 400 | 2,800.00 |
| Lowney, Collin | S | 55.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 55.00 | 320 | 17,600.00 |
| Bitkower, Amy | S | 277.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 277.25 | 385 | 106,741.25 |
| Buda, Jacqueline | S | 16.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 | 360 | 5,760.00 |
| Bursey, W. S. | S | 65.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 65.00 | 450 | 29,250.00 |
| Curry, Alice | S | 117.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 117.50 | 360 | 42,300.00 |
| Napoli, Michelle A. | S | 46.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 46.00 | 385 | 17,710.00 |
| Goetz, Charles | S | 59.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 59.50 | 240 | 14,280.00 |
| Morales, Tessa | S | 12.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12.25 | 145 | 1,776.25 |
| Stone, Gregory | S | 26.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.50 | 385 | 10,202.50 |
| Dent, Jennifer | S | 5.50 | 0.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7.50 | 60 | 450.00 |
| Legnetti, Mary | S | 44.75 | 0.00 | 0.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 45.25 | 60 | 2,715.00 |
| **Totals** | | 1,305.00 | 144.00 | 1,152.25 | 88.25 | 386.25 | 58.50 | 447.00 | 1,072.00 | 4,653.25 | | $1,996,638.75 |

**Title:**

(P) Partner

(A) Associate

(SA) Summer Associate

(S) Professional Support Staff

2

# Exhibit B

**Exhibit B**

GE ERISA
Milberg LLP
Expense Report from Inception through May 1, 2009

| *EXPENSE CATEGORY* | | *TOTAL* |
|---|---|---|
| Meals, Hotels & Transportation | | $7,471.67 |
| Photocopies/ Network Printing | | $12,203.35 |
| In-house (approx. 122,033 pages at $0.10 per page) | $12,203.35 | |
| Postage, Telephone, Facsimile | | $964.62 |
| Messenger, Overnight Delivery | | $679.34 |
| Filing, Witness & Other Fees | | $4,169.00 |
| Lexis, Westlaw, Online Library Research | | $29,870.25 |
| Mediation Fees | | $7,668.63 |
| JAMS | $7,668.63 | |
| Testifying Experts | | $66,075.05 |
| David Pratt | $2,760.00 | |
| The Michel/Shaked Group | $63,315.05 | |
| Nontestifying Experts/Consultants | | $122,477.38 |
| Miscellaneous | | $929.65 |
| *TOTAL* | | *$252,508.94* |

# Exhibit C

# <u>Exhibit C</u>

# Milberg LLP

## THE FIRM'S PRACTICE AND ACHIEVEMENTS

Milberg LLP was founded in 1965 and was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The Firm pioneered this type of litigation and is widely recognized as one of the nation's leading defenders of the rights of victims of corporate and other large-scale wrongdoing. The Firm has offices in New York City, Los Angeles, Tampa, and Detroit. The Firm's practice focuses on the prosecution of class and complex actions in many fields of commercial litigation, emphasizing securities, corporate fiduciary, ERISA, consumer, insurance, antitrust, mass tort, human rights, and related areas of litigation.

In the Firm's early years, its founding partners built a new area of legal practice in representing shareholders' interests under the then recently amended Rule 23 of the Federal Rules of Civil Procedure, which allowed securities fraud cases, among others, to proceed as class actions. In the following decades, the Firm obtained decisions that established important legal precedents in many of its areas of practice and prosecuted cases that set benchmarks in terms of case theories, organization, discovery, trial results, methods of settlement, and amounts recovered and distributed to clients and class members.

Important milestones in the Firm's early years include the Firm's involvement in the U.S. Financial litigation in the early 1970s, one of the earliest large class actions, which resulted in the $50 million recovery for purchasers of the securities of a failed real estate development company; the Ninth Circuit decision in *Blackie v. Barrack* in 1975, which established the fraud-on-the-market doctrine for securities fraud actions; the Firm's co-lead counsel position in the *In re Washington Public Power Supply System (WPPSS) Securities Litigation*, a seminal securities fraud action in the 1980s in terms of complexity and amounts recovered; the representation of the Federal Deposit Insurance Corp. in a year-long trial to recover banking losses from a major accounting firm, leading to a precedent-setting global settlement; attacking the Drexel-Milken "daisy chain" of illicit junk-bond financing arrangements with numerous cases that resulted in substantial recoveries for investors; representing life insurance policyholders defrauded by "vanishing premium" and other improper sales tactics and obtaining large recoveries from industry participants; and ground-breaking roles in the multi-front attack on deception and other improper activities in the tobacco industry.

Milberg remains at the forefront in its areas of practice. Significant litigation results include: Tyco International Ltd. Securities Litigation. ($3.2 billion settlement); Nortel Networks Litigation (settlement for cash and stock valued at $1.142 billion); Lucent Technologies Securities Litigation ($600 million recovery); Raytheon Co. Securities Litigation ($460 million recovery); Managed Care Litigation (recoveries over $1 billion and major changes in HMO practices); the WPPSS litigation (settlements totaling $775 million), and NASDAQ Market Makers Antitrust Litigation ($1 billion recoveries). Milberg has been responsible for recoveries valued at approximately $50 billion during the life of the Firm.

The Firm is consistently active in *pro bono* litigation, highlighted by its leadership role in the Swiss Bank Litigation, which led to the recovery of $1.25 billion from Swiss banks to benefit victims of the Holocaust and its efforts representing claimants of the September 11 Victim Compensation Fund.

The Firm's lawyers come from many different professional backgrounds. They include former federal or state prosecutors, private defense attorneys, and government lawyers. The Firm's ability to pursue claims against defendants is augmented by its team of investigators, headed by a former agent for the Federal Bureau of Investigation, and a full-time staff of forensic accountants and financial analysts.

For more information, please visit www.milberg.com.

## JUDICIAL COMMENDATIONS

In *In re September 11 Victim Compensation Fund*, Preliminary Hearing, Claim No. 212-003658 (Dec. 9 2003), Special Master Kenneth R. Feinberg stated the following regarding the Firm's commitment to the public interest:

> Once again, as I have learned over the years here in New York, the [Milberg] firm steps up to the plate in the public interest time and time again. The social conscience of the [Milberg] firm, acting through its excellent associates and partners, help deal with crises that confront the American people and others, and I am personally in the debt of Milberg . . . for the work that it is doing, even under the gun with the December 22 deadline looming. I am once again in Milberg Weiss' debt for their extraordinary willingness to help out in the public interest, and I hope you'll relay that message back to the firm. . . .  [T]hey are second among none in terms of the public interest, and I'm very, very grateful, not only to you guys for doing this, but . . . for the firm's willingness to help out.  I wanted to let everybody know that.

Milberg has been commended by countless judges all over the country for the quality of its representation in class action lawsuits.  In approving a $3.2 billion securities fraud settlement, one of the largest in history, in *In re Tyco Int'l, Ltd. Sec. Litig.*, No. 02-1335 (D.N.H. Dec. 19, 2007), Judge Barbadoro lauded Milberg's efforts:

> This was an extraordinarily complex and hard-fought case.  Co-Lead Counsel put massive resources and effort into the case for five long years, accumulating [millions of dollars in expenses] and expending [hundreds of thousands of hours] on a wholly contingent basis.  But for Co-Lead Counsel's enormous expenditure of time, money, and effort, they would not have been able to negotiate an end result so favorable for the class. . . .  Lead Counsel's continued, dogged effort over the past five years is a major reason for the magnitude of the recovery[.]

In *Simon v. KPMG LLP*, No. 05-3189, 2006 U.S. Dist. LEXIS 35943, at *18, 30-31 (D.N.J June 2, 2006), a case in which Milberg served as class counsel, Judge Cavanaugh, in approving the $153 million settlement, found that "Plaintiffs [] retained highly competent and qualified attorneys" and that "[t]he Initial Complaint . . . demonstrates that [Milberg] expended considerable time and effort with the underlying factual and legal issues in this case before even filing this lawsuit. . . .  Settlement discussions were conducted over a period of some fourteen months with the supervision and guidance of Judges Politan and Weinstein, and are evidence of [Milberg's] appreciation of the merits and complexity of this litigation."

In *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-621, slip op. at 14-15, 26 (D.N.J. Feb. 24, 2004), Judge Pisano issued an Opinion approving the settlement of the Lucent Technologies Securities Litigation, in which he complimented Milberg (Co-Lead Counsel for the Plaintiff Class) as follows:

> [T]he attorneys representing the Plaintiffs are highly experienced in securities class action litigation and have successfully prosecuted numerous class actions throughout the United States.  They are more than competent to conduct this action.  Co-Lead Counsel diligently and aggressively represented the Plaintiffs before this Court and in the negotiations that resulted in the Settlement . . . the efforts and ingenuity of Lead Plaintiffs and Lead Counsel resulted in an extremely valuable Settlement for the Benefit of the Class.

In *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003), Judge Dalzell commented on the skill and efficiency of the Milberg attorneys litigating the complex case:

> At the risk of belaboring the obvious, we pause to say a specific word about . . . the skill and efficiency of the attorneys involved.  [Milberg was] extraordinarily deft and efficient in handling this most complex matter.  [T]hey were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write-down of over $1.6 billion in previously reported Rite Aid earnings. . . .  In short, it would be hard to equal the skill class counsel demonstrated here.

In *In re IKON Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 195 (E.D. Pa. 2000), where Milberg served as co-lead counsel, Judge Katz commented on the skill and professionalism of plaintiffs' co-lead counsel:

> First, class counsel is of high caliber and has extensive experience in similar class action litigation. . . .  Each of the co-lead counsel firms has a national reputation for advocacy in securities class actions, and there is no doubt that this standing enhanced their ability both to prosecute the case effectively and to negotiate credibly. Similarly, defense counsel has a fine reputation and has displayed great skill in defending this complex class action.  Their opposition to plaintiffs has been anything but token, and many of the battles on crucial issues were hard fought.
>
> Of particular note in assessing the quality of representation is the professionalism with which all parties comported themselves. The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines.  This professionalism was also displayed in class counsel's willingness to cooperate with other counsel when appropriate. . . .  This cooperation enabled the parties to focus their disputes on the issues that mattered most and to avoid pointless bickering over more minor matters.

In *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), in an opinion approving settlements totaling over $1.027 billion, Judge Sweet commented:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for Defendants includes some of the largest, most successful and well regarded law firms in the country.  It is difficult to conceive of better representation than the parties to this action achieved.

In approving a $100 million settlement in *In re Prudential Securities Inc. Partnership Litigation*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996), in which Milberg was one of the lead counsel, Judge Pollack noted that he "had the opportunity at first hand to observe the quality of plaintiffs' class counsel's representation, both here and in prior complex litigation, and is impressed with the quality of plaintiffs' class counsel."

## PROMINENT CASES

- *In re Tyco International Ltd., Securities Litigation*, MDL Docket No. 02-1335-B (D.N.H.).  Milberg served as co-lead counsel in this litigation, which involved claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Tyco and its former CEO, CFO, general counsel and certain former directors that arise out of Tyco's $5.8 billion overstatement of income and $900 million in insider trading, plus hundreds of millions of dollars looted by insiders motivated to commit the fraud.  Claims were also made under the 1933 and 1934 Acts against PricewaterhouseCoopers LLP, which is alleged to have published false audit opinions on Tyco's financial statements during the Class Period and to have failed to audit Tyco properly, despite knowledge of the fraud.  On December 19, 2007, the court approved a $3.2 billion settlement of the plaintiffs' claims and praised the work of co-lead counsel.

- *In re Sears, Roebuck and Co. Securities Litigation*, No. 02-7527 (N.D. Ill.). This case involved allegations that Sears concealed material adverse information concerning the financial condition, performance and prospects of Sears' credit card operations.  The approved settlement provides $215 million to compensate investors who purchased Sears securities between October 24, 2001 and October 17, 2002 and suffered a loss thereon.  As an additional benefit to the Class, Sears agreed to separately pay the costs of class notice and settlement administration.

- *In re American Express Financial Advisors Securities Litigation*, No. 04-1773 (S.D.N.Y.). This case involved allegations that American Express Financial Advisors violated securities

laws by representing to class members that the company would provide tailored financial advice, when the company actually provided "canned" financial plans and advice designed to steer clients into American Express and certain nonproprietary mutual funds. The case settled for $100 million, with the settlement agreement requiring that the company institute remedial measures.

- *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-621 (AJL) (D.N.J.). This settlement provides compensation of $600 million to aggrieved shareholders who purchased Lucent stock between October 1999 and December 2000.

- *In re Raytheon Securities Litigation*, No. 99-12142 (D. Mass.). This case concerned claims that a major defense contractor failed to write down assets adequately on long term construction contracts. In May 2004, Raytheon and its auditor PricewaterhouseCoopers LLP settled for a total of $460 million.

- In *In re Rite Aid Securities Litigation*, Master File No. 99-1349 (E.D. Pa.), Judge Dalzell approved class action settlements totaling $334 million against Rite Aid ($207 million), KPMG ($125 million -- the second largest amount ever recovered from an accounting firm in a federal securities class action, and the largest ever against an auditor in a case where the securities claims were limited to claims under section 10(b), which requires proof of knowing or reckless misconduct), and certain former executives of Rite Aid ($1.6 million).

- In *In re CMS Energy Corp. Securities Litigation*, No. 02-72004 (E.D. Mich.), Judge Steeh approved a cash settlement in excess of $200 million in a federal securities fraud case arising out of alleged round-trip trading practices by CMS Energy Corporation. Milberg served as co-lead counsel in this litigation.

- *In re Deutsche Telekom AG Securities Litigation*, No. 00- 9475 (NRB) (S.D.N.Y.). Milberg served as co-lead counsel in this securities class action, alleging that Deutsche Telekom issued a false and misleading registration statement which improperly failed to disclose its plans to acquire VoiceStream Wireless Corporation and materially overstated the value of the Company's real estate assets. On July 29, 2005, Judge Buchwald approved a settlement of $120 million in cash.

- *In re CVS Corp. Securities Litigation*, No. 01-11464 (JLT) (D. Mass). Milberg served as co-lead counsel in this class action alleging that defendants engaged in a series of accounting improprieties and issued false and misleading statements which artificially inflated the price of CVS stock. On September 7, 2005, Judge Tauro approved a settlement of $110 million dollars in cash for shareholders who acquired CVS stock between February 6, 2001 and October 30, 2001.

- *In re Scheiner v. i2 Technologies, Inc.*, No. 01-418 (N.D. Tex.). This case alleged securities fraud against defendants relating to the company's software product descriptions and alleged violations of Generally Accepted Accounting Principles. In May 2004, Milberg recovered a settlement of $84.85 million.

- Milberg served as co-lead counsel in *Irvine v. ImClone Systems*, Inc., No. 02-0109 (RO) (S.D.N.Y.), in which a settlement of $75 million in cash was approved by the Court in July 2005. Plaintiffs alleged that ImClone issued a number of misrepresentations and fraudulent statements to the market regarding the likelihood of approval of the drug Erbitux, thereby artificially inflating the price of ImClone stock.

- The Firm was lead counsel in *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (AMW) (D.N.J.), a landmark case which concerned securities claims as well as common law claims and which resulted in a recovery exceeding $4 billion for Prudential policyholders. The settlement was approved in a comprehensive decision handed down by the Third Circuit.

- In *In re NASDAQ Market-Makers Antitrust Litigation*, MDL 1023, No. 94-3996 (S.D.N.Y.), Milberg served as court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After more than three years of intense litigation, the case settled for a total of $1.027 billion, the largest antitrust settlement ever.

- *In re Washington Public Power Supply System Securities Litigation*, MDL 551 (D. Ariz.) was a massive securities fraud litigation in which Milberg served as co-lead counsel for a class

that obtained settlements totaling $775 million after several months of trial.

- *In re Exxon Valdez*, No. 89-095 (D. Alaska) and *In re Exxon Valdez Oil Spill Litigation*, 3 AN-89-2533 (Alaska Super. Ct. 3d Jud. Dist.). Milberg is a member of the Plaintiffs' Coordinating Committee and co-chair of Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. A jury verdict of $5 billion was obtained; certain issues are currently on appeal.

- In *In re Managed Care Litigation*, MDL 1334 (S.D. Fla.). Final approval of a settlement between a nationwide class of physicians and defendant CIGNA Healthcare valued in excess of $500 million dollars was granted on April 22, 2004. A similar settlement valued in excess of $400 million involving a nationwide class of physicians and Aetna was approved by the Court on November 6, 2003. The settlements stem from a series of lawsuits filed in both state and federal court by physicians and medical associations currently pending against many of the nation's largest for-profit health insurers arising from conduct involving issues dating back to 1990. These settlements bring sweeping changes to the health care industry and involve improvements to physician-related business practices and provide for the establishment of an independent foundation dedicated to improving the quality of health care in America.

- *In re Baldwin United Annuity Litigation*, No. M-21-35 (S.D.N.Y.). Milberg served as co-lead counsel in this consolidated proceeding on behalf of purchasers of annuities that settled for more than $160 million.

- *In re MicroStrategy, Inc. Securities Litigation*, No. 00-473 (E.D. Va.). Milberg served as co-lead counsel in this action, which alleged securities fraud based on a massive restatement. Settlements with the defendants totaled in excess of $150 million.

- *In re Sunbeam Securities Litigation*, No. 98-8258 (S.D. Fla). Milberg acted as co-lead counsel for the class. Plaintiffs alleged that Sunbeam, its auditor, and its management engaged in a massive accounting fraud which led to a restatement of over three years of previously reported financial results. The Court approved a combined settlement of more than $140 million. The settlement amount included a $110 million settlement with Arthur Andersen LLP, Sunbeam's auditor. The Andersen settlement is one of the largest amounts ever paid by a public accounting firm to settle claims brought under the federal securities laws. The settlement with the individuals was achieved on the eve of trial, and ended almost four years of litigation against Andersen and Sunbeam's insiders, including Albert Dunlap, Sunbeam's former Chairman and CEO. The settlement included a personal contribution from Dunlap of $15 million.

- In *In re Computer Associates Securities Litigation*, Nos. 98-4839, 02-1226 (TCP) (E.D.N.Y.), Milberg served as co-lead counsel and obtained a pretrial settlement valued at more than $134 million in these securities fraud class actions.

- In *In re IKON Office Solutions, Inc. Securities Litigation*, MDL 1318, No. 98-4286 (E.D. Pa.), Milberg served as co-lead counsel and obtained a pretrial settlement of $111 million in this securities fraud class action.

- In *In re W.R. Grace & Co. (Official Committee of Asbestos Personal Injury Claimants v. Sealed Air. Corp. and Official Committee of Asbestos Personal Injury Claimants v. Fresenius Medical Care Holdings, Inc.)*, Nos. 02-2210 and 02-2211 (D. Del.), Milberg acted as lead counsel for the asbestos personal injury and property damage committees in two separate fraudulent conveyance actions within the W.R. Grace bankruptcy. The actions sought to return the assets of Sealed Air Corporation and Fresenius Medical Care Holdings (each of which had been Grace subsidiaries pre-bankruptcy) to the W.R. Grace bankruptcy estate. Complaints in both cases were filed in mid-March 2002, and agreements in principle in both cases were reached on November 27, 2002, the last business day before trial was set to begin in the Sealed Air matter. The total of the two settlements, which consisted of both cash and stock, was approximately $1 billion.

- *In re Nortel Networks Corp. Securities Litigation*, No. 01-1855 (S.D.N.Y.). This federal securities fraud class action was commenced in February 2001 against Nortel Networks Corp. and certain of its officers and directors. In February 2002, Milberg was appointed to serve as sole Lead Counsel for the Class and for the Court-appointed Lead

Plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund. In January 2003, the Court sustained the Complaint in its entirety, denying defendants' motion to dismiss and, in September 2003, certified a Class for all purposes. In certifying the Class, the Court specifically rejected defendants' argument that those who traded in Nortel securities on the Toronto Stock Exchange (and not the New York Stock Exchange) should be excluded from the Class. The Second Circuit denied defendants' attempted appeal. On January 29, 2007, the court approved a settlement valued at $1.142 billion.

- Milberg is prosecuting numerous class actions involving a significant area of abuse directed at investors: deceptive sales of deferred annuity tax shelters to investors for placement in retirement plans that are already tax-qualified. In *Nelson v. Pacific Life Ins. Co.*, No. 03-131 (S.D. Ga.) the district court approved a $60 million settlement of claims arising from such deception. In *American United Life Insurance Co. v. Douglas*, No. 29A02-0304-CV-350 (Ind. Ct. App.), denial of defendant's summary judgment motion was sustained on interlocutory appeal. The SEC and NASD have begun regulatory programs to address these problems.

- Milberg is co-lead counsel in *In re Vivendi Universal, S.A. Securities Litigation*, No. 02-5571 (RJH) (S.D.N.Y.), a securities fraud class action on behalf of U.S. and certain foreign investors. Plaintiffs allege that Vivendi and two of its senior officers concealed huge liquidity problems and hid accounting violations during the class period. The district court has denied defendants' motions to dismiss the complaint and has certified a class of purchasers from the United States, France, England, and the Netherlands. Trial is scheduled for October 2008.

- *Rabi Abdullahi v. Pfizer, Inc.*, No. 01-8118 (WHP) (S.D.N.Y.). This is a case in which the Firm has brought claims under the Alien Tort Claims act on behalf of Nigerian children and their families who were enrolled in a clinical trial of a drug by Pfizer without their knowledge. Plaintiff alleges that Pfizer's conduct violated the international prohibition on medical experimentation without informed consent when children suffering from meningitis, whose families had brought them to a local hospital for treatment, were secretly enrolled in a clinical trial of the Pfizer drug, Trovan. Plaintiffs' claims were dismissed by the trial court. The case is currently on appeal before the Second Circuit.

- *In re General Instrument Corp. Securities Litigation*, No. 01-3051 (LR) (E.D. Pa.). Milberg served as co-lead counsel and obtained a pretrial settlement of $48 million in this securities fraud class action.

- *In re Royal Dutch/Shell Transport ERISA Litig.*, No. 04-1398 (JWB) (D.N.J.). This was an ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the company's U.S. employees invested in the company's stock fund. Notably, the $90 million settlement included important provisions regarding the monitoring and training of individuals appointed to be ERISA fiduciaries.

- *In re Triton Energy Limited Securities Litigation*, No. 98-256 (E.D. Tex. Texarkana Division), settled for $42 million. Plaintiffs alleged that defendants misrepresented, among other things, the nature, quality, classification, and quantity of Triton's Southeast Asia oil and gas reserves during the period March 30, 1998 through July 17, 1998.

- Milberg served as co-lead counsel in *In re Thomas & Betts Securities Litigation*, No. 00-2127 (W.D. Tenn), in which plaintiffs recovered $46.5 million dollars in cash from the Company and $4.65 in cash from its outside auditor, KPMG. Plaintiffs alleged that Thomas & Betts engaged in a series of accounting improprieties while publicly representing that its financial statements were in compliance with GAAP, and failed to disclose known trends and uncertainties regarding its internal control system and computer and information systems.

- *In re MTC Electronic Technologies Shareholder Litigation*, Master File No. 93-0876 (JG) (E.D.N.Y.). Plaintiffs alleged that defendants issued false and misleading statements concerning, among other things, purported joint venture agreements to establish telecommunications systems and manufacture telecommunications equipment in China. The Court approved a settlement of $70 million, including $65 million in cash and $5 million worth of MTC Class A shares with "put" rights.

- In ***In re PaineWebber Limited Partnerships Litigation***, Master File No. 94-8547 (SHS) (S.D.N.Y.), Milberg represented investors alleging that PaineWebber developed, marketed, and operated numerous investment partnerships as part of an ongoing conspiracy to defraud investors and enrich itself through excessive fees and commissions over a twelve-year period. On March 20, 1997, Judge Sidney Stein approved a settlement of $200 million, which consisted of $125 million in cash and $75 million worth of guarantees and fee waivers.

- In ***In re Ames Department Stores, Inc.***, MDL 924 (MP) (S.D.N.Y.), Milberg represented purchasers of Ames securities alleging that defendants issued false and misleading statements regarding the success of Ames'

integration of a major acquisition and the Company's future financial prospects. The Court approved a settlement of $41 million in cash.

- In ***Andrews v. AT&T***, No. 91-175 (S.D. Ga.) the Firm represented a class of persons who paid for premium-billed "900-number" calls that involved allegedly deceptive games of chance, starting in 1993. Defendants included major long-distance companies, which approved the call programs and billed for the calls. Defendant MCI settled for $60 million in benefits. The class against AT&T was decertified on appeal and the Firm prosecuted the individual plaintiffs' claims, obtaining a jury verdict in 2003 for compensatory and punitive damages.

## PRECEDENT-SETTING DECISIONS

Milberg has consistently been a leader in developing the law for investors and consumers under the federal securities, antitrust, and consumer protection laws. The Firm has represented individual and institutional plaintiffs in hundreds of class action litigations in federal and state courts throughout the country. In most of those cases, Milberg has served as lead or co-lead counsel for the class. The Firm has also been responsible for establishing many important precedents, including:

- ***Asher v. Baxter International, Inc.***, 377 F.3d 727 (7th Cir. 2004). In reversing and remanding the District Court's dismissal, the Seventh Circuit resolved an important issue involving the PSLRA's "safe harbor" for forward-looking statements in plaintiffs' favor. The Court held that whether a cautionary statement is meaningful is an issue of fact, because whether a statement is meaningful or not depends in part on what the defendant knew as well as other issues of fact. Thus, this issue is not appropriately resolved on a motion to dismiss.

- In ***In re Vivendi Universal, S.A. Securities Litigation***, No. 05-5571, 2003 U.S. Dist. LEXIS 19431 (S.D.N.Y. Nov. 3, 2003), Judge Harold Baer upheld plaintiffs' claims under Section 10(b) of the Securities Exchange Act of 1934, which alleged that Vivendi and two of its former executives (CEO Jean-Marie Messier and CFO Guillaume Hannezo) did not disclose

to investors that: (1) Vivendi's corporate acquisition programs had brought Vivendi to the brink of a potentially catastrophic liquidity crisis; (2) although it consolidated the financial results of several majority owned subsidiaries, Vivendi did not have access to the cash flows of these entities; (3) Vivendi failed to write down billions of dollars of impaired goodwill from prior acquisitions; and (4) one of Vivendi's U.S. subsidiaries improperly recognized revenue "up front" on the full value of long term contracts. The case is particularly notable because the court held that because of defendants' activities in New York promoting Vivendi stock, defendants' conduct was more than "merely prepatory" to the alleged fraudulent scheme, and thus the court had jurisdiction not only over purchasers of Vivendi ADRs on the NYSE, but also over the claims of foreign purchasers who purchased Vivendi ordinary shares on foreign exchanges.

- ***Gebhardt v. ConAgra Foods, Inc.***, 335 F.3d 824 (8th Cir. 2003). This important decision strongly reaffirmed the principle that whether an undisclosed fact would have been material to investors cannot ordinarily be decided on a motion to dismiss. The Eighth Circuit, stressing that "[t]he question of materiality hinges on the particular circumstances of the company in question," observed that even relatively small errors in financial statements might be material if they concern areas of particular importance to

investors and raise questions about management integrity.

- *In re Initial Public Offering Securities Litigation*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003). The Court sustained, in large part, the plaintiffs' initial amended complaints against more than 50 underwriters of high-tech stocks in one of the most comprehensive decisions issued under the securities laws. Milberg is a principal member of the Plaintiffs' Executive Committee in this landmark litigation. A second round of motions to dismiss was filed by defendants in response to a limited set of recently amended complaints, and the court sustained in significant part the plaintiffs' claims.

- *In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002). In this opinion, the First Circuit joined the Second Circuit in allowing a complaint to be based on confidential sources. The Court also accepted the argument made by Milberg that courts should consider the amount of discovery that has taken place in deciding a motion to dismiss and that the lack of discovery will result in a correspondingly less stringent standard for pleading securities fraud claims with particularity.

- In *Puckett v. Sony Music Entertainment*, No. 108802/98 (New York Cty. 2002), Milberg achieved a precedent-setting decision in which a class action was certified against Sony Music Entertainment on behalf of a class of recording artists who were parties to standard Sony recording or production agreements entered into at any time during the period of January 1, 1965 to the date of the filing of the complaint in 1998. The complaint alleged that Sony had a policy of treating the value added tax on foreign sales of recordings improperly thereby impermissibly reducing the royalties paid or credited to the class members. Justice DeGrasse of the New York State Supreme Court determined that class certification was appropriate and that Gary Puckett (of Gary Puckett & the Union Gap) and jazz musician and composer Robert Watson were appropriate class representatives to represent the class of artists and producers to whom Sony accounts for foreign record royalties.

- *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000). The Firm was lead counsel in this seminal securities fraud case in which the Second Circuit undertook an extensive analysis of the statutory text and the legislative history of the PSLRA and pre-existing Second Circuit case law. Among other things, the Second Circuit held that the PSLRA's pleading standard for scienter was largely equivalent to the pre-existing Second Circuit standard and vacated the district court's dismissal which sought to impose a higher standard for pleading scienter under the PSLRA. The Second Circuit also rejected any general requirement that plaintiffs' confidential sources must be disclosed to satisfy the PSLRA's newly-enacted particularity requirements.

- *In re Advanta Corp. Securities Litigation*, 180 F.3d 525 (3d Cir. 1999). Here, the Firm successfully argued that, under the PSLRA, the requisite scienter is pled by making an adequate showing that the defendants acted knowingly or with reckless disregard for the consequences of their actions. As urged by the Firm, the Third Circuit specifically adopted the Second Circuit's scienter pleading standard for pleading fraud under the PSLRA.

- In *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998), the Second Circuit reversed the district court's ruling, which denied plaintiffs leave to amend to assert a cause of action against defendants for failing to disclose that the Trust was unable to utilize proper "hedging" techniques to insure against risk of loss. In the Court's view, taken together and in context, the Trust's representations would have misled a reasonable investor.

- In *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194 (1st Cir. 1996), the First Circuit remanded plaintiffs' action after affirming, in part, Milbergs' position that in association with the filing of a prospectus related to the issuance of securities, a corporate-issuer must disclose intra-quarter, materially adverse changes in its business, if such adverse changes constitute "material changes" the disclosure of which is required pursuant to the Securities Act of 1933.

- *In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 493 (S.D.N.Y. 1996). The court certified a class of millions of investors, who were harmed by an industry-wide conspiracy where NASDAQ market-makers set and maintained wide spreads, over defendants' strenuous objections.

- *In re Salomon, Inc. Shareholders Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). The

Second Circuit affirmed the district court's holding that derivative federal securities claims against defendants would not be referred to arbitration pursuant to the arbitration provisions of the Rules of the New York Stock Exchange, but would be tried in district court. Shortly thereafter, the case settled for $40 million.

- ***Kamen v. Kemper Financial Services***, 500 U.S. 90 (1991). The Supreme Court upheld the right of a stockholder of a mutual fund to bring a derivative suit without first making a pre-suit demand.

- ***Mosesian v. Peat, Marwick, Mitchell & Co.***, 727 F.2d 873 (9th Cir.), cert. denied, 469 U.S. 932 (1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for §10(b) suits that are favorable to investors.

- ***Hasan v. CleveTrust Realty Investors***, 729 F.2d 372 (6th Cir. 1984). The Sixth Circuit very strictly construed, and thus narrowed, the ability of a "special litigation committee" of the board of a public company to terminate a derivative action brought by a shareholder.

- ***Fox v. Reich & Tang, Inc.***, 692 F.2d 250 (2d Cir. 1982), aff'd sub nom, ***Daily Income Fund, Inc. v. Fox***, 464 U.S. 523 (1984). The court held that a derivative action to recover excessive advisory fees may be brought on behalf of an investment company without any prior demand on the board.

- ***Rifkin v. Crow***, 574 F.2d 256 (5th Cir. 1978). The Fifth Circuit reversed an order granting summary judgment for defendants in a §10(b) case, paving the way for future acceptance of the "fraud-on-the-market" rationale in the Fifth Circuit.

- ***Blackie v. Barrack***, 524 F.2d 891 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976). This is the seminal appellate decision on the use of the "fraud-on-the-market" theory, allowing investors who purchase stock at artificially inflated prices to recover even if they were personally unaware of the false and misleading statements reflected in the stock's price. The court stated that class actions are necessary to protect the rights of defrauded purchasers of securities.

- ***Bershad v. McDonough***, 300 F. Supp. 1051 (N.D. Ill. 1969), aff'd, 428 F.2d 693 (7th Cir. 1970). The plaintiff obtained summary judgment for a violation of §16(b) of the Securities Exchange Act in which the transaction was structured by the defendants to look like a lawful option. The decision has been cited frequently in discussions as to the scope and purpose of §16(b).

- ***Heit v. Weitzen***, 402 F.2d 909 (2d Cir. 1968), rev'g, 260 F. Supp. 598 (S.D.N.Y. 1966). The court held that liability under §10(b) of the Securities Exchange Act extends to defendants who were not in privity with the named plaintiffs or the class represented by the named plaintiffs.

Additionally, in the context of shareholder derivative actions, Milberg has been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases. Cases in which such changes were made include:

- ***In re Marketspan Corporate Shareholder Litigation***, No. 98-15884 (N.Y. Sup. Ct.). The settlement agreement in this case required modifications of corporate governance structure, changes to the audit committee, and changes in compensation awards and the nominating committee.

- ***Abramsky v. Computer Sciences Corp.***, No. 98-00306 (RLH) (D. Nev. 1998). The settlement in this case required significant changes to the company's by-laws and governance procedures to enhance shareholder voting rights and the role of outside directors.

ATTORNEY BIOGRAPHIES

## THE FIRM'S PARTNERS

**PAUL J. ANDREJKOVICS** graduated from Union College in 1992, Phi Beta Kappa, *magna cum laude*, with a B.A. degree in political science. In 1995, Mr. Andrejkovics received his J.D. degree from Albany Law School. He was admitted as a member of the New York Bar in 1996 and is also admitted to the United States District Court for the Northern, Southern, and Eastern Districts of New York.

His practice concentrates on class action settlements and settlement administration. Mr. Andrejkovics has played a supporting role in documenting and effectuating some of the largest and most complex securities litigations settlements ever obtained, including: the $1.14 billion settlement for cash and stock of the *In re Nortel Networks Corp. Securities Litigation*, No. 01-1855 (RMB) (S.D.N.Y.); and the settlements for securities worth over $133.5 million in *In re Computer Associates Class Action Securities Litigation*, No. 98-4839 (TCP) and *In re Computer Associates 2002 Class Action Securities Litigation*, No. 02-1226 (TCP) (E.D.N.Y.).

**LORI G. FELDMAN** is a daughter of retired public employees and understands the importance of protecting the investments of all workers and their families against corporate fraud. In 2002-2003 and 2004-2005, she was named a "Rising Star of Washington Law" by practitioners in Seattle.

In addition to lecturing on class action practice, she has served as Co-Chair of the Continuing Legal Education Committee of the Federal Bar Association for the Western District of Washington. Recently, Ms. Feldman has participated as panel faculty in continuing legal education programs on ERISA and securities fraud class actions arising from the subprime and liquidity crisis.

Ms. Feldman's representative recoveries exceed $150 million. Recently, she recovered millions of dollars for class members in litigation involving Rhythms NetConnections, Inc. (D. Colo.); ConAgra Foods, Inc. (D. Neb.), Amazon.com (W.D. Wash.), Paradigm Medical Industries (D. Utah), SpectraLink Corporation (D. Colo.); Cutter & Buck (W.D. Wash.); and Select Medical (E.D. Pa). She is currently representing Bernard Madoff victims, as well as

representing shareholders in litigation involving, among several others, Beazer Homes (N.D. Ga.), Washington Mutual, Inc. (W.D. Wash.), and Gilead Sciences, Inc. (N.D. Cal.). She is also currently representing participants of defined contribution retirement plans in ERISA litigation involving, among others, American International Group, Inc. (S.D.N.Y), Boston Scientific Corp. (D. Mass.), Citigroup, Inc. (S.D.N.Y.), Constellation Energy Group, Inc. (D. MD), First American Corp. (C.D. Cal.), Fremont General Corp. (C.D. Cal.), General Electric (N.D.N.Y.), Hartford Financial Services Group Inc. (D. Conn), KeyCorp (N.D. Ohio), Lehman Brothers Holdings, Inc. (S.D.N.Y), Macy's, Inc. (S.D. Ohio), Merrill Lynch & Co., Inc. (S.D.N.Y.), Morgan Stanley & Co., Inc. (S.D.N.Y.),and WellPoint, Inc. (S.D. Ind.).

Ms. Feldman graduated from Albany Law School in 1990, where she served as an Executive Editor of the *Albany Law Review*. She has interned at the Civil Division of the United States Attorney's Office in Brooklyn, New York. She is admitted to the Bars of the States of Washington and New York and federal district and appellate courts throughout the country.

**ARVIND B. KHURANA** received his B.A. from State University of New York at Albany in 1993, and a J.D. from St. John's University School of Law in 1999, *Dean's List Graduate*. While in law school, Mr. Khurana was on the Dean's List from 1995-1999 and a member of the *American Bankruptcy Institute Law Review*.

Mr. Khurana focuses his practice primarily on class actions on behalf of defrauded investors and consumers, as well as complex commercial litigation. Prior to joining Milberg in August 2005, Mr. Khurana worked as an associate with a major international law firm in New York, concentrating in the area of complex commercial litigation.

Mr. Khurana is a member of the Federal Bar Council and admitted to practice in the state and federal courts of New York.

**MATTHEW A. KUPILLAS** graduated from the State University of New York at Albany in 1990 with a B.A. degree in philosophy. In 1994, Mr. Kupillas received his J.D. degree from New York University School of

Law. Mr. Kupillas focuses his practice primarily on class actions on behalf of defrauded investors and consumers, as well as complex commercial litigation. His involvement in the *In re Oxford Health Plans, Inc. Securities Litigation* helped recover an aggregate settlement of $300 million. He is a member of the bar of the State of New York and is admitted to practice before the United States District Court for the Southern and Eastern Districts of New York, the District of Colorado, the Eastern District of Wisconsin, and the United States Court of Appeals for the Tenth Circuit.

**MICHAEL C. SPENCER** graduated from Yale University in 1973 with a B.A. degree, *magna cum laude*, with distinction, in philosophy. While at Yale, he was elected to Phi Beta Kappa. Mr. Spencer received a J.D. degree from Harvard Law School, *cum laude*, in 1976.

Mr. Spencer focuses his practice primarily on class actions on behalf of defrauded investors and consumers, as well as complex commercial litigation.

Mr. Spencer began his legal career as a law clerk to the Honorable Wm. Matthew Byrne Jr., United States District Court, Central District of California, in 1976-77. He then returned to New York and joined Cravath, Swaine & Moore as an associate, where he worked until 1986 on antitrust, banking, real estate, commercial, and securities litigation matters. In his later years at Cravath, he represented the bond fund trustee in connection with bond defaults of Washington Public Power Supply System nuclear plants.

In 1986, he joined Milberg as an associate and became a partner later that year. He worked on the WPPSS securities fraud litigation and many of the Firm's other cases, including representation of the FDIC in its failed bank audit litigation involving the Butcher Brothers banks in Tennessee, which led to a year-long trial and a global settlement of all bank-related claims against Ernst & Whinney just before closing arguments to the jury in late 1992. He has since worked on many of the Firm's securities fraud cases, and cases in other areas, including representation of a broad coalition of union health care funds seeking to recover costs for treating smoking-related illnesses from the tobacco industry; Year 2000 litigation; cases involving alleged kickbacks in the mortgage insurance industry; and consumer and securities fraud cases against insurance companies selling deferred annuities into qualified retirement plans.

Mr. Spencer is admitted to practice in the courts of the States of New York and California, as well as the United States District Courts for the Southern and Eastern Districts of New York, the Central District of California, and the United States Courts of Appeals for the Second, Third, Fourth, Seventh, Ninth, Eleventh, and D.C. Circuits.

# ASSOCIATES

**SARA FUKS** graduated *magna cum laude* from New York University in 2001.  She earned her J.D. *cum laude* from Fordham University School of Law in February, 2005.  While in law school, Ms. Fuks was a member of the *Fordham Law Review*.

Ms. Fuks focuses her practice primarily on class actions on behalf of defrauded investors. litigation on behalf of defrauded individual and institutional investors.

Prior to joining Milberg in October 2006, Ms. Fuks was an associate in the New York office of Dewey Ballantine LLP, concentrating in the area of complex commercial litigation.   Ms. Fuks is admitted to practice in the state and federal courts of New York.

**JENNIFER J. SOSA** graduated from Northeastern University with a B.S. degree, *cum laude*, in 2002. In 2005, she earned her J.D. degree from Temple University Beasley School of Law.

Prior to joining Milberg in February 2006, Ms. Sosa worked as a legal consultant under the Director of Business and Legal Affairs at WhenU.com, Inc. During law school, she was a member of the Environmental Moot Court Team and was awarded the David Sive Award for Best Brief in the 2004 Pace National Environmental Law Moot Court Competition.  Prior to law school, Ms. Sosa worked as a Chemical Engineer.

**JENNIFER L. YOUNG** received a B.A. degree from University of South Carolina in 1996.   She graduated *cum laude* from the University of South Carolina School of Law in 2002.   During law school, Ms. Young was Associate Editor in Chief of the *South Carolina Law Review*, as well as a member of the South Carolina Moot Court Bar.

Ms. Young focuses her practice primarily on consumer fraud and complex commercial litigation. Ms. Young is admitted to practice in the courts of the States of South Carolina and New York.  Ms. Young sits on the junior board of Court Appointed Special Advocates (New York), a non-profit organization that shepherds children through New York City's foster care system.  Ms. Young is an active member of the New York Inn of Court.